**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

---

MONICA GRAY, EXECUTRIX, ET AL.,

        Plaintiffs,

        v.

CIT BANK, N.A., ET AL.,

        Defendants.

Civil No. 18-1520 (RMB/AMD)

**OPINION**

---

**APPERANCES:**

LAW OFFICE OF ROOSEVELT N. NESMITH, LLC
By:  Roosevelt N. Nesmith, Esq.
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07024
        Counsel for Plaintiffs

GREENBERG TRAURIG, LLP
By:  Louis Smith, Esq.
    Aaron Van Nostrand, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
        Counsel for Defendants CIT Bank N.A., and Financial
        Freedom Senior Funding Corporation

BUCKLEY SANDLER LLP
By:  Robyn C. Quattrone, Esq.
    Stephen M. LeBlanc, Esq.
    Mary C. Flemming, Esq.
1250 24th Street NW, Suite 700
Washington, D.C. 20037

    and

SILLS CUMMIS & GROSS P.C.
By:  Charles J. Falletta, Esq.
One Riverfront Plaza

Newark, New Jersey 07102

Counsel for Defendants QBE Insurance Corporation, QBE First
Insurance Agency, Inc., and MIC General Insurance Corporation

**BUMB, UNITED STATES DISTRICT JUDGE:**

Plaintiffs bring this putative class action suit alleging that
Defendants CIT Bank, N.A., a mortgage lender ("CIT"); Financial
Freedom Senior Funding Corporation, a mortgage servicer ("Financial
Freedom"); and insurance companies QBE Insurance Corporation, QBE
First Insurance Agency, Inc., and MIC General Insurance Corporation
(collectively "the Insurer Defendants") conspired to: (1) overcharge
Plaintiffs in connection with forced-placed hazard insurance; and (2)
charge unnecessary property inspection fees.

Defendants move to dismiss all claims asserted in the Amended
Complaint.[1]  For the reasons stated herein, the Insurer Defendants'
motion will be granted as to the tortious interference claim and
denied in all other respects; and the other Defendants' motion will
be denied.

I.   **Facts**

This suit concerns a reverse mortgage on a residential property
located in Cinnaminson, New Jersey.  (Amend. Compl. ¶¶ 1, 80)  In

---

[1]  Oral argument on the Motions to Dismiss was held on August 9,
2018.  For the reasons set forth on the record during oral argument,
the Court allowed Plaintiffs to file an Amended Complaint.  (See
Docket #40, Order of August 9, 2018)  Defendants have subsequently
filed supplemental briefs which the Court has considered along with
the moving and reply briefs.

2008, Earl Gray Jr. obtained the reverse mortgage from Defendant Freedom Financial. (Id. ¶ 80-81) Gray failed to maintain hazard insurance coverage on his property as required by the mortgage documents, and so, in accordance with the loan documents, beginning in 2011, Defendant Financial Freedom began force-placing hazard insurance on the property. (Id. ¶ 83) Allegedly, "Financial Freedom imposed a charge [for the insurance premium] on Gray's mortgage account . . . in the amount of $3,510.00." (Id.)

Thereafter, Plaintiffs allege, the same pattern continued from 2012 through 2017; Freedom Financial force-placed insurance on the subject property, then charged Gray-- and subsequently the new property owners upon Gray's death in 2016[2]-- for what Financial Freedom said was the cost of the insurance premiums.[3] (Amend. Compl. ¶ 83) According to Plaintiffs, however, what Financial Freedom represented what the cost of the insurance premiums was actually the cost *plus* an "unearned commission" or "kickback" that Financial Freedom obtained through its "interlocking agreements" with the Insurer Defendants. (Id. ¶¶ 59-64) The alleged misrepresentations

---

[2] Earl Gray, Jr. passed away on December 3, 2016. (Amend. Compl. ¶ 88) Through Gray's will, the property passed to Plaintiffs Justin Gray and Jasmine Gray-Oliver per stirpes. (Id.) Thus, as further set forth infra, certain claims are brought only by Monica Gray, as executrix of Gray's estate, and other claims are brought by Justin and Jasmine (with Monica Gray as Jasmine's trustee), as well as Gray's estate.

[3] The Amended Complaint alleges that Defendant QBE provided the force-placed insurance from 2012 through 2016, and that Defendant MIC General provided the insurance in 2017. (Amend. Compl. ¶ 83)

as to the cost of the insurance allegedly were contained in various notices sent to the property.  (Amend. Compl. ¶¶ 84, 89)

Plaintiffs also allege that Financial Freedom obtained excessive-- and therefore, allegedly unnecessary-- insurance coverage for the property.  For example, Plaintiffs allege that in 2013, Financial Freedom obtained insurance coverage in the amount of $330,000 even though "the outstanding principle [sic] balance of Gray's loan was $235,600,"-- i.e., substantially less than the coverage amount.  (Amend. Compl. ¶ 84)

Lastly, Plaintiffs allege that Financial Freedom charged Gray's mortgage account for unnecessary inspections.  The first of these charges occurred on March 25, 2011.  (Amend. Compl. ¶ 86)  The other 15 alleged unnecessary inspection fees were charged for inspections done after "Financial Freedom declared Gray's loan due and payable . . . on June 4, 2015."  (Id. ¶¶ 85-86)  Plaintiffs contend that all of the inspections were unnecessary because the property was always "occupied" and "Monica Gray was in regular contact with Financial Freedom concerning the Gray Property."  (Id. ¶ 87)  Plaintiffs allege that Financial Freedom ordered the property inspections "without a legitimate basis solely to generate fees."  (Id. ¶ 69)

The Amended Complaint asserts nine counts: (1) Monica Gray, Executrix v. Financial Freedom and CIT-- breach of contract; (2) Monica Gray, Executrix v. Financial Freedom and CIT-- breach of the duty of good faith and fair dealing;  (3) all Plaintiffs v. Financial

4

Freedom and CIT-- violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("NJ CFA"); (4) all Plaintiffs v. the Insurer Defendants-- violation of the NJ CFA; (5) all Plaintiffs v. all Defendants—civil conspiracy; (6) Monica Gray, Executrix v. the Insurer Defendants-- tortious interference; (7) all Plaintiffs v. all Defendants-- violation of RICO, 18 U.S.C. § 1962(c); (8) all Plaintiffs v. all Defendants-- violation of RICO, 18 U.S.C. § 1962(d); and (9) Monica Gray, Executrix v. CIT-- violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA").

## II. __Motion to Dismiss Standard__

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. "[A]n unadorned, the defendant-unlawfully-harmed me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

<u>Twombly</u>, 550 U.S. at 555 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district should conduct a three-part analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Third, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

<u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011) (internal citations, quotations, and modifications omitted) (quoting <u>Iqbal</u>, 556 U.S. at 675, 679).

Rule 12(b)(6) requires the district court to "accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." <u>Bistrian</u>, 696 F.3d at 358 n. 1. Only the allegations in the complaint and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citing <u>Chester Cty. Intermediate Unit. v. Pennsylvania Blue Shield</u>, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Pension Ben. Guar.</u>

<u>Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

Additionally, Fed. R. Civ. P. 9(b) requires allegations of fraud to be pled with particularity.  The rule applies to NJ CFA claims as well as RICO claims.  <u>Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.</u>, 2018 WL 4360901 at *2 (3d Cir. 2018);  <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007).

### III.  **Analysis**

#### A. **Standing**

Defendants assert that all claims asserted by Plaintiffs Justin Gray and Jasmine Gray-Oliver should be dismissed for lack of standing because the Amended Complaint does not allege that either Justin or Jasmine were the recipients of any allegedly false or misleading communications which form, in part, the basis of the NJ CFA, conspiracy, and RICO claims.

Plaintiffs respond that Defendants frame the claims too narrowly.  According to Plaintiffs, the NJ CFA and attendant conspiracy claim are based on the harm Plaintiffs suffered in the form of an "increased lien against their property" resulting from the alleged "inflated charges" associated with the force-placed insurance (Supp. Brief, Dkt 46, p. 12), not simply the allegedly misleading notices concerning the force-placed insurance sent to the address of the property at issue.  According to Plaintiffs, the claims specific to them accrued in 2017-- after Earl Gray, Jr. died and Defendants

CIT and Financial Freedom allegedly continued to charge the mortgage account for the costs associated with the force-placed insurance. (Id.)

The Court concludes that Justin Gray and Jasmine Gray-Oliver have sufficiently pled that they have personally suffered injuries for which they may pursue the NJ CFA and conspiracy claims for a limited time frame. The Amended Complaint alleges that in 2017, when Justin and Jasmine were the property owners and "responsible to satisfy Financial Freedom's mortgage lien," Financial Freedom charged the mortgage account for "'insurance charges'" in the amount of "$2,357.06 for the period 11/02/2017 to 11/02/2018." (Amend. Compl. ¶ 89-91) Accordingly, the Motions to Dismiss Justin Gray and Jasmine Gray-Oliver's NJ CFA and conspiracy claims for lack of standing will be denied.

As to the RICO claims, Plaintiffs contend that it is not necessary that the allegedly misleading November 9, 2017 notice be addressed to Justin and Jasmine, rather, it is sufficient that the notice-- addressed to Earl Gray, who was then deceased-- was sent to the property at issue. Plaintiffs explain, "these Notice Letters directed to the Estate of Earl Gray were effectively sent to Justin and Jasmine Gray, given that they resided at the Gray Property and were the only ones with an insurable interest in the property and authority to obtain voluntary property insurance." (Supp. Brief, Dkt 46, p. 13) Additionally, the parties agree that Monica Gray was

simultaneously the Executrix of Earl Gray's estate and Jasmine Gray-
Oliver's Trustee (Amend. Compl. ¶¶ 1-3, 88), and the Amended
Complaint alleges that Monica Gray received and read the notice (Id.
¶ 89), effectively imputing direct receipt of the notice at least to
Jasmine.

The Court holds that these alleged facts are sufficient, at the
pleadings stage, to establish the standing of Plaintiffs Justin Gray
and Jasmine Gray-Oliver.  The Motions to Dismiss for lack of standing
will be denied.

**B. HOLA Preemption**

Financial Freedom and CIT assert that all of the state law
claims asserted against them (Counts 1-3, and 5) are preempted by the
Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, and its
implementing regulations, specifically in this case, 12 C.F.R. §§
560.2(b) and (c).[4]  The Court disagrees.[5]

---

[4]  Paragraph (b) of § 560.2 provides the "types of state laws
preempted by paragraph (a)" of the regulation "include, without
limitation, state laws purporting to impose requirements regarding"
thirteen different categories of lending operations.  These
categories include "[t]he terms of credit," "[l]oan-related fees,"
"[e]scrow accounts," and "[d]isclosure and advertising." §
560.2(b)(4), (5), (6), (9).
    Paragraph (c) of § 560.2 provides a list of state laws that "are
not preempted to the extent that they only incidentally affect the
lending operations of Federal savings associations or are otherwise
consistent with the purposes of paragraph (a) of this section." That
list includes "[c]ontract and commercial law." § 560.2(c)(1).

[5]  In light of this ruling, the Court does not reach the issue
whether the protections of HOLA may be transferred from one bank to
another-- *i.e.*, whether HOLA preemption runs with the loan to a
successor, or remains with the originating lender.  See Campidoglio

While neither the Supreme Court, nor the Third Circuit, has ruled on the preemptive effect of these specific regulations on the state law claims asserted here[6], a clear consensus emerges from the persuasive authorities that have addressed these issues.

As to the common law breach of contract claim (Count 1), such claims rarely, if ever, are held to be preempted under either paragraph (b) or (c) of § 560.2. See, e.g., Campidoglio LLC v. Wells Fargo & Co., 870 F.3d 963, 972-73 (9th Cir. 2017) ("the Borrowers' claim against Wells Fargo seeks to impose only the state law requirement that Wells Fargo honor a contractual promise made by its predecessor-in-interest. Contract law is silent regarding terms of credit. Furthermore, it is the contract, not the law, that regulates Wells Fargo's conduct. . . . 'Contract and commercial law' . . . is a

---

LLC v. Wells Fargo & Co., 870 F.3d 963, 971 (9th Cir. 2017) ("Whether, and to what extent, HOLA applies to claims against a national bank when that bank has acquired a loan executed by a federal savings association is an open question in our court. But we need not resolve this question because we find that, even assuming that HOLA applies to the Borrowers' claims against Wells Fargo, it would not preempt the Borrowers' . . . claim.").

[6] In Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141 (1982) the Supreme Court held that 12 C.F.R. § 545.8-3(f), which allowed "due-on-sale" clauses in mortgage contracts, preempted California law which prohibited such clauses.
    The Third Circuit has never issued a decision concerning HOLA preemption other than to rule that HOLA preemption is not a basis for federal question subject matter jurisdiction. See Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia, 657 F.2d 29, 30 (3d Cir. 1981).

law that 'only incidentally affects lending operations.'").[7]
Nonetheless, "courts must look not to the label placed on the claim
but to the substance of the allegation to determine whether HOLA
preemption applies." Barzelis v. Flagstar Bank, F.S.B., 784 F.3d 71,
974-75 (5th Cir. 2015); see also, McCauley v. Home Loan Inv. Bank,
F.S.B., 710 F.3d 551, 556 (4th Cir. 2013) ("the framework supplied by
HOLA's implementing regulation requires an examination of" "all the
acts alleged in the complaint."); In re Ocwen, 491 F.3d at 648 ("On
remand, the [district] judge must focus on the acts alleged in the
complaint, seeking clarification from the plaintiffs where necessary
and deciding in accordance with this opinion which [claims] are
preempted [by HOLA] and which are not."); Brown v. Wells Fargo Bank,
869 F. Supp. 2d 51, 60 (D.D.C. 2012) ("[HOLA] preemption depends on

---

[7] See also, Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 577 (7th
Cir. 2012) ("[W]e [have] held that HOLA and the [Office of Thrift
Supervision] regulations do not preempt suits by 'persons harmed by
the wrongful acts of savings and loan associations' seeking 'basic
state common-law-type remedies,' and we allowed state-law claims like
those in this case-- breach of contract, fraud, and violation of
consumer protection statutes-- to go forward. . . . We decline to
disturb this holding.") (quoting In re Ocwen Loan Servicing , LLC
Mortg. Servicing Litig., 491 F.3d 638, 643 (7th Cir. 2007)); Molosky
v. Washington Mutual, Inc., 664 F.3d 109, 114 (6th Cir. 2011)
("Lending practices cannot be more than incidentally affected by
claims that merely seek to make defendants live up to the word of
their agreements they sign with their customers.") (internal citation
and quotation omitted); Yeomalakis v. FDIC, 562 F.3d 56, 61 (1st Cir.
2009) ("HOLA does not preempt ordinary contractual claims based on
state law."); Wieck v. CIT Group, Inc., et al., 308 F. Supp.3d 1093,
1113 (D. Haw. 2018) (holding common law contract claim not preempted
by HOLA; following Campidoglio, Barzelis, and Molosky).

the nature and effects of the claims alleged.").[8]  If the breach of

contract claim is truly a breach of contract claim, it is not

preempted.  Id.[9]

Turning to the allegations of the Amended Complaint, it is plain

that Count 1, the breach of contract claim, is a traditional common

law breach of contract claim.  Financial Freedom and CIT's assertion

to the contrary notwithstanding (see Supplemental Brief, Dkt 45, p.

9), Monica Gray asserts that Financial Freedom and CIT violated two

express provisions of the mortgage contract.  First, she asserts that

---

[8]  In this regard the Court also emphasizes that its analysis focuses
on the allegations specific to the Plaintiffs-- i.e., the factual
allegations contained in paragraphs 80 through 91 of the 282-
paragrpah, 106-page Amended Complaint.  The Amended Complaint
generally and broadly alleges numerous "unlawful actions" taken by
"Defendants," see, e.g., paragraph 22, and goes well beyond the
necessary and relevant facts supporting Plaintiffs claims to include
allegations concerning "State Insurance Department Regulatory Action
Against the Insurance Providers" as well as "Financial Freedom
[being] Sanctioned by the Justice Department for its Foreclosure
Practices."  Such allegations are not tied in any way to Plaintiffs
and their specific claims-- and frankly do not belong in the
pleading, see Fed. R. Civ. P. 8(a)(2) ("A pleading that states a
claim for relief must contain a short and plain statement of the
claim") (emphasis added)-- therefore, the allegations do not figure
into the Court's analysis.

[9]  In Barzelis, the Fifth Circuit observed that while "Barzelis'
first claim is called breach of contract, [] a closer examination
reveals that it is actually two claims: one based on the provisions
of the Security Instrument and another based on the Texas Property
Code."  784 F.3d at 974.  The Court held that the Texas Property Code
claim, which the Court suggested was "disguise[d]" as a breach of
contract claim "to avoid preemption," was preempted by HOLA.  See
also, Tinsley v. OneWest Bank, FSB, 4 F. Supp.3d 805, 825 (S.D.W. Va.
2014) ("Though Defendant's second claim is also identified in the
Complaint as a 'breach of contract' claim, it does not, in fact,
allege a breach of the terms of the Deed.").

by allegedly (a) charging the cost of the force-placed insurance premiums plus an allegedly undisclosed "unearned commission" or "kickback", and (b) over-insuring the property at issue, Financial Freedom and CIT violated the mortgage contract provision which states that "Lender may do and pay whatever is *necessary* to protect the value of the Property and Lender's rights in the Property, including the payment of taxes, hazard insurance and other items . . . ." (Amend. Compl. ¶ 82) (emphasis added)  According to Plaintiff, the unearned commission and the cost of the excess insurance were not "necessary" to protect the property; rather those extra charges served only to enrich Financial Freedom and CIT.  (Opposition Brief, Dkt. 32, p. 23)

Second, Monica Gray asserts that the inspection fee charges violate the mortgage contract provision concerning property inspections.  That provision states: "Lender . . . may . . . inspect . . . the Property in a reasonable manner . . . provided that [the] . . . purpose for the inspection . . . must be related to the Lender's interest in the Property."  (Amend. Compl. ¶ 82)  Plaintiff asserts that "because the property was not vacant, Plaintiffs were in contact with Financial Freedom, and that inspection fees were generated automatically by the default status of the loan," (Opposition Brief, Dkt. 32, p. 29) the inspections were "not reasonable and [therefore] in breach of" the inspection fee provision of the mortgage contract.

Both of these claims allege only that Financial Freedom and CIT failed to honor their contractual promises, therefore the Court holds that such claims "only incidentally affect the lending operations of Federal savings associations . . . ." 12 C.F.R. § 560.2(c), and are not preempted. See Tinsley, 4 F. Supp. 3d at 825 ("Plaintiffs claim that Defendant required Plaintiff to get flood insurance in excess of what was required under the Deed of Trust and force-placed such insurance, charging the cost to Plaintiff, is not preempted under HOLA.").

Logically, the same result should obtain as to the breach of good faith and fair dealing claim (Count 2), which, for purposes of the HOLA preemption analysis, is not meaningfully distinguishable from the breach of contract claim. See Degutis v. Financial Freedom, LLC, 978 F. Supp. 2d 1243, 1256 (M.D. Fla. 2013) ("Because Plaintiff is bringing a common law claim for breach of the implied covenant of good faith and fair dealing based upon the contract, the Court finds that Plaintiff's [breach of contract and good faith and fair dealing claims] are not preempted as they are expressly exempted under 12 C.F.R. § 560.2(c)."); cf. Binetti v. Washington Mut. Bank, 446 F. Supp. 2d 217, 218–19 (S.D.N.Y. 2006) (explaining that HOLA did not preempt plaintiff's breach of contract claim and therefore it did not preempt "plaintiff's wholly-derivative unjust enrichment claim."). Plaintiff explains in her opposition brief that her good faith and fair dealing claims are premised on the same conduct as her breach of

contract claims.  (Opposition Brief, Dkt. 32, p. 35) ("Plaintiffs

challenge CIT Bank's abuse of its discretion . . . by charging for

items unrelated to the cost of the insurance and selecting policies

that benefit themselves through unearned commissions and other

kickbacks.").  The Court thus holds that the good faith and fair

dealing count is not preempted by HOLA.

Similarly, as to the New Jersey Consumer Fraud Act claim (Count

3), courts have held that claims under state consumer protection

statutes that are based on conduct which is simultaneously an alleged

breach of contract, as well as allegedly violative of the state

consumer protection statute[10], are not preempted by HOLA.  See

Barzelis, 784 F.3d at 976-97 ("We agree with the consensus,

concluding that similar state consumer-protection laws-- those that

establish the basic norms that undergird commercial transactions-- do

not have more than an incidental effect on lending and thus escape

preemption.") (internal citations and quotation omitted); Wigod, 673

F.3d at 578-79 (holding Illinois Consumer Fraud and Deceptive

Business Practices Act claims not preempted by HOLA); Foley v. Wells

Fargo Bank, N.A., 109 F. Supp. 3d 317, 326 (D. Mass. 2015) ("HOLA

does not preempt [Massachusetts Consumer Protection law] claims where

the purported violation was based on breach of contract."); Tinsley,

---

[10]  Plaintiffs explain in their opposition brief that their NJ CFA
claim is based on the allegations that "Defendants imposed on
borrowers" "extraneous charges" "which [Defendants] misrepresented as
'costs' of force-placed insurance." (Opposition Brief, Dkt 33, p. 16)

4 F. Supp.3d at 827 (holding that state consumer fraud act claims based on "affirmative misrepresentations" and alleged breaches of contract are not preempted by HOLA); Degutis, 978 F. Supp.2d at 1257 ("Because Plaintiff is bringing a claim regarding deceptive acts and practices under the Florida statute, the Court finds that Plaintiff's claims under Count III are not preempted. They are expressly exempted under 12 C.F.R. § 560.2(c) as it encompasses commercial law and is vital to state interest only incidentally affecting lending operations.") (citing McCauley and Wigod); Binetti, 446 F. Supp. 2d at 220 ("the New York Consumer Fraud Statute, which declares unlawful 'deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state,' is not directly aimed at lenders, and has only an incidental impact on lending relationships. . . . Additionally, there is nothing in the record to suggest that the New York statute is in conflict with the federal objectives identified in § 560.2. Indeed, the New York Consumer Fraud Statute is precisely the type of general commercial law designed to "'establish the basic norms that undergird commercial transactions' that OTS has indicated it does not intend to preempt."); see also, Tuxedo Beach Club Corp. v. City Federal Savings Bank, 749 F. Supp. 635 (D.N.J. 1990) ("Defendant correctly points out that the Savings and Loan industry is intensely regulated by Congress. However, defendant does not point to, nor does our research reveal, any provision in FIRREA or any other federal statute

16

which would conflict with a private right of action under the [NJ] CFA. . . . Notably, other states have applied their consumer fraud statutes against banks and savings institutions.") (internal citations omitted); contrast <u>Midouin v. Downey Sav. & Loan Ass'n, F.A.</u>, 834 F. Supp. 2d 95, 115 (E.D.N.Y. 2011) ("Because plaintiff's claims do not arise from a breach of contract, but rather attempt to establish extra-contractual substantive requirements for savings associations . . . , her claims seek an application of state law that would more than incidentally affect federal lending practices. Accordingly, plaintiff's claims under NYGBL § 349 are preempted by HOLA."). Thus, the Court holds that Count 3, the NJ CFA claim against CIT and Financial Freedom, is not preempted by HOLA.

Lastly, Financial Freedom and CIT make no argument for preemption of the conspiracy claim (Count 5) that is independent of the NJ CFA claim discussed above. (See Moving Brief, Dkt 31-3, p. 15) Because the NJ CFA claim survives, this claim survives as well.

Accordingly, the Court holds that none of the state law claims, as pled, asserted against CIT and Financial Freedom in this suit are preempted by HOLA.

### C. Breach of Contract / Breach of Good Faith and Fair Dealing

In addition to HOLA preemption, Financial Freedom and CIT also assert that the breach of contract claim, and the good faith and fair dealing claim, fail on the merits. They argue that: (1) the mortgage was not breached; (2) Plaintiff failed to perform under the mortgage;

and (3) Plaintiff has not alleged damages.  All three arguments fail at this pleadings stage.

First, as discussed above, Plaintiff Monica Gray asserts that two specific provisions of the mortgage contract were breached in three different ways.  CIT's and Financial Freedom's arguments to the contrary misunderstand Plaintiff's claims.  Plaintiff does not, as Defendants assert, base her breach of contract claims on allegations that CIT and Financial Freedom "plac[ed] insurance on the Property and backdat[ed] coverage" (Moving Brief, Dkt 31-1 p. 17), and she does, indeed, "challenge the inspection activity in her breach of contract count." (Id. p. 18)  Likewise, Defendants misunderstand the good faith and fair dealing claim.  As already stated, Plaintiffs do not assert that Defendants had no "right to place insurance on the Property when Mr. Gray failed to do so." (Reply Brief, Dkt 35, p. 8)

Second, while it is undisputed that Gray and his successors-in-interest did not obtain the requisite hazard insurance on the property and did not pay the property taxes, those facts do not legally bar the breach of contract claim.  Upon each failure to obtain hazard insurance and failure to pay taxes, Defendants elected their remedies as provided in the mortgage contract-- at first charging the mortgage account for the costs (Amend. Compl. ¶ 83), and later declaring a default and commencing a foreclosure action. (Amend. Compl. ¶¶ 85-86)  It is not alleged that CIT / Financial

Freedom elected to terminate the mortgage contract upon the failure to obtain insurance or pay taxes.

Third, Defendants argue that Plaintiff has not alleged damages because it is not alleged that anyone ever paid the alleged excessive, unreasonable or unnecessary charges. As Plaintiff correctly observes, however, the charges resulted in increased indebtedness on the mortgage, which is a quantifiable, concrete injury.

Moreover, lack of damages is not a complete defense to a breach of contract claim. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 46 (1984) ("The general rule is that whenever there is a breach of contract, or an invasion of a legal right, the law ordinarily infers that damage ensued, and, in the absence of actual damages, the law vindicates the right by awarding nominal damages."); see also, Coca-Cola Bottling Co. of Elizabethtown v. Coca-Cola Co., 988 F.2d 386, 409 (3d Cir. 1993) (discussing "the general proposition that a breach of contract without pecuniary harm entitles the non-breaching party to no more than nominal damages"; citing Restatement (Second) of Contracts § 346(2)).[11]

Accordingly, the Motion to Dismiss the breach of contract and good faith and fair dealing claims (Counts 1 and 2) will be denied.

---

[11] In general, a lack of damages is mainly a complete defense to tort claims sounding in negligence. See Nappe, 97 N.J at 48 ("[i]t is well established that the plaintiff must show a breach of duty *and* resulting damage to prevail in a negligence action.") (italics in original). Such claims are not asserted in this suit.

**D. New Jersey Consumer Fraud Act**

All Defendants move to dismiss the NJ CFA claims (Counts 3 and 4) asserting that Plaintiffs fail to allege: (1) a misrepresentation; (2) an unconscionable commercial conduct; and (3) an ascertainable loss.  The Court disagrees.

The NJ CFA provides, in relevant part,

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. . . .

N.J.S.A. § 56:8-2.

With respect to argument (1), like their arguments as to the breach of contract claims, Defendants misperceive the nature of Plaintiffs' claims.  Plaintiffs do not complain of the fact that hazard insurance was force-placed on the property at issue, and therefore they do not complain about actions that were specifically contemplated and disclosed in the mortgage contract.  Rather, Plaintiffs assert that the cost of the force-placed insurance was misrepresented because that cost "include[ed] extraneous charges"

resulting from the alleged "unearned compensation" / "kickback" scheme. (Opposition Brief, Dkt 33, p. 16)[12]

Moreover, Defendants' argument that they disclosed that they "may receive compensation in connection with the insurance coverage" (Supp. Brief, Dkt 45, p. 16), and therefore could not have misrepresented anything, fails for two reasons.  First, it relies on documents outside the pleadings.  Second, it is too vague to defeat a plausible conclusion that the disclosure was misleading.  Plaintiffs contend that the misrepresentation was not that Defendants may have received compensation, but rather that the "cost" of their insurance premiums was not the actual cost.

With respect to argument (2), the Court disagrees that Plaintiffs' NJ CFA claim which is based upon the alleged unnecessary inspection fees fails for lack of a deceptive element.  See Ciser v. Nestle Waters N. Am. Inc., 596 F. App'x 157, 162 (3d Cir. 2015) ("Until the New Jersey Supreme Court decides otherwise, we read precedent as suggesting that the CFA requires some element of deceptive conduct, explicit or implicit, to be actionable as an unconscionable practice.").  Plaintiffs allege that CIT and Financial Freedom misrepresented the circumstances under which they would

---

[12] See also, Amend. Compl. ¶ 21 ("Plaintiffs do not challenge Financial Freedom's ability to obtain force-placed insurance to protect its interest in borrowers' loans it services as set forth in their mortgage agreements.  Rather, they challenge its manipulation of the force-placed insurance process through its scheme with the other Defendants to enrich itself and the other Defendants[.]").

inspect the property.  This is sufficient at this stage of the case, although just barely[13], to state a claim for violation of the NJ CFA based on an alleged unconscionable commercial practice.

Lastly, with respect to argument (3), consistent with the Court's discussion above concerning the damages resulting from the breach of contract claim, the Court holds that the Amended Complaint sufficiently pleads an ascertainable loss.  As the Third Circuit has recently explained,

> The CFA requires a plaintiff to allege "ascertainable loss." See N.J. Stat. Ann. § 56:8-19; D'Agostino v. Maldonado, 216 N.J. 168, 78 A.3d 527, 536-37 (2013).  The New Jersey Supreme Court has defined "ascertainable loss" as "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measureable." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 606 (3d Cir. 2012) (quoting Thiedemann v. Mercedes-Benz U.S.A., LLC, 183 N.J. 234, 872 A.2d 783, 792-93 (2005)) (internal quotation marks omitted).  Furthermore, that court has held that such a loss "need not yet have been experienced as an out-of-pocket loss to the plaintiff." Thiedemann, 872 A.2d at 793.  The New Jersey Superior Court Appellate Division

---

[13] Although the parties' briefs do not distinguish between the one inspection that occurred before the loan was "declared . . . due and payable" (Amend. Compl. ¶¶ 85-86) and the other 15 alleged inspections, the distinction could be material.  Plaintiffs' theory of their case appears to be that inspections are only "necessary," as that term is used in the contract, to determine that a house is "occupied."  (Amend. Compl. ¶ 87)  This theory is somewhat more plausible with respect to the one inspection that took place prior to the acceleration of the loan.  With respect to the other inspections, however, the theory becomes somewhat less plausible.  Upon acceleration, the lender may have legitimate concerns about intentional damage to its collateral that do not exist (or exist to a lesser extent) prior to acceleration.  While the Court need not explore the distinction further at this early stage of the case, counsel are encouraged to consider that such a distinction may have important implications at both the class certification stage and summary judgment stage of this case, should this case progress that far.

>has stated that a plaintiff is not required to allege the
>nature of the loss or present evidence of it at the motion
>to dismiss stage.

Alpizar-Fallas v. Favero, 908 F.3d 910, 919 (3d Cir. 2018).  The

alleged increased indebtedness that resulted from the alleged

excessive, unreasonable or unnecessary charges associated with the

force-placed insurance and property inspections is an ascertainable

loss under the standard discussed in Alpizar-Fallas.  Thus, the Court

holds that the Amended Complaint sufficiently pleads an ascertainable

loss.

Defendants' Motions to Dismiss the NJ CFA claims will be denied.

## E.  Conspiracy

Defendants briefly argue in conclusory fashion that the

conspiracy claim (Count 5) fails because it does not "adequately

allege an underlying fraud" (Moving Brief, Dkt 31-1 p. 28) or a

"valid underlying tort claim." (Supp. Brief, Dkt 45 p. 20)  As the

Court has held above, Plaintiffs have stated claims for violation of

the NJ CFA.  Accordingly, Defendants' argument as to the conspiracy

claim fails.  The Motions to Dismiss the conspiracy claim will be

denied.

## F.  RICO

Defendants assert that the RICO claims (Counts 7 and 8) are

time-barred and that they fail on the merits.

As to the statute of limitations issue, Plaintiffs contend that

equitable tolling applies, or that the injury discovery rule delays

the accrual of their claims. Defendants disagree, but do so relying on an opinion deciding a motion for summary judgment, <u>Weiss v. Bank of America</u>, 2016 WL 6879566 (W.D.Pa. Nov. 22, 2016), and evidence outside the pleadings, namely, the Balettie Declaration. Defendants' argument in this regard demonstrates that the statute of limitations issue-- one in which they ultimately may prevail-- is better decided after discovery.

The Amended Complaint specifically alleges that in "notices" that were mailed to Plaintiffs in 2010 through 2016, Defendants actively misled Plaintiffs to believe that Defendants were only imposing charges authorized by the mortgage. (Amend. Compl. ¶ 217) This is sufficient, at the pleadings stage, to nudge the equitable tolling issue past the line of possible, and into the realm of plausible. Thus, the Court declines to rule on the issue now.

Turning to the merits, Defendants assert that the Amended Complaint suffers from four deficiencies: failure to particularly allege (1) an injury; (2) CIT's participation in the "conduct" of an enterprise; (3) any predicate act of mail or wire fraud; and (4) the existence of an association-in-fact enterprise.

With regard to the injury argument, the Court will not belabor the point. As discussed above with regard to the damages element of the breach of contract claims, and the ascertainable loss element of the NJ CFA claims, Plaintiffs have sufficiently pled an injury in the form of increased indebtedness.

As to the "conduct" issue, the parties agree on the applicable standard: a defendant "must have some part in directing the affairs of the RICO enterprise." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993); see also, In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 371 (3d Cir. 2010) ("The Supreme Court has held that the 'conduct or participate' element requires a defendant to 'have some part in directing those affairs.' More precisely, 'one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself.'") (quoting Reves). The Amended Complaint contains numerous allegations concerning CIT's participation in the alleged enterprise. See generally, Amend. Compl. ¶¶ 231-245. Specifically, paragraph 234 of the Amended Complaint alleges,

> CIT Bank participated in the operation and management of the enterprise during the relevant time period by agreeing to grant the QBE Defendants and MIC General the exclusive right to force-place insurance on borrowers' properties in the Financial Freedom portfolio in exchange for kickbacks under the Insurance Producer Agreement, and below-cost insurance administration services under the Outsourcing Services Agreement.

See also, Amend. Compl. ¶¶ 22(b), 258. Defendants' supplemental brief does not address any of these factual allegations. Defendants simply fall back on the generalized legal arguments made in their moving and reply briefs. (Supp. Brief Dkt 45, p. 22) The Court thus considers the point conceded for purposes of these motions and need not rule on the issue.

Similarly, the Amended Complaint elaborates on both the predicate acts and association-in-fact elements of Plaintiffs' RICO claims.  See Amend. Compl. ¶¶ 244-257 (predicate acts of alleged mail fraud) and ¶¶ 223-30 (association-in-fact).  Defendants have not addressed these specific factual allegations either, and so the Court considers these points conceded for purposes of these motions as well.

The Motions to Dismiss the RICO claims will be denied.

**G. TILA**

CIT asserts that the TILA claim (Count 9) is time-barred. Plaintiffs respond that equitable tolling should apply based on the misrepresentations alleged in the Amended Complaint.  CIT replies that Plaintiffs must nonetheless demonstrate that they exercised reasonable diligence.  As set forth above, equitable tolling is more appropriately addressed on a developed record rather than at the pleadings stage.  Accordingly, like the RICO statute of limitations issue, the Court declines to rule on the TILA statute of limitations issue at this time.

In support of its argument that Plaintiffs have failed to state a TILA claim, CIT once again reiterates its argument that "the Mortgage authorized Financial Freedom to place insurance on the Property if Plaintiff failed to maintain insurance as required by the Mortgage."  (Moving Brief, Dkt 31-3 p. 38; see also Supp. Brief, Dkt

45 p. 26)  As discussed above, this is not Plaintiffs' theory of liability as to any of the claims asserted in the Amended Complaint.

CIT's Motion to Dismiss the TILA claim (Count 9) will be denied.

**H. Tortious Interference**

Lastly, the Insurer Defendants assert that the tortious interference claim should be dismissed for lack of allegations supporting a plausible conclusion that the Insurer Defendants acted with "malice."  In the context of a tortious interference claim, "[m]alice is not used [] in its literal sense to mean 'ill will;' rather, it means that harm was inflicted intentionally and without justification or excuse."  Lamorte Burns & Co. v. Walters, 167 N.J. 285, 306 (2001).  Thus, the Insurer Defendants assert that the Amended Complaint does not allege facts supporting a plausible conclusion that the Insurer Defendants intended to interfere with the mortgage contract at issue.  The Court agrees.

While Plaintiffs' Supplemental Brief points to the Amended Complaint's expanded factual allegations in support of the tortious interference claim-- namely, that the Insurer Defendants allegedly drafted and mailed letters that allegedly misrepresented what Plaintiffs were being charged (Supp. Brief, Dkt 46, p. 29, citing Amend. Compl. ¶¶ 216-217)-- none of those facts support a conclusion that the Insurer Defendants intended for CIT and Financial Freedom to allegedly charge Plaintiffs more than the cost of the insurance and to allegedly conduct unwarranted inspections of the property.

Further, Plaintiffs' allegations in Amended Complaint paragraphs 214 and 215 that the Insurer Defendants "intentionally and unjustifiably interfered with Plaintiffs' . . . rights under the mortgage" are merely conclusory, and therefore cannot defeat a motion to dismiss.

Accordingly, the Insurer Defendants' Motion to Dismiss the tortious interference claim will be granted.

## IV. <u>Conclusion</u>

For the forgoing reasons, the Insurer Defendants' motion will be granted as to the tortious interference claim and denied in all other respects; and the other Defendants' motion will be denied. An Order accompanies this Opinion.

December 27, 2018                  <u>s/ Renée Marie Bumb</u>
                                   RENÉE MARIE BUMB
                                   UNITED STATES DISTRICT JUDGE