## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MONICA GRAY, AS EXECUTRIX OF THE ESTATE OF EARL GRAY, JR. AND AS TRUSTEE OF THE INTEREST OF JASMINE GRAY-OLIVER, JUSTIN GRAY, AND JULIA WIECK, on behalf of themselves and all others similarly situated, | **CASE NO. 1:18-cv-01520-RMB-AMD** |
| Plaintiffs, | **STIPULATION AND SETTLEMENT AGREEMENT** |
| v. |  |
| CIT BANK, N.A., QBE INSURANCE CORPORATION, QBE FIRST INSURANCE AGENCY, INC., AND MIC GENERAL INSURANCE CORPORATION, |  |
| Defendants. |  |

IT IS HEREBY STIPULATED AND AGREED, by, between, and among Plaintiffs Monica Gray, as executrix of the Estate of Earl Gray, Jr., and as trustee of the interests of Jasmine Gray Oliver, and Justin Gray (collectively "the *Gray* Plaintiffs"), Julia Wieck ("Wieck," and collectively with the *Gray* Plaintiffs, "Named Plaintiffs"), on behalf of themselves and all Settlement Class Members as defined herein, and CIT Bank, N.A. ("CIT Bank"), QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc. (collectively with QBE Insurance Corporation, "QBE Insurance") and MIC General Insurance Corporation ("MIC General," and collectively with CIT Bank and QBE Insurance, "Defendants"), that the lawsuit originally captioned *Monica Gray, as executrix of the Estate of Earl Gray, Jr., and trustee of the interests of Jasmine Gray Oliver and Justin Gray v. CIT Bank, N.A., et al.,* 18-cv-01520-RMB-AMD in the United States District Court for the District of New Jersey (the "*Gray*

Litigation" or the "Litigation") and the matters raised by, or which could have been raised by, the *Gray* Litigation are settled, compromised, and dismissed on the merits and with prejudice on the terms and conditions set forth in this Settlement Agreement and the Release set forth herein, subject to the approval of the Court.

## 1. RECITALS

1.1    Class counsel began investigating and litigating Lender Placed Insurance ("LPI") related class claims against CIT Bank and Affiliates of QBE Insurance more than a year prior to the filing of the complaint commencing this action in February 2018.  Class counsel represented Plaintiff Julia Wieck in the substantially similar class action lawsuit she commenced against CIT Bank, QBE Insurance Affiliate Seattle Specialty Insurance Services, Inc., and other defendants, styled *Wieck v. CIT Bank, N.A., Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London, and Great Lakes Reinsurance (UK), PLC,* in the federal district court for the District of Hawaii, Case. No. 1:16-cv-00596 JMS-WRP, on November 4, 2016 (the "*Wieck* Action").  Plaintiff Wieck alleged CIT Bank and the other *Wieck* Defendants had engaged in a lender-placed insurance scheme involving the imposition of windstorm property insurance coverage on her and similarly situated reverse mortgage borrowers' homes.

1.2    There was extensive motion practice before the District of Hawaii.  The *Wieck* Defendants moved to dismiss Plaintiff Wieck's First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) on May 17, 2017, which Wieck opposed.  The motions were argued on September 11, 2017.  The parties submitted supplemental briefing on the motions in September 2017, October 2017 and March 2018.  The Court entered an Order on March 30, 2018, which denied the *Wieck* Defendants' Rule 12(b)(1) motion, and granted in part and denied in part their Rule 12(b)(6) motions.

2

1.3.     In response to the Court's Order upholding certain of Wieck's claims, Wieck filed her Second Amended Complaint on May 11, 2018.  A second round of motion practice ensued. The Court entered an Order, which granted in part and denied in part the *Wieck* Defendants' motions on November 2, 2018.  The *Wieck* Defendants filed their Answers to Wieck's Second Amended Complaint on April 1, 2019.

1.4.     Discovery in *Wieck* had been stayed pending the *Wieck* Defendants' motions to dismiss the First Amended Complaint.  Discovery in the *Wieck* case moved forward after the court ruled on the *Wieck* Defendants' motions to dismiss the First Amended Complaint on March 30, 2018.  On May 10, 2018, the court entered a Scheduling Order, which incorporated the discovery plan agreed to by the parties.  As a result, the *Wieck* Defendants produced over 2500 pages of documents in response to targeted discovery demands.  Plaintiff *Wieck* thereafter deposed a representative of CIT Bank on April 4, 2019 and a representative of QBE Insurance Affiliate Seattle Specialty Insurance Services, Inc. on April 10, 2019.

1.5.     The *Gray* Plaintiffs commenced this putative nationwide class action on February 2, 2018.  The *Gray* Plaintiffs alleged a lender-placed insurance scheme between CIT Bank, QBE Insurance and MIC General involving their imposition of hazard LPI coverage on the *Gray* Plaintiffs' and similarly situated reverse mortgage borrowers' properties.

1.6.     In the *Gray* Litigation, Plaintiffs asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with a business relationship, and violations of the Racketeer Influenced and Corrupt Organization Act, among other claims.

1.7.     On May 25, 2018, in response to the Complaint, Defendants CIT and QBE Insurance each filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  The *Gray* Plaintiffs opposed the motions.  The Court issued an Order granting in part and denying in part Defendants' motions to dismiss.  The Court directed the *Gray* Plaintiffs to file an Amended Complaint within 45 days of the Order.  On September 24, 2018, the *Gray* Plaintiffs filed their First Amended Complaint.

1.8.    On October 15, 2018, Defendants filed Motions to Dismiss the First Amended Complaint.  The *Gray* Plaintiffs opposed the motion.  On December 27, 2018, the Court entered an order granting the QBE Insurance and MIC General Defendants' motion to dismiss Plaintiffs' tortious interference claim, and denying the motion in all other respects.  Defendants filed their Answers to the First Amended Complaint on January 24, 2019.

1.9.    Based upon the Complaint, the significant briefing in this case, and the briefing and discovery in the *Wieck* Action, and the knowledge and experience of counsel gained from the numerous other LPI actions in which they have represented parties, the Parties to the *Gray* Litigation agreed to engage in mediation.

1.10.    On May 2, 2019, the Parties retained Jonathan Marks of Marks ADR as the mediator and entered into a mediation agreement.  An in-person mediation session was held in Washington, D.C. on May 29, 2019.  Thereafter, Mr. Marks conducted telephonic mediation sessions with each of the parties.

1.11.    In the course of the mediation, the Defendants provided Plaintiff and Class Counsel with additional information concerning CIT Bank's, QBE Insurance's and MIC General's LPI programs, including aggregate LPI premium information across the country for the hazard and windstorm programs.

1.12.    The Parties made significant progress in the course of the mediation and ultimately a settlement in principle was reached.  The Settling Parties' Counsel signed a Settlement Outline that identified the material terms for this Settlement Agreement on August 15, 2019.

1.13.    On October 25, 2019, the Plaintiffs filed an Amended Complaint adding Julia Wieck as a Named Plaintiff and conforming the definition of the Class therein to that appearing in Section 3 below.

1.14.    Class Counsel has significant experience litigating LPI claims, having represented plaintiffs in numerous putative class actions brought in the United States District Courts for the District of New Jersey and the Southern District of Florida, including *DiGiacomo v. Statebridge, Inc.*, 14-cv-06694 (D.N.J. Oct. 27, 2015); *Bowles v. Fay Servicing*, 16-cv-02714 (D.N.J. May 12, 2016); *Santos v. Carrington Mortgage Services*, 15-cv-00864 (D.N.J. Feb. 4, 2015); *Strickland v. Carrington Mortgage Services*, et al., 16-cv-25237(S.D. Fl.  Dec. 18. 2016); *Hall v. Bank of America, N.A.*, No. 12-cv-22700 (S.D. Fl. July 24, 2012); *Lee v. Ocwen Loan Servicing LLC*, No. 14-cv-60649, (S.D. Fl. March 14, 2014); *Montoya v. PNC Bank, N.A.*, Case No. 1:14-cv-20474 (S.D. Fl. Feb. 6, 2014); *Soler v. IndyMac Mortgage*, No. 14-cv-22541 (S.D. Fl. July 9, 2014); *Almanzar v. Select Portfolio Servicing, Inc.*, No. 14-cv-22586 (S.D. Fl. July 11, 2014); and *Wilson, et al. v. EverBank, et al.,* No. 1:14-cv-22264 (S.D. Fl. June 8, 2014).  Based on this experience, Class Counsel believes that the *Gray* Litigation has significant merit and that the evidence developed supports Plaintiffs' claims.  Class Counsel recognizes and acknowledges, however, that prosecuting the *Gray* Litigation through fact and expert discovery, class certification, dispositive motions, trial, and appeals will involve considerable uncertainty, time, and expense.

1.15.    Class Counsel has concluded that it is in the best interests of the Class as a whole that the claims asserted in the *Gray* Litigation be resolved on the terms and conditions set forth in

this Agreement.   After extensive consideration and analysis of the factual and legal issues presented in the *Gray* Litigation and the *Wieck* Action, and extensive mediation sessions, Class Counsel has reached the conclusion that the substantial benefits the Settlement Class Members will receive as a result of this Settlement are a very good result in light of the risks and uncertainties of continued litigation, the expense that would be necessary to prosecute the *Gray* Litigation through trial and any appeals that might be taken, and the likelihood of success at trial.

1.16.   Defendants have denied, and continue to deny, each and every allegation of liability, wrongdoing, and damages, as they have substantial factual and legal defenses to all claims and class allegations in the *Gray* Litigation and the *Wieck* Action.   Defendants have always maintained, and continue to maintain, that they have acted in accordance with all applicable agreements and governing law.   Nonetheless, Defendants have concluded that because the continuation of the *Gray* Litigation would be protracted and expensive, it is desirable that the *Gray* Litigation be fully and finally settled on a class-wide basis in the manner and upon the terms set forth in this Agreement.

1.17.   Without admitting any liability or wrongdoing whatsoever, Defendants agree to the terms of this Agreement, provided that all Released Claims are settled, compromised, and released, in order to resolve all issues relating to the subject matter of the *Gray* Litigation and the *Wieck* Action.

## 2.   DEFINITIONS

As used herein, the following terms have the meanings set forth below.

2.1.   "Administrator" or "Settlement Administrator" means a third-party agent or administrator selected by Defendants (with the consent of the Class Counsel, which consent shall

not be unreasonably withheld) to help implement and effectuate the terms of this Settlement Agreement.

2.2.   "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control or ownership with such entity.

2.3.   "Agreement" or "Settlement Agreement" means this Stipulation and Settlement Agreement, including all exhibits thereto.

2.4.   "Attorneys' Fees and Expenses" means such funds as may be awarded to Class Counsel to compensate them (and all other attorneys for Named Plaintiffs or the Settlement Class) for their fees and all expenses incurred by Named Plaintiffs or Class Counsel in connection with the *Gray* Litigation and the *Wieck* Action.

2.5.   "Borrowers" means (1) the person or persons who signed a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom and secured by residential property; and (2) property owners who were devised property secured by a reverse mortgage serviced by Financial Freedom where the devisor's reverse mortgage account was charged for an LPI Policy by Financial Freedom after the property had been devised to the property owner.

2.6.   "Case Contribution Award" means compensation for the Named Plaintiffs for their time and effort undertaken in the *Gray* Litigation and the *Wieck* Action.

2.7.   "Claim" means a written request for Claim Settlement Relief submitted by a Settlement Class Member to the Settlement Administrator, pursuant to the Claim Form Instructions in substantially the form of Exhibit A to this Agreement or as ultimately approved by the Court, using a Claim Form in substantially the form of Exhibit B to this Agreement or as ultimately approved by the Court.

2.8.   "Claim Deadline" means the last date by which a Claim submitted to the Settlement Administrator by a Settlement Class Member for Claim Settlement Relief must be postmarked or, if submitted electronically via the Settlement Website, the date actually submitted, which shall be set by mutual agreement of the Parties to occur on a date no later than sixty (60) days after the Final Settlement Date.   All Claims postmarked or submitted electronically via the Settlement Website on or before the Claim Deadline shall be timely, and all Claims postmarked or submitted electronically via the Settlement Website after the Claim Deadline shall be untimely and barred from entitlement to any Claim Settlement Relief.

2.9.    "Claimant" means any Settlement Class Member who submits a Claim pursuant to this Settlement Agreement.

2.10.   "Claim Form" means the documents in the form attached as Exhibit B to this Agreement and/or as ultimately approved by the Court.

2.11.   "Claim Form Instructions" means the documents in the form attached as Exhibit A to this Agreement and/or as ultimately approved by the Court.

2.12.   "Claim Settlement Relief" means the cash award payment to be made to Settlement Class Members who submit properly completed and timely Claim Forms to the Settlement Administrator pursuant to the Claim Form Instructions, and who qualify for such relief under this Settlement Agreement.

2.13.   "Class Counsel" means the law firms of Law Office of Roosevelt N. Nesmith, LLC and Giskan, Solotaroff & Anderson LLP.

2.14.   "Class Notice" or "Notice" means the program of notice described in Section 6 of this Agreement to be provided to Settlement Class Members, including the Mail Notice and Settlement Website, which will notify Settlement Class Members, among other things, about their

rights to opt out or object to the Settlement, the preliminary approval of the Settlement, the manner by which to submit a Claim, and the scheduling of the Final Approval Hearing.

2.15.   "Court" means the United States District Court for the District of New Jersey.

2.16.   "Days" means calendar days, except that, when computing any period of time prescribed or allowed by this Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  Further, when computing any period of time prescribed or allowed by this Agreement, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday.  All calculations of days and times shall be adjusted to permit compliance by Defendants with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715, including the notifications of appropriate regulators under 28 U.S.C. § 1715(b) and expiration of the 90-day review period in 28 U.S.C. § 1715 before the Fairness Hearing is held in the Litigation to review and approve the Settlement.

2.17.   "Defendants" mean all named defendants in the *Gray* Litigation, including CIT Bank, QBE Insurance, NGLS Insurance Services, Inc. f/k/a/ QBE FIRST Insurance Agency, Inc., and MIC General.

(a)   CIT Bank means CIT Bank, N.A., and its predecessors and successors, and all of their parents, subsidiaries, Affiliates, and divisions, including Financial Freedom, and all of their predecessors, successors, parents, subsidiaries, Affiliates, and divisions.

(b)   QBE Insurance means QBE Insurance Corporation and its predecessors and successors, and all of its Affiliates, including QBE FIRST insurance Agency Inc., n/k/a NGLS Insurance Services, Inc., and Seattle Specialty Insurance Services, Inc., and all of their predecessors, successors, and Affiliates.

(c)      MIC General means MIC General Insurance Corporation, and its predecessors and successors, and all its Affiliates, including NGLS Insurance Services, Inc. and Seattle Specialty Insurance Services, Inc.

(d)      Pursuant to Section 14.1 of this Settlement Agreement, the Plaintiffs filed a Second Amended Complaint prior to the Application for Preliminary Approval that added Julia Wieck as a Named Plaintiff in the *Gray* Litigation. The Settling Parties agree that Julia Wieck shall be considered a Named Plaintiff for purposes of this Agreement.

2.18.    "Defense Counsel" means Defendants' counsel of record in the *Gray* Litigation.

2.19.    "Final" with respect to the Judgment or to any award of Attorneys' Fees and Expenses means that the time for appeal or writ review has expired or, if an appeal or petition for review is taken and dismissed or the Settlement (or award of Attorneys' Fees and Expenses) is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired. If the Judgment is set aside, modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the Judgment shall not become Final.

2.20.    "Final Approval" means the entry of the Judgment approving the Settlement after the Final Approval Hearing is conducted.

2.21.    "Final Approval Hearing" means the hearing held by the Court to determine whether the terms of this Agreement are fair, reasonable, and adequate for the Settlement Class as a whole, whether the Settlement should be granted final approval, and whether the Judgment should be entered.

2.22.    "Final Settlement Date" means the date on which the Final Order and Judgment in this case becomes Final (as defined in Section 2.19). If no appeal has been taken from the Final Order and Judgment, the Final Settlement Date means the date on which the time to appeal has

expired.  If any appeal has been taken from the Final Order and Judgment, the Final Settlement Date means the date on which all appeals, including petitions for rehearing, petitions for rehearing *en banc*, and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order and Judgment.

2.23.   "Financial Freedom" means Financial Freedom, a division of OneWest Bank, FSB, which later was known as Financial Freedom, a division of OneWest Bank, N.A., and later was known as Financial Freedom, a division of CIT Bank, until CIT Bank sold the Financial Freedom reverse mortgage servicing business.

2.24.   "Inheritors" means a devisee, legatee, heir, beneficiary or recipient of a Borrower's property upon the death of the Borrower, whether testate or intestate.

2.25.   "Insurance Entities" means Balboa Insurance Company, QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc. and any of its Affiliates, MIC General Insurance Corporation, Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London, and Great Lakes Reinsurance (UK), PLC, n/k/a Great Lakes Insurance SE.

2.26.   "Judgment" means the Final Order and Judgment to be entered by the Court pursuant to the Settlement and in substantially similar form as Exhibit F-1.

2.27.   "Lender-Placed Insurance" or "LPI" means the placement of hazard and/or wind-only insurance pursuant to a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom, to cover a borrower's failure to maintain the required insurance coverage on the residential property securing the loan.

2.28.   "*Gray* Litigation" means the action originally captioned "*Monica Gray, as executrix of the Estate of Earl Gray, Jr., and as trustee of the interests of Jasmine Gray-Oliver and*

11

*Justin Gray v. CIT Bank, N.A., et al*, 18-cv-01520-RMB-AMD, filed in the United States District Court for the District of New Jersey.

2.29.   "LPI Policy" means a lender-placed residential hazard and/or wind-only insurance policy issued by, subscribed by, or procured or obtained through the Insurance Entities, and placed during the Settlement Class Period pursuant to a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom to cover a Borrower's failure to maintain the required insurance coverage on the residential property securing the reverse mortgage loan.

2.30.   "Mail Notice" means the "Notice" that is mailed by the Settlement Administrator to Settlement Class Members, in substantially the form attached as Exhibit D to this Agreement and/or as ultimately approved by the Court.  Mail Notice shall be mailed not less than ninety (90) days before the date set by the Court for the Final Approval Hearing.

2.31.   "Named Plaintiffs" means Monica Gray, Jasmine Gray Oliver, Justin Gray and Julia Wieck.

2.32.   "Net Premium" means the amount of premium charged to a Settlement Class Member during the Settlement Class Period for an LPI Policy that was not cancelled, less any refund paid or credited to the Class Member.

2.33.   "Notice and Administrative Costs" means the reasonable and authorized costs and expenses of disseminating and publishing the Class Notice in accordance with the Preliminary Approval Order, and all reasonable and authorized costs and expenses incurred by the Settlement Administrator in administering the Settlement, including but not limited to costs and expenses associated with assisting Settlement Class Members, processing claims, escrowing funds, and issuing and mailing Settlement Payments.  Notice and Administrative Costs do not include costs

associated with Class Counsel's interactions with the Settlement Administrator, as detailed in Section 7.4.

2.34.   "Objection Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Settlement Class Member must serve written objections, if any, to the Settlement in accordance with Section 12 of this Agreement to be able to object to the Settlement.   The Objection Deadline shall be no later than thirty (30) days prior to the Final Approval Hearing or as the Court may otherwise direct.

2.35.   "Opt-Out Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Request for Exclusion must be filed in writing with the Settlement Administrator in accordance with Section 11 of this Agreement in order for a Settlement Class Member to be excluded from the Settlement Class.   The Opt-Out Deadline shall be no later than thirty (30) days prior to the Final Approval Hearing or as the Court may otherwise direct.

2.36.   "Parties" means Named Plaintiffs and Defendants in the *Gray* Litigation.

2.37.   "Preliminary Approval Order" means the order in substantially similar form as Exhibit E and providing for, among other things, preliminary approval of the Settlement as fair, reasonable, and adequate; preliminary certification of the Settlement Class for settlement purposes only; dissemination of the Class Notice to the Settlement Class; and finding that the proposed Class Notice is reasonably calculated to apprise the Settlement Class Members of the pendency of the *Gray* Litigation, the material terms of the proposed Settlement, and the Settlement Class Members' options and rights with respect thereto.

2.38.   "Preliminary Approval Application" means Named Plaintiffs' motion for the Court to preliminarily approve the Settlement and to enter the Preliminary Approval Order, including all

exhibits and documents attached thereto.  Named Plaintiffs' Preliminary Approval Application shall be filed within seven (7) days after this Agreement is signed.

2.39.   "Premium" means the amount charged to a borrower by Financial Freedom for an LPI Policy.

2.40.   "Refund" means the amount of money paid or credited to a borrower when an LPI Policy is cancelled.

2.41.   "Release" or "Releases" means the release of all Released Claims by the Releasing Persons against the Released Parties, as provided for in Section 10 of the Settlement Agreement.

2.42.   "Released Claims" means all claims, actions, causes of action, law suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, demands, and any other forms of liability released pursuant to Section 10 of the Settlement Agreement.

2.43.   "Released Parties" means, only with respect to Released Claims: (a) CIT Bank, CIT Group Inc., OneWest Bank, FSB, OneWest Bank, N.A., Financial Freedom Acquisition, LLC, Financial Freedom, IndyMac Financial Services, IndyMac Agency, Inc., the Insurance Entities, and each of their respective past, present, and future direct or indirect, Affiliates, parent companies, subsidiaries, divisions, predecessors, successors, assigns, investors, and all past or present officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of any such entities or persons; (b) any insurance carrier, broker, or agent from whom Defendants procured or obtained an LPI Policy, or that was a party to an agreement relating to an LPI Policy, insuring residential real property owned by any Settlement Class Member, to the extent not included within subsection (a) above; and (c) any trustee of a mortgage securitization trust which included loans made to any Settlement Class Member, any owner, investor, and/or noteholder of the reverse

mortgage loans CIT Bank or Financial Freedom serviced and upon whose secured properties LPI was placed for any Settlement Class member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

2.44.   "Releasing Persons" means Named Plaintiffs, all Settlement Class Members who do not properly and timely opt out of the Settlement, and their respective family members, heirs, administrators, successors, and assigns.

2.45.   "Request for Exclusion" means a written request from a Settlement Class Member that seeks to exclude the Settlement Class Member from the Settlement Class and that complies with all requirements in Section 11 of this Agreement.

2.46.   "Settlement" or "Stipulation of Settlement" means the settlement set forth in this Agreement.

2.47.   "Settlement Class" means all members of the class of borrowers that will be certified by the Court for settlement purposes as more fully described in Section 3.1 herein.

2.48.   "Settlement Class Member" means any member of the Settlement Class.

2.49.   "Settlement Class Period" means the period of time defined in Section 3.2 below.

2.50.   "Settlement Website" means the Internet site created by the Settlement Administrator pursuant to Section 6.2 of this Agreement to provide information about the Settlement, which shall have the Uniform Resource Locator of www.GrayFinancialFreedomSettlementInfo.com.

2.51.   "Settling Parties" means, collectively, Defendants, Named Plaintiffs, and all Releasing Persons.

3.    **CLASS DEFINITION, CLASS PERIOD AND CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT**

3.1.   The "Settlement Class" shall be as follows:

The "Settlement Class" shall include all Borrowers in the United States who, during the Settlement Class Period (defined in Section 3.2 below), were charged by Financial Freedom a Net Premium for an LPI Policy issued during the Settlement Class Period.

Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of Defendants or any of their respective Affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or the borrower's escrow account; (iv) borrowers whose indebtedness on the residential property securing the reverse mortgage loan serviced by Financial Freedom has been compromised or discharged in bankruptcy or otherwise; and (v) all borrowers who file a timely and proper request to be excluded from the Settlement Class.

3.2   The "Settlement Class Period" shall commence on February 2, 2012 and shall continue through and including July 31, 2018.

3.3   This Settlement Agreement is expressly contingent upon the satisfaction, in full, of the material conditions set forth below.

3.4.   <u>Condition No. 1:  District Court Approval</u>.  The Settlement must be approved by the Court in accordance with the following steps:

3.4.1.   <u>Application for Preliminary Approval of Proposed Settlement, Class Certification, and Class Notice</u>.  After good faith consultation with counsel for Defendants, Class Counsel will present a Preliminary Approval Application to the Court within 7 (seven) days of this Agreement.  The Preliminary Approval Application shall include a Class Notice, in substantially similar form as Exhibit D, and a Preliminary Approval Order, in substantially similar form as Exhibit E.  The Settling Parties shall, in good faith, take reasonable steps to secure expeditious

entry by the Court of the Preliminary Approval Order and shall request that the Court schedule a Final Approval Hearing no earlier than ninety (90) days after the service of the required notices under 28 U.S.C. § 1715.

3.4.2. <u>Settlement Class Certification</u>.   In connection with the proceedings on Preliminary and Final Approval of the proposed Settlement, the Named Plaintiffs shall seek orders (preliminary and final, respectively) certifying the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure for purposes of this Settlement only.

3.4.3. <u>Entry of Preliminary Approval Order</u>.  The Court shall enter a Preliminary Approval Order in substantially similar form as Exhibit E, which shall, among other things:

a.      Certify for purposes of settlement only a nationwide Settlement Class, approving the Named Plaintiffs as class representatives and appointing Class Counsel, pursuant to Fed. R. Civ. P. 23;

b.      Preliminarily approve the Settlement as fair, reasonable, and adequate;

c.      Order the issuance of Class Notice to the Settlement Class, and determine that such Notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

d.      Schedule a date and time for a Final Approval Hearing to determine whether the Preliminary Approval Order should be finally approved by the Court;

e.      Require Settlement Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion by the Opt-Out Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall bind those Settlement Class Members who remain in the Settlement Class;

f.      Require Settlement Class Members who wish to object to the Settlement Agreement to submit an appropriate and timely written statement by the Objection Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall prevent those Settlement Class Members from doing so;

g.      Require attorneys representing any Settlement Class Member, at the Settlement Class Member's expense, to file a notice of appearance;

h.      Authorize the Settling Parties to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement; and

i.      Issue related orders to effectuate the preliminary approval of the Settlement Agreement.

3.4.4.   <u>Issuance of Class Notice</u>.  Pursuant to the Preliminary Approval Order to be entered by the Court, the Settlement Administrator shall cause the Class Notice to be issued in accordance with Section 6 below.

3.4.5.   <u>Final Approval Hearing</u>.  In connection with the Preliminary Approval Application, the Parties shall request that the Court schedule and conduct a hearing after dissemination of Class Notice, at which time it will consider whether the Settlement is fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Specifically, Named Plaintiffs, after good faith consultation with counsel for all Defendants, shall request that, on or after the Final Approval Hearing, the Court:  (i) enter the final Judgment, granting Final Approval of the Settlement and dismissing with prejudice this Litigation; (ii) determine the legal fees and expenses that should be awarded to Class Counsel as contemplated in the Settlement Agreement; and (iii) determine the Case Contribution Award, if any, that should be awarded as contemplated by the Settlement Agreement.  Any application for Attorneys' Fees and Expenses

shall be made at least forty-five (45) days prior to the Final Approval Hearing.  The Settling Parties agree to support entry of final Judgment.  The Settling Parties will reasonably cooperate with one another in seeking entry of the final Judgment.  The Final Approval Order shall be in substantially similar form as Exhibit F.

3.5.   <u>Condition No. 2:  Finality of Judgment</u>.  The Court shall enter a final Judgment in substantially similar form as Exhibit F-1.  The final Judgment must be Final in accordance with Section 2.19 above, and shall, among other things:

a.      Find that (1) the Court has personal jurisdiction over all Settlement Class Members; (2) the Court has subject matter jurisdiction over the claims asserted in this Litigation; and (3) venue is proper;

b.      Finally approve the Settlement Agreement, pursuant to Fed. R. Civ. P. 23, as fair, reasonable, and adequate;

c.      Finally certify the Settlement Class for settlement purposes only;

d.      Find that the form and means of disseminating the Class Notice complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

e.      Enter final Judgment with respect to the claims of all Settlement Class Members and dismiss the claims of all Settlement Class Members and the *Gray* Litigation with prejudice;

f.      Make the Releases in Section 10 of the Settlement Agreement effective as of the date of the final Judgment;

g.      Permanently bar and enjoin Named Plaintiffs and all Settlement Class Members who have not opted out of the settlement, and any person actually or purportedly acting

on their behalf, from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims;

> h.      Permanently bar and enjoin Named Plaintiffs and all Settlement Class Members who have not opted out of the settlement from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims;

> i.      Find that, by operation of the entry of the Judgment, Named Plaintiffs and all Settlement Class Members shall be deemed to have forever released, relinquished, and discharged the Released Parties from any and all Released Claims, including all claims arising out of, relating to, or in connection with the initiation, settlement, prosecution, or dismissal of the *Gray* Litigation;

> j.      Authorize the Settling Parties to implement the terms of the Settlement Agreement;

> k.      Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the final Judgment, and for any other necessary purpose; and

> l.      Issue related orders to effectuate the Final Approval of the Settlement Agreement and its implementation.

3.6     <u>Condition No. 3:  Dismissal of *Wieck* Action</u>.  The parties in the *Wieck* Action shall file a stipulation of dismissal with prejudice within three (3) days after the Final Settlement Date.

## 4.    SETTLEMENT CONSIDERATION, BENEFITS, AND OTHER RELIEF

4.1.    In consideration for the Releases set forth in Section 10, Defendants will provide the following benefits.

4.2.    <u>Injunctive Relief Relating to NGLS Insurance Services, Inc. and MIC General</u>. Subject to Section 4.6 below, and commencing no later than one hundred and twenty (120) days after the Final Settlement Date, NGLS Insurance Services, Inc. ("NGLS") and MIC General shall for a period of five (5) years thereafter, not provide any of the following with respect to the placement of an LPI Policy on residential property for CIT Bank:

(i)    LPI commissions to CIT Bank; provided however, NGLS, MIC General, and their Affiliates shall be free to pay commissions to licensed agents not affiliated with CIT Bank;

(ii)    LPI quota share reinsurance arrangements with CIT Bank; provided however, NGLS, MIC General, and their Affiliates shall be free to contract for reinsurance arrangements with parties not affiliated with CIT Bank;

(iii)    Payments from NGLS and MIC General to CIT Bank for any administrative or other service associated with hazard LPI or other LPI-related services; provided however, NGLS, MIC General, and their Affiliates shall be free to pay CIT Bank for administrative or other services (1) to reimburse CIT Bank for expenses incurred in performing LPI exposure management functions on behalf of NGLS, MIC General, or their Affiliates, provided that such reimbursements are in amounts approximating CIT Bank's actual costs in providing such services, or (2) that are associated with LPI-related services to parties not affiliated with CIT Bank;

    (iv)     Accept payments from CIT Bank for below-cost or free outsourced services provided by NGLS or MIC General to CIT Bank in connection with hazard or wind-only LPI; provided however, that outsourced services do not include expenses associated with tracking functions that NGLS, MIC General, or their Affiliates incur for their own benefit to identify and protect themselves from:  (a) exposure to lost premium and losses on properties on which no other insurance coverage is in effect; or (b) administrative costs associated with providing and subsequently canceling LPI on properties on which LPI is not required.

4.3    The prohibitions and requirements set forth in Section 4.2 (above) shall not preclude NGLS, MIC General, or their Affiliates from reimbursing "implementation expenses" incurred by a loan servicer, including CIT Bank.  For purposes of the preceding, "implementation expenses" means those expenses that are demonstrably and directly related to the implementation of a loan servicer's, including but not limited to:

    (i)     Identifying servicer and LPI service provider's processes and system requirements;

    (ii)    Allocating and assigning resources to be dedicated to the conversion/implementation to the LPI service provider;

    (iii)   Developing project documentation;

    (iv)    Developing the project schedule and controls to manage against the Schedule;

    (v)    Designing, testing and implementation of information technology systems and interfaces need to exchange information needed for the effectiveness of the LPI service provider's LPI program;

    (vi)    Diverting mail, telephone, facsimile and web-based communications;

    (vii)    Testing accuracy and quality of project deliverables;

    (viii)    Training staff on the LPI service provider's product and processes;

    (ix)    Establishing specific controls to monitor the LPI service provider's service to ensure it meets documented requirements; and

    (x)    Any similar activity related to the implementation of the LPI service provider's LPI program at program inception.

"Implementation expenses" that are reimbursed must bear a direct relationship to the implementation of the LPI service provider's LPI program at program inception.

    4.4    Should any provision of subsection 4.2 conflict or be inconsistent with: (i) any existing or subsequently adopted state or federal statute, regulation, rule, or order (collectively a "legal requirement"); (ii) any existing or future formal or informal regulatory directive, requirement, instruction, guidance, order, decree, settlement, or compromise agreement, whether of general application or directed at or applicable to any one or more of Defendants in the Action (collectively a "regulator requirement"); or (iii) any existing or subsequently adopted agency or investor rule or requirement (collectively an "investor requirement"), such legal requirement, regulator requirement, or investor requirement shall control.  In that event, the Stipulation of Settlement and any Final Judgment confirming the Stipulation of Settlement shall be deemed amended to conform to such legal requirement, regulator requirement, or investor requirement. NGLS, MIC General, and their Affiliates shall not be liable for engaging in any practice or failing

to engage in any practice during the five (5) year period for prospective relief where such conduct was authorized by a legal requirement, regulator requirement, or investor requirement.

4.5     **CIT Bank's Representations Regarding Reverse Mortgage Loans.**  CIT Bank hereby makes the following representations:

4.5.1    On May 31, 2018, CIT Bank completed the sale of its Financial Freedom reverse mortgage servicing business and portfolio of reverse mortgage loans to a third-party that was not affiliated with CIT Bank; and

4.5.2    In June 2018, a third-party took over the servicing of the Financial Freedom reverse mortgage loans; and

4.5.3    CIT Bank is not affiliated with the third-party that took over the servicing of the Financial Freedom reverse mortgage loans; and

4.5.4    CIT Bank does not perform servicing functions for reverse mortgages and thus does not impose lender-placed insurance on residential properties secured by reverse mortgages.

4.6     **QBE Insurance's Representation with Respect to Future Conduct**.  NGLS and MIC General hereby make the following representations:

4.6.1    Effective October 1, 2015, MIC General's parent acquired from QBE Investments (North America) and QBE Holdings, Inc. all of the outstanding capital stock of QBE Financial Institution Risk Services, Inc. (n/k/a National General Lender Services, Inc.), QBE FIRST Insurance Agency, Inc. (n/k/a NGLS Insurance Services, Inc.), Mortgage & Auto Solutions, Inc., Seattle Specialty, and Newport Management Corporation, along with the assets and liabilities of such entities related to the lender-placed insurance business (comprised generally

24

of the provision of required insurance monitoring services to mortgagees, the placement of coverage under an LPI Policy in the absence of evidence of required insurance and related services) (the "LPI Business"), among other business engaged in by such entities. QBE Holdings, Inc. and its subsidiaries and Affiliates doing business in the United States, including QBE Insurance, are collectively referred to as "QBE North America."

      4.6.2   At the completion of the transition of the underwriting facilities from QBE North America to MIC General and its Affiliates in the second quarter of 2017, QBE North America ceased their involvement in and exited the LPI Business.

      4.7.   <u>Settlement Monetary Consideration</u>.  Those Settlement Class Members who submit a timely, valid, and verified Claim Form, substantially in the form of Exhibit B, by the Claim Deadline in the manner required by this Settlement Agreement, shall receive Claim Settlement Relief under the following terms and conditions.

      4.7.1.  Settlement Class Period One:  For those Settlement Class Members who were charged a Net Premium for an LPI Policy placed on the Borrower(s)' property between February 2, 2012 and May 7, 2013, and who submit a timely, valid and verified Claim Form, substantially in the form of Exhibit B, attached, by the Claim Deadline in the manner required by this Settlement Agreement, making the required affirmations and representations as set forth in Section 7 below, Defendants shall pay to that Claimant through the Settlement Administrator an amount equal to 10% of the Net Premium on the LPI Policy issued between February 2, 2012 and May 7, 2013.

      4.7.2   Settlement Class Period Two:  For those Settlement Class Members who were charged a Net Premium for an LPI Policy placed on the Borrower(s)' property between May 8, 2013 and July 31, 2018, and who submit a timely, valid and verified Claim Form, substantially

in the form of Exhibit B, attached, by the Claim Deadline in the manner required by this Settlement Agreement, making the required affirmations and representations as set forth in Section 7 below, Defendants shall pay to that Claimant through the Settlement Administrator an amount equal to 6% of the Net Premium on the LPI Policy issued between May 8, 2013 and July 31, 2018.

       4.7.3.   Any Class Member who had multiple LPI Policies issued on his or her property during the Settlement Class Period will be able to submit a single Claim Form for all LPI Policies that were charged to the Class Member and not flat cancelled during the Class Period as to which he or she seeks relief.  The Defendants shall only be obligated to honor one valid Claim Form per reverse mortgage loan regardless of the number of borrowers on that loan or the total number of LPI Policies that were charged by Financial Freedom and not cancelled in their entirety during the Class Period.  Where there is more than one reverse mortgagor/policyholder (*e.g.*, husband and wife), and all such reverse mortgage/policyholders are living, all reverse mortgagor/policyholders (or other person with authority to sign for and bind the reverse mortgage/policyholder) must sign the Claim Form for the Claim to be valid.

## 5.    RETENTION OF SETTLEMENT ADMINISTRATOR AND COSTS

     5.1.   Costs of Notice and Administration.  Subject to the limitation in Section 6.4 below, Defendants shall pay the cost of Notices to the Class, and all costs of administration contemplated by this Settlement, including the cost of any Settlement Administrator.   Defendants will select the Settlement Administrator subject to Settlement Class Counsel's approval (which may not be unreasonably withheld).  Settlement Class Counsel shall have the right to interact directly with the Settlement Administrator regarding the administration of this Settlement, provided that: (a) Plaintiffs pay for any material costs associated with such interaction; and (b) Defendants' counsel are notified of all such interaction.

5.2.    The Settlement Administrator shall administer the Settlement in a cost-effective and timely manner.  Without limiting any of its other obligations as stated herein, the Settlement Administrator shall be responsible for Mail Notice, internet advertising, administration of Claim Settlement Relief, and providing all other related support, reporting, and administration as further stated in this Agreement.  Defendants may direct the Settlement Administrator to assist with various additional administrative tasks in implementing the Settlement as Defendants shall deem appropriate in their sole discretion.

5.3.    Defendants will coordinate with the Settlement Administrator to provide Mail Notice to the Settlement Class, as provided in this Settlement Agreement.  Because the information about Settlement Class Members that will be provided to the Settlement Administrator will consist of confidential information, non-public personal information, and other information protected by privacy laws, the Settlement Administrator will execute a non-disclosure agreement and will take all reasonable steps to ensure that any information provided to it by Defendants will be used solely for the purpose of effecting this Settlement.  Any such information provided to the Settlement Administrator will not be provided to Named Plaintiffs or Class Counsel, except as permitted by Section 7.4.  The Settlement Administrator shall administer the Settlement in accordance with the terms of this Settlement Agreement and, without limiting the foregoing, shall treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided for in this Settlement Agreement or by court order.

5.4.   <u>W9 Forms</u>.   The Settlement Administrator shall complete and provide to Defendants any W9 forms necessary for Defendants to pay for the Notice and Administrative Costs and to otherwise implement this Settlement.

## 6.   NOTICE TO THE CLASS

6.1.   **Mail Notice:**   Subject to the requirements of the Preliminary Approval Order, Notice to those Settlement Class Members for whom the electronic records of Defendants or their Affiliates reflect a last known mailing address, shall be made by the Settlement Administrator by means of separate first-class mailings to those names and addresses.   The Notices shall be mailed not less than ninety (90) days before the date set by the Court for a Fairness Hearing regarding the settlement. The Mail Notice of Class Action, Proposed Settlement, Fairness Hearing, Right to Appear, Instructions and Claim Form shall detail how those Settlement Class Members so desiring may opt out or object to the settlement, and how members of the Settlement Class may make a claim for settlement relief as described in Section 6 below (hereafter "Claim Relief").   The Mail Notice shall include Instructions and a Claim Form described in Section 6.5 of this Settlement Agreement, in the forms of Exhibits A and B, attached (provided that the font size, folding, and other printing elements or presentation may be adjusted to accommodate a booklet format and for efficient envelope and postage considerations; and provided further, that when posting the Notice, Instructions and Claim Form, the Settlement Administrator shall populate the Claim Form with the Settlement Class Member(s)' name(s), and if there are more than one Settlement Class Member on the LPI Policy, the Settlement Administrator shall include all of their names in the address on the envelope).

The Mail Notice also will contain a provision directing Spanish-speaking class members to the settlement website, which will include the relevant settlement information in Spanish.  The

Spanish versions of the Notice shall also be available upon request by calling the toll-free number on the Notice.

After posting of the Mail Notice by the Settlement Administrator with the United States Postal Service, for any Mail Notices returned as undeliverable, the Settlement Administrator shall utilize the National Change of Address database (the "NCOA") in an attempt to obtain better addresses for such returned Notices, and should the NCOA show a more current address, the Settlement Administrator shall post the returned Mail Notice to the more current address; *provided however*, if a determination is made in good faith by the Settlement Administrator that it is not possible to further update any particular Settlement Class Member's address(es) in sufficient time to repost the Settlement Class Notice(s) at least twenty (20) days before the scheduled Fairness Hearing, then the Settlement Administrator need make no further efforts to provide further Mail Notice to such person(s).

6.2     **Internet Site.**  No later than the posting of the Mail Notice, the Settlement Administrator shall establish an Internet site which shall contain copies of the Stipulation of Settlement and Exhibits and the Mail Notice.  The Internet site shall also contain Instructions and a Claim Form which may be downloaded or printed from the Internet site.  The Internet site shall have a Uniform Resource Locator which identifies the Internet site as the [www.GrayFinancialFreedomSettlementInfo.com](www.GrayFinancialFreedomSettlementInfo.com) website.  The Internet site shall remain open and accessible through the last day for Settlement Class Members to submit a Claim for Settlement Relief.

6.3     **Publication:**  A similar but abbreviated Summary Publication Notice of Class Action, Proposed Settlement, Fairness Hearing, and Right to Appear shall be published not less than forty-five (45) days before the date set by the Court for the Fairness Hearing regarding this

Settlement, which abbreviated Summary Publication Notice shall not be less than 1/8 page in size, and shall be published once in *USA Today* (on a date falling on Monday through Thursday).  The abbreviated Summary Publication Notice shall detail how those Settlement Class Members so desiring may opt out or object to the settlement, and how Settlement Class Members may access an internet address where they may download a Claim Form necessary to make a Claim for Settlement Relief, and toll-free phone number where they may call to request further information on the Settlement.  The form of the Summary Publication Notice shall be agreed upon by the Parties, and the font size, layout, and other presentation elements shall be adjusted to accommodate publication considerations.

6.4.   **Internet Advertising**:  The Defendants shall cause the Settlement Administrator to make advertisements on the internet directed to Settlement Class Members in form and content recommended by the Settlement Administrator and mutually acceptable to Class Counsel and Defendants, with an aggregate cost to the Defendants not to exceed $10,000.

6.5   **Claim Form; Verification; Single Claim Form; IVR; E-Signature; Deficiency Notices; Audits.**  The Instructions accompanying the Claim Form, in the form of Exhibits A and B attached (provided that the font size, folding, and other printing elements or presentation may be adjusted to accommodate a booklet format and for efficient envelope and postage considerations), shall require Settlement Class Members making valid settlement Claims to provide the Settlement Administrator with the following information:

(a)   Claimant's current address, telephone number, date of birth, and the last four numbers of Claimant's Social Security Number;

(b)   Borrower's current address, telephone number, date of birth, and the last four numbers of Borrower's Social Security Number (if different from the Claimant)

30

(c)     The address of the property for which Financial Freedom placed the LPI Policy;

(d)     That Claimant attests, pursuant to 28 U.S.C. § 1746, that:

(i)     Claimant and/or Borrower was charged for an LPI Policy placed by Financial Freedom during the Settlement Class Period.

(ii)     Since the issuance of the LPI Policy, the Claimant's indebtedness on the residential property securing the loan serviced by Financial Freedom has not been compromised or discharged in bankruptcy; and

(iii)     Claimant attests and affirms all of the foregoing information under the following declaration: "I declare (or certify, verify, or state) under penalty of perjury that the information provided by me on this Claim Form is true and correct."

(e)     In order for Claimants who are not the Borrower(s) to have submitted a valid Claim, they must make the affirmations set forth in Section 6.5(d) and also confirm their identity by one of the following methods:

(i)     **Powers of Attorney**.  For Claimants who are signing Claim Forms on behalf of the Borrower under authority granted them under a Power of Attorney,

(1)     the submission of a copy of the Power of Attorney with the Claim Form and

a.     The signature of a witness who is 18 years of age or older representing and affirming that they have witnessed the Claimant sign the Claim Form, and this witness affirmation shall include the following: "I declare (or certify, verify, or state) under penalty of perjury that I witnessed the signing of this Claim Form by the Claimant and the foregoing is true and correct;" or

31

b.      Provide a copy of a valid form of identification that contains a signature and photograph of the Claimant; or

c.      Provide a copy of a Financial Freedom reverse mortgage statement issued to Borrower; or

d.      Provide a notarial signature affirming that the Claimant executed the Claim Form making the required affirmations under oath in the presence of the notary, and bearing evidence of the notarial authority in compliance with the law of the state in which it is being executed (e.g., a seal, etc.).

(ii)    **Acting Under Authority of Probate Court**.  For Claimants who are signing Claim Forms on behalf of a deceased Borrower under authority granted them by a Probate Court, the signer on behalf of the decedent must prove their authority to sign for the decedent with a copy of a certified copy of the Letters of Administration (called Letters Testamentary in some states);

(iii)   **Inheritors of Borrower Property Pursuant to Deed, Will or Intestacy**.  For Claimants who are signing Claim Forms as Inheritors of a deceased Borrower's property, such Claimants must provide a copy of a form of deed naming the Claimant as a current owner of the Borrower's property, such as a Transfer on Death Deed and Death Certificate, Executor's Deed or Administrative Deed;

(iv)    For Claimants signing Claim Forms on behalf of deceased co-claimants with claims below $150;

(1)     For decedents who resided in California and Illinois; the person signing for the deceased co-claimant must comply with California (California

32

Probate Code §§ 13100-13115, specifically §13101) or Illinois (755 ILCS 5/25-1) law by providing a complying "small estate" affidavit and accompanying documents to the Settlement Administrator; and

        (2)     For decedents who resided in all other states; the person signing for the deceased co-claimant must provide an affidavit, sworn to in the presence of a notary public and in substantially the form of Exhibit C attached, that states and affirms the following:

        a.     They are the proper Claimant signing on behalf of the co-claimant (i.e., the co-mortgagor of the decedent);

        b.     A formal probate was never opened for the deceased co-claimant, and

        c.     They agree to indemnify Defendants should any person come forward claiming to be the personal representative of the deceased and bring a legal action against Defendants for a portion of the settlement benefits.

    (f)    The parties shall instruct the Settlement Administrator on the deceased or impaired co-claimant protocol set forth in subparagraph (e) above.

## 7.    CLAIM FILING, REVIEW, AND APPROVAL PROCESS

    7.1.  <u>Claim Filing Process.</u>  Settlement Class Members shall be permitted to make a Claim for Claim Relief by mailing (either through posting with the United States Postal Service or through a private mail carrier, such as UPS or Federal Express, provided that proof of the mail date is reflected on the label of the mailing) a written Claim Form providing the information,

affirmations and where appropriate, the verification required in Section 6.5 above, to the Settlement Administrator, on a date no later than the Claim Deadline (as defined above).

In addition, a written Claim Form will be available on the Internet site identified in Section 2.50 for Settlement Class Members to download or print out and mail to the Settlement Administrator pursuant to this Section, and Settlement Class Members may upload the completed and verified Claim Forms to the settlement website.

Claimants shall also have the option of completing their Claim Form online within the settlement website, utilizing an esignature format; provided however, for those Claims requiring Verification Documents, the Claimant must upload scanned copies of those verification documents to the settlement website, with the appropriate claim number to associate the upload with the Claim.

Any Settlement Class Member who does not mail, upload, or submit a properly completed, and where appropriate, verified Claim Form by the Claim Deadline shall be deemed to have waived any claim to Claim Relief and any such Claim Form will be rejected.

7.2.    <u>Processing Claims.</u> Following approval of the settlement at the Fairness Hearing, the Settlement Administrator shall confirm that each Claim Form submitted is in the form required, includes the required affirmations, information and verification detailed in Section 6.5 above, was submitted in a timely fashion and that the Claimant is a member of the Class.  The requirements of Section 6 shall be necessary criteria for submission of a valid Claim, and the absence of any of these requirements shall invalidate the proffered Claim.  All such Claim criteria shall be strictly enforced.  Any Claimant's failure to provide any of the required affirmations, information or, where appropriate, verification on the Claim Form, shall result in the putative Claim being deemed

invalid, and Defendants and their Affiliates shall not have any further obligation to process or make any settlement payment or account credit on such invalid Claim.

7.2.1.   However, prior to the denial of any claims pursuant to Sections 7.2, 7.3.1, or any other Section in this Agreement, if any submitted Claim Forms are deemed invalid for any reason (*e.g.*, because they are defective, inaccurate, or incomplete in any way), the Administrator shall promptly advise Class Counsel on a weekly basis so that Class Counsel may follow-up with the Settlement Class Member who submitted such Claim Form in order to cure any deficiency. The Settlement Administrator shall send a notice to claimants submitting deficient claims identifying the deficiency.  Any defective, incomplete, or inaccurate Claim Form may be cured and shall be accepted by the Administrator so long as the defect is resolved within 30 days after the Claim Deadline.

7.2.2.   To aid in the completion and processing of Claims, the Settlement Administrator shall establish a toll-free interactive voice response phone number with script recordings of information about this Settlement, including information about the Claim Form, utilizing the relevant portions of the language contained in the Notice and Claim Form.  The phone number shall remain open and accessible through the last day for Settlement Class Members to submit a Claim.  The Settlement Administrator shall make reasonable provision for Class Counsel to be promptly advised of recorded messages left on the phone number by Settlement Class Members concerning the Action and/or this Settlement, so that Class Counsel may timely and accurately respond to such inquiries; *provided however*, the Administrator shall review the recorded messages before providing them to Class Counsel, and if one or more of the messages requests a blank Claim Form or other similar administrative assistance only, then the Administrator

shall handle such administrative request(s), but the Administrator shall provide all other messages to Class Counsel for any further response to the Settlement Class Member.

       7.3.   <u>Claim Payment.</u>  Upon confirmation by the Settlement Administrator that the Claim Form is valid, the Settlement Administrator shall make a determination as to the amount of the Claim in accordance with the Net Premium information appearing in the Defendants' electronic records and the formula for providing the Claim Settlement Relief set forth in Section 4.7 (including Sections 4.7.1 and  4.7.2) above.

       7.3.1.   <u>Right to Audit</u>.  Subject to the provisions in section 7.2.1 above, Defendants shall have the right to audit each Claim Form, including reviewing the individual loan and/or insurance files for each Claimant who submits a Claim Form.  If Defendants' audit reveals that a Claim Form contains inaccurate information, Defendants shall notify the Settlement Administrator as to the inaccuracy of the Claim prior to the deadline for processing the Claim, while also providing written notification of the inaccurate Claim to Class Counsel.  At Defendants' discretion, the Claim shall be processed in accordance with the information from Defendants' records (rather than the inaccurate information on the Claim Form), and may, if necessary, be denied.  Defendants shall complete their audit of Claims no later than one-hundred and fifty days (150) days after the Final Settlement Date, and shall have the right to request from the Settlement Administrator any and all information necessary to conduct and complete their audit.

       7.3.2.   <u>Notification</u>.  Within ninety (90) days after the Final Settlement Date, the Settlement Administrator shall provide Class Counsel and Defendants' counsel with a list of all Settlement Class Members who filed a Claim, whether the Claim was rejected or accepted, and if rejected, the reason it was rejected, and if accepted, the amount to be paid by the Defendants.  The

Parties will use their best efforts to amicably resolve any dispute about the processing of any Claim.

7.3.3.   <u>Claim Review Period</u>.   The Settlement Administrator shall have one hundred eighty (180) days after the Final Settlement Date within which to process the Claims and remit to Claimants the appropriate amounts for the Borrowers who submitted valid Claims (the "Claim Payment Date").   Defendants shall fund all amounts required by the Settlement Administrator for distribution of Settlement Claim Relief to Borrowers who submitted valid claims not later than 15 days prior to the Claim Payment Date.   Checks remitted to Settlement Class Members and not negotiated within ninety (90) days after issuance shall be cancelled (the checks shall state "void after 90 days"), and Defendants and their Affiliates shall not have any further obligation to continue efforts to distribute Claim Relief to such Claimant.   The Settlement Administrator shall refund to Defendants all funds on deposit to fund checks that become "void after 90 days."   No interest shall be included as an element of, or be payable or paid on any claimed amount.

7.3.4.   Defendants are only responsible to pay valid claims as approved by the Settlement Administrator.   There are no unclaimed property rights or interest by Settlement Class Members who do not file valid claims.   A "valid claim" means a Claim Form submitted by a Settlement Class Member that: (1) is submitted in accordance with the Instructions accompanying the Claim Form and the provisions of the Stipulation of Settlement implementing this Settlement Agreement; (2) is accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (3) is signed physically or by e-signature by a Settlement Class Member or other person with authority to sign for and bind the Settlement Class Member, subject to the

penalties of perjury; and (4) returned via mail or private carrier and post-marked by the Claims Deadline or received by mail or on-line submission by midnight of the Claims Deadline (Eastern Time). The Settlement Administrator's determination on the validity of all claims shall be final and binding upon the parties, subject to the audit provisions set forth in Section 7.3.1.

7.4. <u>Information Available to Class Counsel.</u> Upon the reasonable request of Class Counsel, the Settlement Administrator shall inform Class Counsel, among other things and with the exception of confidential information, non-public personal information, and other information protected by privacy laws, of the amount of any Settlement Class Member's LPI premium associated with a Claimant's LPI Policy reflected in the electronic information provided to the Settlement Administrator by Defendants. Nothing in this Section or this Settlement Agreement shall authorize the Settlement Administrator to disclose to Class Counsel any confidential information, non-public personal information, and other information protected by privacy laws.

8. **COVENANTS**

The Settling Parties covenant and agree as follows:

8.1. <u>Covenants Not to Sue.</u> Named Plaintiffs and the Settlement Class covenant and agree: (i) not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims, or the facts and circumstances relating thereto, against any of the Released Parties; (b) not to organize or solicit the participation of Settlement Class Members in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto; and (c) that the foregoing

covenants and this Agreement shall be a complete defense to any of the Released Claims against any of the Released Parties.

8.2.    <u>Cooperation</u>.  The Settling Parties agree to cooperate reasonably and in good faith with the goal of obtaining entry of a final Judgment as quickly as is reasonably practicable and expeditiously reaching agreement on the matters requiring mutual agreement as set forth in this Settlement Agreement, including, but not limited to, the expeditious agreement to the terms of all class notice documents and settlement administration protocols, and the preparation and execution of all other reasonable documents necessary to achieve Final Approval of the Settlement by the Court.  Further, the Named Plaintiffs and Defendants shall consult with mediator Jonathan Marks as necessary in effectuating this Section.

## 9.    REPRESENTATIONS AND WARRANTIES

9.1.    <u>Representations and Warranties.</u>

9.1.1.   Named Plaintiffs represent and warrant that they are the sole and exclusive owners of all Released Claims and that they have not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Parties, and further covenant that they will not assign or otherwise transfer any interest in any Released Claims.

9.1.2.   Named Plaintiffs represent and warrant that they have no surviving claims or causes of action against any of the Released Parties with respect to any of the Released Claims.

9.2.    <u>The Settling Parties' Representations and Warranties</u>.  The Settling Parties, and each of them on his, her, or its own behalf only, represent and warrant:

9.2.1.   That they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations among their counsel, that in executing the Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and

recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing the Settlement Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Settlement Agreement.  Each of the Settling Parties assumes the risk of mistake as to facts or law.

**10.    RELEASES**

10.1.   <u>Released Claims of Settlement Class</u>.   Upon the Final Settlement Date, each member of the Settlement Class and their family members, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf, shall, by operation of the final Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Parties from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each member of the Settlement Class may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation

that relate, concern, arise from, or pertain in any way to the Released Parties' conduct, policies, or practices concerning the placement, issuance, or facilitation of LPI Policies or to the receipt or disclosure or nondisclosure of charges related to the advancing of LPI premiums during the Settlement Class Period, including but not limited to conduct, policies or practices concerning LPI Policies or to charges for the placement of LPI Policies during the Settlement Class Period.  In agreeing to this Release, Named Plaintiffs explicitly acknowledge that unknown losses or claims could possibly exist and that any present losses may have been underestimated in amount or severity.

    10.1.1. The Release in Section 10.1 shall include, but not be limited to, all claims related to CIT Bank's or Financial Freedom's insurance requirements; the relationship, whether contractual or otherwise, between any of the Released Parties or their Affiliates, or any other insurance carriers, insurance brokers, or insurance agents from whom CIT Bank or Financial Freedom procured or obtained coverage insuring residential property owned by any Settlement Class Member, regarding LPI, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPI Policies placed or charged by CIT Bank or Financial Freedom; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed or charged by CIT Bank or Financial Freedom; any alleged tortious interference by the Insurance Entities with mortgage loans serviced by CIT Bank or Financial Freedom; the receipt or disclosure or non-disclosure of any and all payments, expenses, fees, finance charges, other charges, or features pertaining in any way to, in connection with, or under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by CIT Bank or Financial Freedom; the receipt or non-disclosure

of any benefit under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by CIT Bank or Financial Freedom; the content, manner, or accuracy of any communications regarding the placement of any LPI Policies by CIT Bank or Financial Freedom; and to the regulatory approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by CIT Bank or Financial Freedom.  Each Settlement Class Member shall be considered, by operation of the Final Judgment, to have received full and final redress, including but not limited to any refund, reimbursement, restitution, or damages for the conduct covered by the release.

10.1.2. The Release in Section 10.1 shall not cover claims arising after the close of the Settlement Class Period, nor insurance claims for casualty losses relating to properties insured under any LPI Policy placed or charged for by CIT Bank or Financial Freedom.  Nothing in Section 10.1 shall be deemed a release of any Settlement Class Member's respective rights and obligations under this Agreement.

10.1.3. Except to the extent that any such obligation is being released pursuant to Section 10.1, this Settlement Agreement shall not release Defendants from any existing obligation to any Settlement Class Member under any loan, note, mortgage, or deed of trust.  This provision is not meant to and does not limit the Release in Section 10.1.

10.2.   The Named Plaintiffs and Class Counsel further represent that there are no outstanding liens or claims against the *Gray* Litigation or the *Wieck* Action, it being recognized that the Named Plaintiffs will solely be charged with the responsibility to satisfy any other liens or claims asserted against the *Gray* Litigation and the *Wieck* Action.

10.3.   Without in any way limiting their scope, these Releases cover by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees,

interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiffs and their counsel, or any Settlement Class Members in connection with or related in any manner to the *Gray* Litigation or the *Wieck* Action, the settlement of the *Gray* Litigation or the *Wieck* Action, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Settlement Agreement.

10.4.   In connection with the foregoing Releases, the Named Plaintiffs and each Settlement Class Member shall be deemed, as of the entry of the final Judgment, to have waived any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

To the extent that anyone might argue that these principles of law are applicable—notwithstanding that the Settling Parties have chosen New Jersey law to govern this Settlement Agreement—the Named Plaintiffs hereby agree, and each Settlement Class Member will be deemed to agree, that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released.  The Named Plaintiffs recognize, and each Settlement Class Member will be deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the final Judgment, they fully, finally, and forever settle and release any and all claims covered by these Releases.  The Settling Parties acknowledge that the foregoing Releases were bargained for and are a material element of the Agreement.

10.5.    This Agreement and the Releases herein do not affect the rights of Settlement Class Members who timely and properly submit a Request for Exclusion from the Settlement in accordance with the requirements in Section 11 of this Settlement Agreement.

10.6.    The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court.  The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, enforcement of the Releases contained in the Agreement.  The Court shall retain jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

10.7.    Upon issuance of the final Judgment: (i) the Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have properly requested exclusion (opted out) in accordance with the terms and provisions hereof; (ii) the Released Parties shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s); (iii) Settlement Class Members who have not opted out shall be permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims or the facts and circumstances relating thereto; and (iv) Settlement Class Members who have not opted out shall be permanently barred and precluded from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto.

10.8.    Nothing in this Settlement Agreement and Releases shall preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.  The Releases set forth herein are not intended to include the release of any rights or duties of the Settling Parties arising out of the Settlement Agreement, including the express warranties and covenants contained herein.

## 11.    OPT-OUT RIGHTS

11.1.    A Settlement Class Member who wishes to opt out of the Settlement Class must do so in writing.  In order to opt out, a Settlement Class Member must complete and send to the Settlement Administrator, at the address listed in the Class Notice and on the Settlement Website for this Settlement, a Request for Exclusion that is postmarked no later than the Opt Out Deadline, as specified in the Class Notice (or as the Court otherwise requires).  The Request for Exclusion must: (a) identify the case name; (b) identify the name and address of the Settlement Class Member; (c) be personally signed by the Settlement Class Member requesting exclusion; and (d) contain a statement that indicates a desire to be excluded from the Settlement Class in the *Gray* Litigation, such as "I hereby request that I be excluded from the proposed Settlement Class in the Gray Class Action."  Mass or class opt outs shall not be allowed.

11.1.1. Any Settlement Class Member who does not opt out of the Settlement in the manner described herein shall be deemed to be part of the Settlement Class, and shall be bound by all subsequent proceedings, orders, and judgments.

11.1.2. A Settlement Class Member who desires to opt out must take timely affirmative written action pursuant to this Section (Section 11), even if the Settlement Class Member desiring to opt out of the Class (a) files or has filed a separate action against any of the

Released Parties, or (b) is, or becomes, a putative or actual class member in any other class action filed against any of the Released Parties.

11.2.    Any Settlement Class Member who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments relating to the Settlement; (b) be entitled to relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.

11.3.    The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all timely Requests For Exclusion within seven (7) business days after the Opt Out Deadline.

11.4.    If the number of Settlement Class Members who properly and timely exercise their right to opt out of the Settlement Class exceeds five percent (5%) of the total number of Settlement Class Members, the Settling Parties stipulate and agree that Defendants shall have the right to terminate this Agreement without penalty or sanction.

11.5    Except for those Settlement Class Members who timely and properly file a Request for Exclusion in accordance with Section 11, all other Settlement Class Members will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon the Final Settlement Date, will be bound by its terms, regardless of whether they receive any monetary relief or any other relief.

## 12.    OBJECTIONS

12.1.    <u>Overview</u>.  Any potential Settlement Class Member who does not opt out of the Settlement may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in this Agreement.

12.2.   <u>Process</u>.   Any potential Settlement Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order.   The written objection must be filed with the Clerk of Court, and mailed (with the requisite postmark) to Class Counsel and Defense Counsel (at the addresses identified in Section 19.1), no later than the Objection Deadline.

12.2.1. The requirements to assert a valid written objection shall be set forth in the Class Notice and on the Settlement Website, and, to be valid, the written objection must include: (a) the case name and number; (b) the name, address, telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) the basis for the objection; and (d) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel.

12.2.2. Any Settlement Class Member who fails to object to the Settlement in the manner described in the Class Notice and consistent with this Section shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.

12.3.   <u>Appearance</u>.   Subject to approval of the Court, any Class Member who files and serves a written objection in accordance with Section 12.2 and the Class Notice may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objecting Settlement Class Member:  (a) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice Of Intention To

Appear"); and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline.

12.3.1. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

12.3.2. Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Agreement and Class Notice shall not be entitled to appear at the Final Approval Hearing and raise any objections.

## 13.    SETTLEMENT APPROVAL

13.1.    Within seven (7) days of this Agreement's date, Named Plaintiffs shall apply to the Court for entry of the proposed Preliminary Approval Order and setting of a Final Approval Hearing.

13.2.    Not later than fifteen (15) days before the Final Approval Hearing, the Settlement Administrator will provide Defense counsel with an affidavit or declaration by a competent affiant or declarant, attesting that the Class Notice has been disseminated in accordance with the Preliminary Approval Order and identifying the number of Requests for Exclusion to the Settlement.   Not later than ten (10) days before the Final Approval Hearing, Class Counsel shall file the affidavit or declaration with the Court prior to the Final Approval Hearing.

13.3.    Named Plaintiffs shall move for and brief the issue of Final Approval of the Settlement in accordance with the Preliminary Approval Order or such other or further order of the Court.

13.4.    At the Final Approval Hearing, Named Plaintiffs shall move for entry of the proposed Judgment and present arguments in support thereof.

13.5.   Not later than ten (10) days after the Final Settlement Date, Settlement Class Members shall dismiss with prejudice all claims, actions, or proceedings that have been brought by or involve any Settlement Class Member in any other jurisdiction and that are released pursuant to this Settlement Agreement.

## 14.   CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

14.1.   On October 25, 2019, Plaintiff filed an Amended Complaint adding Julia Wieck as a plaintiff and conforming the definition of the Class therein to that appearing in Section 3 above. All Parties consented to this amendment for purposes of effectuating this Settlement.

14.2.   After the Preliminary Approval Order is entered, Named Plaintiffs shall move for Final Approval of the Settlement and entry of Final Judgment, and shall request that the preliminary certification of the nationwide Settlement Class for settlement purposes be made final.

14.3.   If the Settlement is not granted final approval, or this Agreement is otherwise terminated or rendered null and void, the certification of the above-described nationwide Settlement Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for trial purposes in this or any other action can be or have been satisfied; in such circumstances, Defendants reserve and shall have all rights to challenge certification of a nationwide Settlement Class or any other Class for trial purposes in the Litigation, or in any other action, on all available grounds as if no nationwide Settlement Class had been certified.

## 15.   ATTORNEYS' FEES, EXPENSES, AND NAMED PLAINTIFFS' CASE CONTRIBUTION AWARD

15.1.   Any application for Attorneys' Fees and Expenses shall not exceed $1,500,000 in attorneys' fees and $62,559 in expenses.

15.2.    Settlement Class Counsel in the Action may apply to and ask the court for an award of Attorneys' Fees and costs in an amount not to exceed $1,500,000 in attorneys' fees and $62,559 in expenses.  Provided the total fees and costs awarded by the Court do not exceed $1,562,559, Defendants shall pay the Attorneys' Fees and cost awards made by the Court in the Final Order and Judgment in the Action within ten (10) business days after the Final Settlement Date.  Class Counsel agree that the amounts of such costs and fees shall compensate them for all legal work in the *Gray* Litigation and the *Wieck* Action, as well as for all legal work and costs that may be incurred after the date of the Final Judgment.   Within thirty (30) days after the entry of the Final Order and Judgment, Defendants shall deposit the Attorneys' Fees and costs awarded by the Court (not to exceed $1,562,559) in an interest-bearing account of Defendants' choosing.  The Attorneys' Fees and costs, along with any interest earned, shall be disbursed to the firm Law Office of Roosevelt N. Nesmith, LLC within ten (10) business days after the Final Settlement Date.  In no event shall Defendants be obligated to pay attorneys' fees and costs in an amount greater than $1,562,559 in connection with this Action, or the settlement of the Released Claims.  If for any reason an award of Attorneys' Fees and costs exceeds $1,562,559, within five (5) days of the order of such an award, Defendants shall have the right, and they may, within their sole discretion, terminate this Settlement and have this Settlement Agreement deemed null and void.  If for any reason the Final Order and Judgment do not become final (i.e., the Final Settlement Date does not occur), all money in the interest-bearing account shall be returned to Defendants within five (5) days after the occurrence of the condition or event that prevents the Final Order and Judgment from becoming final.   In the event the Court awards Class Counsel less than $1,562,559 in Attorneys' Fees and Expenses, this Settlement Agreement shall nonetheless remain in full force and effect.

15.3.   **Named Plaintiff Case Contribution Award**.  For their endeavors on behalf of the Settlement Class, and in addition to any Claim Relief otherwise due them as members of the Settlement Class, Defendants shall pay to the Named Plaintiffs in the Action the following awards: (i) Monica Gray, Jasmine Gray-Oliver, and Justin Gray shall collectively receive the sum of $15,000; and (ii) Julia Wieck shall receive the sum of $15,000.  Defendants shall deliver to Settlement Class Counsel checks made payable to these Representative Plaintiffs in these amounts within thirty (30) days after the Final Settlement Date.

15.3.1.  If the Court awards the Named Plaintiffs a Case Contribution Award, each shall provide to Defendants a completed W9 form within ten (10) business days after the Final Judgment.

15.4.   The procedure for and the grant or denial or allowance or disallowance by the Court of the Attorneys' Fees and Expenses and Case Contribution Awards are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the applications for Attorneys' Fees and Expenses and Case Contribution Award, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the finality of Judgment approving the Agreement and the Settlement, except as provided for in Section 15.2.

16.   **CONFIDENTIALITY; COMMUNICATIONS TO MEDIA AND PUBLIC**

16.1   The Parties agree that the terms of this Settlement shall remain confidential and not be disclosed by any party until the Settlement Agreement is filed in connection with Named Plaintiffs' Preliminary Approval Application, except to the other defendants in the *Wieck* Matter,

to investors in the relevant reverse mortgage loans, or to the Parties' auditors, regulators, insurers, or reinsurers.

16.2    The Named Plaintiffs and Defendants agree further that both before and after Preliminary Approval of the Settlement, they shall not publish a press release or a release on the Internet concerning the Settlement without all the other Parties' prior review and written approval.

16.3    The Named Plaintiffs and Defendants agree that both before and after Preliminary Approval, if any print or electronic media outlet contacts any of the Parties or their counsel seeking information or a statement regarding the Settlement, in the absence of a response agreed upon by Named Plaintiffs and Defendants, no information will be provided in response to such inquiries except to the extent such information appears as part of the public record. The parties and their counsel agree not to disparage one another as part of any public comment.

16.4    For the avoidance of any doubt, nothing in this Settlement Agreement prevents the Parties or the Released Parties from making any disclosures required to effectuate this Settlement Agreement or from making any disclosures required by law.

## 17.    TERMINATION AND EFFECT THEREOF

17.1.    This Agreement shall be terminable by any Party if any of the conditions of Section 3 are not fully satisfied, or by Defendants if the conditions of Section 11.4 occur, unless they are waived in writing signed by authorized representatives of the parties maintaining such rights.

17.2.    This Agreement shall also terminate at the discretion of any Named Plaintiffs or Defendant if:  (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that is material, including without limitation, the terms or relief, the findings or conclusions of the Court, the provisions relating to Class Notice, the definition of the Settlement Class, and/or the terms of the Releases; (2) the Court, or any

appellate court(s), does not enter or completely affirm, or alters, or restricts, or expands, any portion of the final Judgment, or any of the District Court's findings of fact or conclusions of law, that is material; or (3) if all of the conditions required to be met before the Final Settlement Date do not occur.

17.3.   If this Agreement is terminated as provided herein, either automatically or by a Party, the Settlement shall be null and void from its inception and the Settling Parties will be restored to their respective positions in the *Gray* Litigation as of the date of Preliminary Approval. In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Settling Parties and will not be used in the *Gray* Litigation, or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, *nunc pro tunc.*

## 18.   MISCELLANEOUS PROVISIONS

18.1.   Named Plaintiffs and Settlement Class Members who have made or who make a claim for benefits in the future on their LPI Policy will not be affected in any way as a result of their participation in this Settlement, and may participate in this Settlement to the same extent as Named Plaintiffs or Settlement Class Members who have not made a claim on their LPI Policy.

18.2   There will be no offset to any amounts received by Named Plaintiffs or any Settlement Class Member under this Settlement to account for any payments to Named Plaintiffs or Settlement Class Members under the National Mortgage Settlement or any other settlement between CIT Bank and any governmental or private entity.

18.3.   The Settling Parties acknowledge that it is their intent to consummate this Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and

implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement.

18.4.   The arrangements embodied in the settlement are the result of compromise and accord, and shall not be considered an admission of liability or responsibility by Defendants or their Affiliates, officers, agents, servants, employees, insurers and attorneys, who or which continue to deny any violation or liability and disclaim any responsibility to the Settlement Class Members with respect to any and all alleged claims which those Settlement Class Members have asserted in the Action, could have asserted in the *Gray* Litigation and *Wieck* Action, or they may assert against Defendants or their Affiliates in the *Gray* Litigation and *Wieck* Action or otherwise. The amounts paid are to compromise the Claimants' claim for damages and the amounts paid represent the Claimants' compensation for such alleged damages.

18.5   The Settling Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the *Gray* Litigation and the *Wieck* Action. The Settlement compromises claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties agree that the consideration provided to the Settlement Class and the other terms of the Settlement were negotiated in good faith and at arm's length by the Settling Parties, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.

18.6.   Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claims, or of any wrongdoing or liability of any Defendant; or is or may be deemed to be or may be used as an admission of, or evidence of, any fault, omission, wrongdoing, or liability of any Defendant in any

civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Defendants may file this Agreement and/or the Judgment in any action that may be brought against them in order to support any defense or counterclaim, including, without limitation, those based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

18.7.    All agreements made and orders entered during the course of the *Gray* Litigation relating to the confidentiality of information will survive this Agreement.

18.8.    All of the Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

18.9.    This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Named Plaintiffs and Defendants or their respective successors-in-interest.

18.10.   This Agreement and the Exhibits attached hereto constitute the entire agreement among the Settling Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized herein.  Except as otherwise provided herein, the Settling Parties will bear their own respective costs.

18.11.   Class Counsel, on behalf of the Settlement Class, are expressly authorized by Named Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to this Agreement to effectuate its terms, and are expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Settlement Class that Class Counsel deem appropriate.

18.12. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. A complete set of counterparts will be submitted to the Court.

18.13. This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

18.14. The Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

18.15. None of the Settling Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof. The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any Settling Party as the drafter thereof.

18.16. The Settling Parties stipulate to stay all proceedings in the *Gray* Litigation until the approval of this Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve final judicial approval of this Agreement.

18.17. Except as agreed by the Parties in writing, within thirty (30) days after the Final Settlement Date, Class Counsel shall destroy all electronically stored information, testimony, or other information produced by Defendants in the *Gray* Litigation and the defendants in the *Wieck* Action, including the mediation for the *Gray* Litigation, and shall so certify in writing.

18.18. The Settlement shall be governed by the laws of the State of New Jersey, except to the extent that the law of the United States governs any matters set forth herein, in which case such federal law shall govern.

18.19.  The following principles of interpretation apply to the Agreement:  (a) the plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be; (b) references to a person are also to the person's successor-in-interest; and (c) whenever the words "include," includes," or 'including" are used in the Agreement, they shall not be limiting, but rather shall be deemed to be followed by the words "without limitation."

18.20.  The Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the notices of the Settlement Class after the Judgment is entered.

## 19.    NOTICES

19.1.    All Notices (other than the Class Notice) required by the Agreement shall be made in writing and communicated by fax and mail to the following addresses:

All Notices to Class Counsel shall be sent to Class Counsel, c/o:
Roosevelt N. Nesmith
Law Office of Roosevelt N. Nesmith, LLC
363 Bloomfield Avenue, Suite. 2C
Montclair, New Jersey 07042
Telephone: (973) 259-6990
Facsimile: (866) 848-1368

*Counsel for Named Plaintiffs and Class*

All Notices to Defense Counsel shall be sent to Defense Counsel, c/o:

Louis Smith
Greenberg Traurig LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone: (973) 360-7915
Facsimile: (973) 295-1256

*Counsel for CIT Bank, N.A.*

Robyn Quattrone
Mitchell Sandler LLC
1120 20th Street, NW, Suite 725

Washington DC 20026
Telephone: (202) 886-5260
Facsimile:
*Counsel for QBE Insurance Corporation,*
*QBE FIRST Insurance Agency, Inc. and*
*MIC General Insurance Corporation*

19.2.   The notice recipients and addresses designated above may be changed by written agreement of the Named Plaintiffs and Defendants.

19.3.   Upon the request of any of the Named Plaintiffs and Defendants, the Named Plaintiffs and Defendants agree to promptly provide each other with copies of objections, Requests for Exclusion, or other similar documents received from Settlement Class Members in response to the Class Notice.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this Settlement on the dates set forth below.

Dated: __11/11/19__          By: _____
                                  Name:  Roosevelt N. Nesmith, Esq.
                                  Title:

                                  *Counsel for Named Plaintiffs*


Dated: __11/11/19__          By: _____
                                  Name:  Catherine E. Anderson
                                  Title:

                                  *Counsel for Named Plaintiffs*


Dated: __11/12/19__          By: _____
                                  Name: Louis Smith, Esq.
                                  Title:

                                  *Counsel for CIT Bank, N.A.*


Dated: __11/11/19__          By: _____
                                  Name:  Robyn C. Quattrone, Esq.
                                  Title:

                                  *Counsel for Counsel for QBE Insurance*
                                  *Corporation, QBE FIRST Insurance*
                                  *Agency, Inc. and MIC General Insurance*
                                  *Corporation*

# EXHIBIT A

Exhibit A
# Instructions for CLAIM FORM

**Important Information About
Making a Claim for Settlement Relief**

| I.   HOW TO MAKE A CLAIM FOR SETTLEMENT RELIEF |
|---|

### A.   <u>Eligibility for Settlement Relief</u>

You may be entitled to a reimbursement of certain charges for Lender-Placed Insurance that were imposed on your reverse mortgage account by Financial Freedom.[1]

If Financial Freedom charged you, or the Borrower from whom you inherited property that secured a reverse mortgage loan serviced by Financial Freedom, for a hazard or wind-only Lender-Placed Insurance ("LPI") policy covering residential property issued by, subscribed by, or procured or obtained through Balboa Insurance Company, QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc., MIC General Insurance Corporation, Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London, or Great Lakes Reinsurance (UK), PLC n/k/a Great Lakes Insurance SE during the period February 2, 2012 through July 31, 2018,  you may be entitled to a payment in the amount of 6% or 10% of the net LPI premium for that LPI policy ("LPI Settlement Relief").

### B.   <u>How to Make a Claim for Settlement Relief</u>

If you are entitled to and wish to make a claim for Settlement relief, you ***must*** complete the enclosed Claim Form, and mail it to *Gray v. CIT Bank*, c/o _____, P.O. Box _____, _____, ___ _____--_____, with a postmark of no later than 60 days after the Final Settlement Date (as defined in the Settlement Agreement),[2] or, if a private mail carrier is used, a label reflecting that the mail date is no later than 60 days after the Final Settlement Date (the "Claim Deadline"). You may also complete and submit a Claim Form on the Settlement Website [www.GrayFinancialFreedomSettlementInfo.com] but must separately upload the required

---

[1] "Financial Freedom" means Financial Freedom, a division of OneWest Bank, FSB, which later was known as Financial Freedom, a division of OneWest Bank, N.A., and later was known as Financial Freedom, a division of CIT Bank, N.A. ("CIT Bank"), until CIT Bank sold the Financial Freedom reverse mortgage servicing business on May 31, 2018.

[2] The Final Settlement Date is the date on which the judgment in this case ("Judgment") becomes Final. If no appeal has been taken from the Judgment, the Final Settlement Date means the date on which the time to appeal has expired. If any appeal has been taken from the Judgment, the Final Settlement Date means the date on which all appeals have been finally disposed of in a manner that affirms the Judgment. Thus, the Claim Deadline will be no earlier than _____ ___, 2020.

verification documents to the Settlement Website pursuant to the instructions on the Website, no later than the Claim Deadline.  If the Court approves the Settlement and enters Judgment on the date of the Fairness Hearing and no appeal is filed, the deadline to submit a properly completed and accurate Claim Form will be no earlier than _____ , 2020. If you fail to submit your Claim Form as required by these Instructions, you will not be able to obtain a settlement credit or payment.

### 1. How to Answer the Question on the Claim Form to Determine If You Are A Member of the Settlement Class.

The question addresses whether you are a member of the Settlement Class.  If Financial Freedom charged you, or the Borrower from whom you inherited property that secured a reverse mortgage loan serviced by Financial Freedom, for a hazard or wind-only LPI policy as set forth in Section A above, and you meet all of the conditions described in Section 1 of the Claim Form, you may check "Yes" in response to the question.

### 2. Affirmations and Verification of Your Claim

For those Claimants who have been charged by Financial Freedom for LPI, your Claim Form must be completely filled out, signed and affirmed under penalty of perjury, and the Claimant's identity must be verified using the method of verification explained in the Claim Form, in order to receive a payment of Settlement Relief.

### a. Representatives of Borrowers Pursuant to Powers of Attorney

If you (the "Claimant") are the representative of a Borrower who is a member of the Settlement Class, acting pursuant to a Power of Attorney, in addition to the completing the Claim Form as set forth above, you must also confirm your authority to act on behalf of the Borrower by submitting evidence of your authority to act on behalf of the Borrower as set forth below:

a      The submission of a copy of the Power of Attorney with the Claim Form; and

b.      The signature of a witness who is 18 years of age or older representing and affirming that they have witnessed the Claimant sign the Claim Form, and this witness affirmation shall include the following:  "I declare (or certify, verify, or state) under penalty of perjury that I witnessed the signing of this Claim Form by the Claimant and the foregoing is true and correct;" or

c.      Provide a copy of a valid form of identification that contains a signature and photograph of the Claimant; or

d.      Provide a copy of a Financial Freedom reverse mortgage statement issued to Borrower; or

e.      Provide a notarial signature affirming that the Claimant executed the Claim Form making the required affirmations under oath in the presence of the

notary, and bearing evidence of the notarial authority in compliance with the law of the state in which it is being executed (*e.g.*, a seal, *etc.*).

### b.      Representatives of Borrowers' Estates

If you (the "Claimant") are the representative of a Borrower's estate and the Borrower is a member of the LPI Settlement Class, in addition to completing the Claim Form as set forth above, you must also confirm your authority to act on behalf of the Borrower's estate by submitting a certified copy of the Letters of Administration (called Letters Testamentary in some states).

### c.      Inheritors of Borrower Property Pursuant to Will or Intestacy

If you (the "Claimant") are an Inheritor of a deceased Borrower's property, in addition to completing the Claim Form as set forth above, you must also submit a copy of a form of deed naming the Claimant as a current owner of the Borrower's property, deed showing you as the joint owner of the property with rights of survivorship, also known as a Transfer on Death Deed, and Death Certificate, or an Executor's Deed or Administrative Deed.

### 3.      Review of Your Claim

Once you return your completed Claim Form, your claim will be reviewed by the Settlement Administrator.  Subject to the audit of claims, if your Claim Form is properly completed, affirmed, and where appropriate verified, and the Settlement Administrator determines that your claim is valid, you will receive your Settlement Relief, subject to final approval by the Court.

### 4.      Audit of Claim Forms

The Defendants in this case may separately audit or review Claim Forms submitted by Claimants.  Any such audit may include a review of banking or real property records pertaining to the Claimant(s) and any property insured by the LPI policy, and a computerized search for any bankruptcy filings in United States District Bankruptcy Court pertaining to the Claimant(s), or any deficiency judgment entered against the Claimant(s) in any state Court.

| II.      IF YOU NEED FURTHER INFORMATION |
|---|

If you have any questions or would like further information about the terms of the settlement, your eligibility for Settlement Relief under the Settlement Agreement, or how to make a claim for settlement relief, you may visit www.GrayFinancialFreedomSettlementInfo.com, call us toll-free at 1-800-xxx-xxxx, or write to: _____, _____, _____, _____, _____ XXXXX.

EXHIBIT B

**E**XHIBIT **B**

# C**LAIM** F**ORM**

| |
|---|
| Your claim must be |
| submitted by |
| **[INSERT DATE]** |

**YOU MUST SUBMIT THIS CLAIM FORM TO RECEIVE A SETTLEMENT PAYMENT**

PLEASE FULLY COMPLETE THIS CLAIM FORM AND SIGN IT BELOW.  INCOMPLETE CLAIM FORMS WILL BE DEEMED INVALID AND THE CLAIM MAY BE DENIED.

IF MORE THAN ONE PERSON IS A BORROWER ON THE LOAN, THEN ALL BORROWERS MUST COMPLETE AND SIGN THIS CLAIM FORM.

IF ONE OR MORE OF THE BORROWERS ARE DECEASED, PLEASE SEE INSTRUCTIONS.

**TO BE COMPLETED BY YOU**:

1.    Claimant(s)' Name(s)        _____

_____

2.    Claimant(s)' Current Address
(if different from the address        _____
on the envelope enclosing        _____
this Claim Form)        _____
_____

3.    Borrower(s)' Name(s)        _____
(if different from the Claimant(s))
_____

4.    Borrower(s)'Current Address
(if different from the address        _____
on the envelope enclosing        _____
this Claim Form)        _____
_____

5.    Address of the property for which
Financial Freedom placed        _____
the LPI Policy

_____

6.     Borrower(s)' Date(s) of Birth    _____

7.     Claimant(s)' Home Telephone Number _____

8.     Claimant(s)' Social Security Number(s)_____
        (Last four digits only)
        _____

9.     Borrower (s)' Social Security Number(s)_____
        (Last four digits only)
        _____

---

**QUESTION:**     **DID FINANCIAL FREEDOM CHARGE YOU FOR THE PREMIUM ON A HAZARD OR WIND-ONLY LENDER-PLACED INSURANCE POLICY COVERING YOUR RESIDENTIAL PROPERTY BETWEEN FEBRUARY 2, 2012 AND JULY 31, 2018?**

☐  **Yes**    ☐  **No**

---

# __Section 1__

**(1)**     **During the time period described on the Instructions for this Claim Form, I was the Borrower, am the representative of a Borrower, or inherited property from a Borrower that was listed as an additional named insured or an insured under a lender-placed hazard or wind-only insurance policy issued by, subscribed by, or procured or obtained through Balboa Insurance Company, QBE Insurance Company, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc., MIC General Insurance Company, Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London or Great Lakes Reinsurance (UK), PLC n/k/a Great Lakes Insurance SE for residential property secured by a reverse mortgage loan serviced by Financial Freedom (an "LPI Policy");**

**(2)**     **I was charged an LPI Policy premium by Financial Freedom;**

**(3)**     **The charge for the LPI Policy was not cancelled out in full after issuance; and**

**(4)**     **Since the issuance of the LPI Policy, my indebtedness on my residence secured by my security instrument has not been compromised or discharged in bankruptcy or otherwise.**

    **I hereby declare (or certify, verify, or state) under penalty of perjury that the information provided by me on this Claim Form is true and correct.**

**Date: _____**


**_____**        **_____**

**(Signature of Claimant)**        Last Four Digits of Social Security No.


**_____**        **_____**

**(Signature of Co-Claimant)**        Last Four Digits of Social Security No.


**Please MAIL THIS CLAIM FORM to the *Gray* Financial Freedom *Settlement Center*, P.O. Box____, _____, _____ _____-___, with a postmark of no later than _____, or, if a private mail carrier is used, a label reflecting that the mail date is no later than _____.**

**Option 1**

## <u>Witness Verification</u>

I witnessed the Claimant execute the foregoing Claim Form, and affirm and verify under penalty of perjury that the foregoing is true and correct:

_____     Date: _____
    (Signature of Witness)


_____
    (Address of Witness)


_____


_____


Phone: _____ - _____-_____

**Option 2**

## <u>Notary Verification</u>

STATE OF _____ )

                                               SS

COUNTY OF_____ )

     BEFORE ME, the undersigned authority, personally appeared _____, who after having been duly sworn, state(s) that the foregoing affirmation and statement is true and correct.  He/she personally appeared before me, is/are personally known to me or produced _____ as identification, and did take an oath.

Notary: _____

       (Signature)

Print Name: _____ [NOTARY SEAL]

Notary Public, State of _____

My commission expires: _____

# EXHIBIT C

**EXHIBIT C**

# AFFIDAVIT FOR DECEASED CO-CLAIMANT ON CLAIMS UNDER $150 IN STATES OTHER THAN CALIFORNIA AND ILLINOIS

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MONICA GRAY, AS EXECUTRIX OF THE ESTATE OF EARL GRAY, JR. AND AS TRUSTEE OF THE INTEREST OF JASMINE GRAY-OLIVER, JUSTIN GRAY, AND JULIA WIECK on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIT BANK, N.A., QBE INSURANCE CORPORATION, QBE FIRST INSURANCE AGENCY, INC., AND MIC GENERAL INSURANCE CORPORATION,<br><br>Defendants. | CASE NO. 1:18-cv-01520-RMB-AMD |

**AFFIDAVIT**

1. I, _____, being first duly sworn hereby declare:

2. The Claimant(s)/Co-Claimant(s), _____[*Name of Deceased*] _____, for the proceeds in the case entitled *Gray v. CIT Bank, N.A., et al*, No. 1:18-cv-01520 (D.N.J.), is/are deceased.

3. To the best of my personal knowledge, no proceeding is now being or has been conducted in probate court for administration of the decedent's estate.

4. I am the successor to the decedent's interest in the described property and am entitled to file a claim in the case entitled *Gray v. CIT Bank, N.A., et al*, No. 1:18-cv-01520 (D.N.J.).

5. No other person has a superior right to the interest of the decedent in the settlement proceeds.

6. Should any other individual bring a legal action against Defendants in the *Gray v. CIT Bank, N.A., et al*, No. 1:18-cv-01520 (D.N.J.) matter related to the payment of these settlement proceeds, I agree to hold Defendants in this matter free and harmless and indemnify them against all liability, claims, demands, loss, damages, costs and expense whatsoever that they may incur because of the payment of said proceeds.

7. I request that the settlement proceeds be paid, delivered, or transferred to me in my name.

      I DECLARE under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____

State of _____ )
County of _____ )

      SWORN TO and SUBSCRIBED before me by _____ who is personally known or produced identification (type of identification produced _____), this \_\_\_\_\_ day of _____, 2019.

_____
NOTARY PUBLIC

My Commission Expires:

EXHIBIT D

# Exhibit D

### *Gray v. CIT Bank, N.A., et al.*
### Case No. 1:18-cv-01520 (RMB)
### United States District Court for the District of New Jersey

If Financial Freedom[1] charged you, or the Borrower[2] from whom you inherited property that secured a reverse mortgage loan serviced by Financial Freedom, for a hazard or wind-only Lender-Placed Insurance policy covering residential property during the Class Period, as defined below, you may be entitled to payment as part of a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- If you were charged by Financial Freedom for a hazard or wind-only insurance policy covering residential property issued by, subscribed by, or procured or obtained through Balboa Insurance Company, QBE Insurance Corporation ("QBE Insurance"), QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc. ("NGLS") and any of its affiliates, MIC General Insurance Corporation ("MIC General"), Seattle Specialty Insurance Services, Inc. ("Seattle Specialty"), Certain Underwriters at Lloyd's, London ("Lloyd's"), or Great Lakes Reinsurance (UK), PLC n/k/a Great Lakes Insurance SE ("Great Lakes") (collectively, "Insurance Entities"), and placed during the Settlement Class Period pursuant to a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom to cover a Borrower's failure to maintain the required insurance coverage on the residential propery securing the reverse mortgage loan ("LPI Policy") this Settlement may provide you with an opportunity to claim a cash award.

- Class Period:  The Class Period begins on February 2, 2012 and ends on July 31, 2018.

- This notice will explain what the class action lawsuit was about, what the Settlement will be if it is approved by the Court, whether you qualify to submit a claim for a cash award based on the Settlement, and what to do if you want to: (i) submit a claim; or (ii) object to

---

[1] "Financial Freedom" means Financial Freedom, a division of OneWest Bank, FSB, which later was known as Financial Freedom, a division of OneWest Bank, N.A., and later was known as Financial Freedom, a division of CIT Bank, N.A. ("CIT Bank"), until CIT Bank sold the Financial Freedom reverse mortgage servicing business.

[2] "Borrower" means (1) the person or persons who signed a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom and secured by residential property; and (2) property owners who were devised property secured by a reverse mortgage serviced by Financial Freedom where the devisor's reverse mortgage account was charged for an LPI Policy by Financial Freedom after the property had been devised to the property owner.

*(footnote continued on following page)*

the Settlement; or (iii) not participate in the Settlement and instead "opt out" of the Settlement Class.  This notice will also tell you how to get more information if you want it.

- If you decide to submit a claim, you will need to follow the Instructions for the Class Action Claim Form, and fill out the Claim Form sent to you with this notice.  Everyone submitting a Claim Form must answer the questions on the Claim Form truthfully, and must affirm the statements in the Claim Form under penalty of perjury.  Some Claimants must also verify their identity.

- All Caimants who meet the requirements and submit valid and properly completed Claim Forms will receive a cash award as follows:  (1) Claimants who were charged a Net Premium[3] for an LPI Policy placed on the Borrower(s)' property between February 2, 2012 and May 7, 2013 will receive an amount equal to 10% of the Net Premium; and (2) Claimants who were charged a Net Premium for an LPI Policy placed on the Borrower(s)' property between May 8, 2013 and July 31, 2018 will receive an amount equal to 6% of the Net Premium.

YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DON'T ACT.  PLEASE READ THIS NOTICE CAREFULLY, AND GET MORE INFORMATION IF YOU NEED IT. THE NOTICE WILL TELL YOU HOW TO GET THAT INFORMATION.

## **WHAT THIS NOTICE CONTAINS**

BASIC INFORMATION..........................................................................PAGE ___

    1. Why Was This Notice Sent To Me?
    2. What Is This Notice?
    3. What Is This Lawsuit About?
    4. Why Is There A Settlement?

SETTLEMENT CLASS MEMBERSHIP ...............................................PAGE ___

    5. Who Is A Settlement Class Member?·
    6. What If I Am Not Sure Whether I Am Included In The Settlement Class?

THE SETTLEMENT TERMS AND BENEFITS ...................................PAGE ___

    7. What Are The Terms Of The Settlement?
    8. How Do I Receive A Cash Award?

---

[3] "Net Premium" means the amount of premium charged to a Settlement Class Member during the Settlement Class Period for an LPI Policy that was not cancelled, less any refund paid or credited to the Settlement Class Member.

9.   When Would I Receive My Cash Award?
10. What Am I Giving Up To Be Part Of The Settlment Class?
11. What Happens If I Do Nothing?

EXCLUDING YOURSELF FROM THE SETTLEMENT .....................................PAGE ___

12. How Do I Get Out Of The Settlement?
13. What If I Do Not Opt Out Of The Settlement?
14. If I Exclude Myself, Can I Receive Money From This Settlement?

OBJECTING TO THE SETTLEMENT ..................................................................PAGE ___

15. How Can I Object To The Settlment?

THE LAWYERS REPRESENTING YOU  ............................................................PAGE ___

16. Do I Have A Lawyer In This Case?
17. How Will The Class Counsel Lawyers Be Paid?

THE COURT'S FAIRNESS HEARING  ................................................................PAGE ___

18. When And Where Will The Court Decide Whether To Approve The Settlement?
19. As A Settlement Class Member, May I Speak At The Hearing?

GETTING MORE INFORMATION .......................................................................PAGE ___

20. Where Can I Get More Details About The Settlement?

## BASIC INFORMATION

**1.      WHY WAS THIS NOTICE SENT TO ME?**

This Notice was sent to you because Defendants' records indicate that your residential insurance policy lapsed, that a hazard or wind-only lender-placed insurance policy ("LPI Policy") was issued for your residential property, and that you were charged by Financial Freedom, as your mortgage servicer, for this LPI Policy during the Class Period.

The Court ordered this Notice to be sent to you because you have a right to know about the proposed Settlement of this class action lawsuit, which concerns LPI issued by one or more of the Insurance Entities (Balboa Insurance Company, QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc., MIC General Insurance Corporation, Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London, or Great Lakes Reinsurance (UK), PLC n/k/a Great Lakes Insurance SE), and about your options, before the Court decides whether to approve the Settlement.

If the Court approves the Settlement, and if you satisfy the claim criteria and submit a valid claim, you will receive a cash award from an Administrator approved by the Court.  However, the cash award will not be made until any objections to the settlement or appeals to the judgment entered in the lawsuit are resolved.

**2.      WHAT IS THIS NOTICE?**

This Notice is part of a package sent to all potential Settlement Class Members like you. The package includes this Notice, the Instructions for the Class Action Claim Form, and the Class Action Claim Form. This package explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of New Jersey, and the case is known as *Gray et al. v. CIT Bank, N.A., et al.,* Case No 1:18-cv-01520 (RMB) and is pending in the District of New Jersey.

Plaintiffs Monica Gray, Jasmine Gray Oliver, Justin Gray and Julia Wieck sued on behalf of you and all Settlement Class Members and are called the "Plaintiffs." The companies they sued, CIT Bank, N.A., QBE Insurance, NGLS, and MIC General, are called the "Defendants."

**3.      WHAT IS THIS LAWSUIT ABOUT?**

This lawsuit involves hazard or wind-only lender-placed insurance ("LPI"), which is insurance that is placed on a Borrower's property to protect the Borrower and mortgage lender when the Borrower's insurance policy lapses, or when the Borrower does not maintain a homeowner's insurance policy that is acceptable to the mortgage lender. When an LPI Policy was placed pursuant to the Borrower's mortgage contract, Financial Freedom paid premiums to the LPI insurer who wrote the policy, and then Financial Freedom charged the Borrowers for those premiums.

The Plaintiffs brought claims on behalf of all persons in the Settlement Class (as defined in Answer #5).  Plaintiffs allege that when a Borrower was required to have insurance for his or her property pursuant to a reverse mortgage, including a home equity conversion mortgage, and evidence of acceptable homeowner's insurance coverage was not provided (for example, when the insurance policy did not exist or had lapsed), Financial Freedom would place LPI in a manner such that Financial Freedom allegedly received an unauthorized benefit. Plaintiffs allege further that

4

Financial Freedom did so primarily to receive "kickbacks" from the Insurance Entities. Plaintiffs also allege that the way in which LPI policies were obtained and placed caused the insurance charges and the amount of coverage to be excessive.

All Defendants expressly deny the Plaintiffs' allegations and assert their actions are fully authorized under the mortgage instruments and by law. They also expressly deny that they did anything wrong. There has been no court final decision on the ultimate merits of this case and no finding that Defendants committed any wrongdoing.

**4.      WHY IS THERE A SETTLEMENT?**

Both sides have agreed to a Settlement to avoid the cost and risk of a trial and so that Borrowers can get benefits in exchange for releasing Defendants from liability.

**SETTLEMENT CLASS MEMBERSHIP**

**5.      WHO IS A SETTLEMENT CLASS MEMBER?·**

To see if you will be affected by this class action, you first have to determine if you are a member of the Settlement Class.  The "Class" is:

> All Borrowers in the United States who, during the Settlement Class Period (February 2, 2012 through July 31, 2018), were charged by Financial Freedom a Net Premium for an LPI Policy issued during the Settlement Class Period.
> Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of Defendants or any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or the borrower's escrow account; (iv) borrowers whose indebtedness on the residential property securing the reverse mortgage loan serviced by Financial Freedom has been compromised or discharged in bankruptcy or otherwise; and (v) all borrowers who file a timely and proper request to be excluded from the Settlement Class.

**6.      WHAT IF I AM NOT SURE WHETHER I AM INCLUDED IN THE SETTLEMENT CLASS?**

If you are not sure whether you are included in the Settlement Class, or you have questions about the case, you may call the toll free number, 1-XXX-XXX-XXXX , or visit the Settlement Website at www.GrayFinancialFreedomSettlementInfo.com.

**THE SETTLEMENT TERMS AND BENEFITS**

**7.      WHAT ARE THE TERMS OF THE SETTLEMENT?**

Defendants have agreed to provide (1) Settlement Class Members who were charged a Net Premium for an LPI Policy placed on the Borrower(s)' property between February 2, 2012 and May 7, 2013 with a cash award in the amount of 10% of the Net Premium charged; and (2) Settlement Class Members who were charged a Net Premium for an LPI Policy placed on the

Borrower(s)' property between May 8, 2013 and July 31, 2018 with a cash award in the amount of 6% of the Net Premium charged, provided they submit a valid, timely, and properly completed Claim Form.

<u>Each Settlement Class Member must submit a Claim Form to be eligible to receive these benefits.</u> Certain Defendants also have agreed to additional injunctive relief. The Settlement benefits are described in further detail in the Settlement Agreement, which is available at www.GrayFinancialFreedomSettlementInfo.com.

This Settlement will not affect any rights or claims that you may have under the National Mortgage Settlement or any other settlement between Financial Freedom and any governmental or private entity. This Settlement also will not affect any claim for benefits on your LPI Policy that you have made or may make in the future. However, as described below (see Answer #11), this Settlement will affect any claims that you may have relating to, concerning, or pertaining to, among other things, Defendants' conduct, policies, or practices concerning LPI Policies and charges for Financial Freedom's placement of LPI Policies during the Settlement Class Period.

## 8.    HOW DO I RECEIVE A CASH AWARD?

To receive a cash award you must be a Settlement Class Member and must send in a properly completed Class Action Claim Form by U.S. Mail postmarked by a date 60 days after the Final Settlement Date (as defined in the Settlement Agreement),[4] or, if a private mail carrier is used, a label reflecting that the mail date is no later than 60 days after the Final Settlement Date (the "Claim Deadline"). You may also submit a completed Claim Form by uploading it and required verification documents to the Settlement Website no later than the Claim Deadline.  If the Court approves the Settlement and enters Judgment and no appeal is filed, the deadline to submit a properly completed and accurate Claim Form will be _____, 2020. The Class Action Claim Form Instructions and a Class Action Claim Form have been sent to you with this Notice. You may also obtain a Claim Form on the Settlement Website at www.GrayFinancialFreedomSettlementInfo.com, or you can call for one at the toll-free number of 1-XXX-XXX-XXXX.

Please read the Claim Form Instructions carefully, fill out the Claim Form, sign it, and mail it postmarked no later than _____, or upload it and verification documents to the website no later than _____.  The Claim Form Instructions and the Claim Form explain what must be done.  If your Claim Form is not properly completed and/or all required information is not provided, it will be deemed invalid.

## 9.    WHEN WOULD I RECEIVE MY CASH AWARD?

---

[4]    The Final Settlement Date is the date on which the judgment in this case ("Judgment") becomes Final. If no appeal has been taken from the Judgment, the Final Settlement Date means the date on which the time to appeal has expired. If any appeal has been taken from the Judgment, the Final Settlement Date means the date on which all appeals have been finally disposed of in a manner that affirms the Judgment. Thus, the Claim Deadline will be no earlier than _____, 2020.

The Court will hold a hearing on _____ to determine whether to approve the Settlement. If Judge Renee Marie Bumb approves the Settlement, there may be appeals after that. It is always uncertain when any appeals, if taken, will be resolved. You will receive your cash award within 180 days after the Settlement becomes final and effective, i.e., after all appeals are resolved.

**10.     WHAT AM I GIVING UP TO BE PART OF THE SETTLMENT CLASS?**

If you are a Settlement Class Member and unless you exclude yourself, you are staying in the Settlement Class. That means you cannot sue, continue to sue, or be part of any other lawsuit against Defendants about LPI, or the issues that were or could have been raised in this case. It also means that all of the Court's orders concerning the Settlement Class will apply to you and legally bind you, including the Release described in detail in Section 10 of the Settlement Agreement. This Release provision describes the legal claims that you give up if this Settlement is approved and you do not exclude yourself. Please carefully read this Release and the Settlement Agreement.

**11.     WHAT HAPPENS IF I DO NOTHING?**

If you do nothing as a Settlement Class Member, you'll receive no money from this Settlement. But, unless you exclude yourself from the Settlement, you will not be able to start a lawsuit or continue with a lawsuit against Defendants about the legal issues that were or could have been raised in this case, ever again.

**<u>EXCLUDING YOURSELF FROM THE SETTLEMENT</u>**

**12.     HOW DO I GET OUT OF THE SETTLEMENT?**

If you fall within the definition of the Settlement Class (see Answer #5), you are automatically a member of the Settlement Class. However, you can exclude yourself, or "opt-out" of the Settlement Class, if you do not wish to participate. This means you will receive no payment as part of this Settlement, nor any of the additional Settlement benefits.

You cannot ask to be excluded over the phone or via the internet. To exclude yourself, you must mail a written request for exclusion to the Settlement Administrator that includes: (1) a statement requesting exclusion from the proposed Settlement, such as "I hereby request that I be excluded from the proposed Settlement Class in the Gray Financial Freedom Class Action"; (2) your name, your address, and the case name; and (3) your original signature. Your written request for exclusion must be postmarked no later than _____ and mailed to [ADDRESS OF SETTLEMENT ADMINISTRATOR]. You may not seek to "opt out" of the Settlement on behalf of other members of the Settlement Class.

**13.     WHAT IF I DO NOT OPT OUT OF THE SETTLEMENT?**

Any member of the Settlement Class who does not opt out of the Settlement in the manner and by the deadlines described above shall be part of the Settlement Class, shall be bound by all Orders and proceedings in this action, and shall give up the right to sue any of the Defendants for the claims that this Settlement resolves. If you desire to opt out, you must take timely affirmative written action even if you have filed a separate action against any of the Defendants or are a putative class member in any other class action filed against any of the Defendants. If you have a pending lawsuit please contact your lawyer in that lawsuit immediately. Remember, the exclusion deadline is _____.

14. **IF I EXCLUDE MYSELF, CAN I RECEIVE MONEY FROM THIS SETTLEMENT?**

No. If you are a Settlement Class Member and exclude yourself, do not send in a Claim Form to ask for any money. But, you may sue or continue to sue Defendants individually, or you may be part of a different lawsuit against Defendants.

**OBJECTING TO THE SETTLEMENT**

15. **HOW CAN I OBJECT TO THE SETTLMENT?**

You may object to or comment on all or part of the proposed Settlement if you are a Settlement Class Member and do not opt out of the Settlement. To do so, you (or your attorney on your behalf) must submit a valid objection.

To be valid, your objection must be in writing, personally signed by you, and must include: (a) the case name and number; (b) your name, address, telephone number, and, if represented by counsel, their contact information; (c) the basis for your objection; and (d) a statement of whether you intend to appear at the Final Approval Hearing.

Your objection must be filed with the Clerk of Court, with copies mailed to all of the parties identified below, postmarked no later than _____:

| CLERK OF THE COURT | CLASS COUNSEL |
|---|---|
| Clerk of the United States District Court for the District of New Jersey<br>United States District Court for the District of New Jersey<br>Mitchell H. Cohen U.S. Courthouse<br>1 John F. Gerry Plaza<br>Camden, New Jersey 08101 | Roosevelt N. Nesmith, Esq.<br>Law Office of Roosevelt N. Nesmith LLC<br>363 Bloomfield Avenue, Suite 2<br>Montclair, NJ 07042 |
| **COUNSEL FOR CIT BANK, N.A.** | **COUNSEL FOR QBE INSURANCE CORPORATION, QBE FIRST INSURANCE AGENCY, INC., and MIC GENERAL INSURANCE CORPORATION** |
| Louis Smith, Esq.<br>Greenberg Traurig LLP<br>500 Campus Drive, Suite 400<br>Florham Park, NJ 07932 | Stephen LeBlanc, Esq.<br>Mitchell Sandler LLC<br>1120 20th Street, NW, Suite 725<br>Washington DC 20026 |

**THE LAWYERS REPRESENTING YOU**

16. **DO I HAVE A LAWYER IN THIS CASE?**

The Court appointed the following lawyers to represent you and all other Settlement Class Members. Together, these lawyers are called Class Counsel. You will not be charged any money to pay for these lawyers.

| | |
|---|---|
| Roosevelt N. Nesmith, Esq.<br>Law Office of<br>Roosevelt N. Nesmith LLC<br>363 Bloomfield Avenue, Suite 2<br>Montclair, NJ 07042<br>Telephone: (973) 259-6990<br>Facsimile: (866) 848-1368 | Catherine E. Anderson<br>Giskan, Solotaroff & Anderson, PC<br>217 Centre Street, 6th Fl.<br>New York, NY 10013<br>Telephone: (212) 847-8315<br>Facsimile: (646) 520-3236 |

## 17.    HOW WILL THE CLASS COUNSEL LAWYERS BE PAID?

Class Counsel will ask the Court to approve an award for attorneys' fees and expenses up to $1,562,559, and case contribution awards of $15,000 paid to Named Plaintiffs Monica Gray, Jasmine Gray Oliver and Justin Gray, collectively, and $15,000 to Named Plaintiff Julia Wieck for their time and efforts undertaken in the matter. The Court may award less than these amounts.

Defendants will separately pay the fees and expenses and the case contribution awards that the Court awards, up to maximums of $1,562,559 in attorneys' fees and expenses, and up to $30,000 in case contributions awards. These amounts will not reduce the amount of any cash awards to Settlement Class Members. Defendants have agreed not to oppose the applications by Class Counsel for attorneys' fees and expenses or the case contribution awards to the Named Plaintiffs in the amounts set forth above.

## THE COURT'S FAIRNESS HEARING

## 18.    WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court will hold a Fairness Hearing at __ :00 .m. on _____, in Courtroom _____ at the United States District Court for the District of New Jersey at the Mitchell H. Cohen U.S. Courthouse, 1 John F. Gerry Plaza, Camden, New Jersey 08101.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are valid and timely objections, the Court will consider them.  Judge Renee Marie Bumb may listen to people who have properly asked (in writing) to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long this decision will take.

## 19.    AS A SETTLEMENT CLASS MEMBER, MAY I SPEAK AT THE HEARING?

You cannot speak at the hearing if you have excluded yourself from the Settlement Class. However, if you are part of the Settlement Class, you may ask the Court for permission for you or your attorney to speak at the Fairness Hearing. To do so, you must file with the Clerk of the Court and serve on all counsel for the parties (at the addresses identified above in Answer #16) a notice of intention to appear at the Final Approval Hearing. The notice of intention to appear must include the case name and number; your name, address, telephone number, and signature, and, if

represented by counsel, their contact information; and copies of any papers, exhibits, or other evidence that you intend to present to the Court in connection with the Final Approval Hearing. The notice of intention to appear must be filed with the Clerk of Court and served on all counsel no later than _____, 2020.

If you do not file a notice of intention to appear in accordance with the deadlines and other specifications set forth in the Settlement Agreement and this Notice, you will not be entitled to appear at the Final Approval Hearing to raise any objections.

**GETTING MORE INFORMATION**

**20.   WHERE CAN I GET MORE DETAILS ABOUT THE SETTLEMENT?**

This notice summarizes the lawsuit. More details are in the Settlement Agreement, which is available through the Settlement Website at www.GrayFinancialFreedomSettlementInfo.com. You may also contact Class Counsel, as identified above.

In addition, you may call 1-XXX-XXX-XXXX toll free, or visit the Settlement Website, to find answers to common questions about the Settlement, a Claim Form, and other information to help you determine whether you are eligible for relief from this Settlement.

Date: _____

**PLEASE DO NOT CALL THE COURT. PLEASE ALSO DO NOT CALL OR SEND CORRESPONDENCE PERSONALLY TO JUDGE BUMB OR HER STAFF.**

EXHIBIT E

**EXHIBIT E**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

MONICA GRAY, AS EXECUTRIX OF THE
ESTATE OF EARL GRAY, JR. AND AS
TRUSTEE OF THE INTEREST OF
JASMINE GRAY-OLIVER, JUSTIN GRAY
AND JULIA WIECK, on behalf of themselves
and all others similarly situated,

**CASE NO. 1:18-cv-01520-RMB-AMD**

                                Plaintiffs,

       v.

CIT BANK, N.A., QBE INSURANCE
CORPORATION, QBE FIRST
INSURANCE AGENCY, INC., AND
MIC GENERAL INSURANCE
CORPORATION,

                                Defendants.

---

**[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFYING CLASS FOR
SETTLEMENT PURPOSES, DIRECTING THE ISSUANCE OF CLASS NOTICE,
AND SCHEDULING A FINAL APPROVAL HEARING**

      Upon review and consideration of Plaintiffs' Motion for Preliminary Approval of

Class Action Settlement, including the parties' Stipulation and Settlement Agreement (the

"Settlement Agreement") and all exhibits thereto, and having been fully advised in the

premises, it is HEREBY ORDERED, ADJUDGED and DECREED as follows:

      1.    **Settlement**.    Plaintiffs and Defendants have negotiated a potential

settlement of this action (the "Gray Litigation" or the "Action") to avoid the expense,

uncertainties, and burden of protracted litigation, and to resolve the Released Claims

against the Released Parties, including (a) CIT Bank, N.A., CIT Group Inc., OneWest

Bank, FSB, OneWest Bank, N.A., Financial Freedom Acquisition, LLC, Financial Freedom, IndyMac Financial Services, IndyMac Agency, Inc., QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc., MIC General Insurance Corporation, Balboa Insurance Company, Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London, and Great Lakes Reinsurance (UK) PLC n/k/a Great Lakes Insurance SE, and each of their respective past, present, and future, direct or indirect, Affiliates, parent companies, subsidiaries, divisions, predecessors, successors, assigns, investors, and all past or present officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of any such entities or persons; (b) any insurance carrier, broker, or agent from whom Defendants procured or obtained a hazard or wind-only LPI Policy, or that was a party to an agreement relating to an LPI Policy, insuring residential real property owned by any Settlement Class Member, to the extent not included within subsection (a) above; and (c) any trustee of a mortgage securitization trust which included loans made to any Settlement Class Member, any owner, investor, and/or noteholder of the reverse mortgage loans CIT Bank or Financial Freedom serviced and upon whose secured properties LPI was placed for any Settlement Class member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

    2.    **Review.**  The Court has reviewed the Settlement Agreement and supporting documents in this matter.  The terms and conditions in the Settlement Agreement are hereby incorporated as though fully set forth in this Order, and, unless otherwise indicated,

capitalized terms in this Order shall have the meanings attributed to them in the Settlement Agreement.

3.      **Preliminary Approval**.  The Settlement Agreement entered into by and among the Plaintiffs Monica Gray, as executrix of the Estate of Earl Gray, Jr., and as trustee of the interests of Jasmine Gray Oliver, and Justin Gray, and Julia Wieck, on behalf of themselves and the Settlement Class, and Defendants has been negotiated at arm's length and is approved on a preliminary basis as fair, reasonable, and adequate.

4.      **Settlement Class Relief**.  The proposed Settlement Relief to the Settlement Class Members, as identified in Section 4 of the Settlement Agreement, is approved on a preliminary basis as fair, reasonable, and adequate.  The Settlement Class shall consist of:

> The "Settlement Class" shall include all Borrowers in the United States who, during the Settlement Class Period (February 2, 2012 through July 31, 2018), were charged by Financial Freedom a Net Premium for an LPI Policy issued during the Settlement Class Period.

> Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of Defendants or any of their respective Affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or the borrower's escrow account; (iv) borrowers whose indebtedness on the residential property securing the reverse mortgage loan serviced by Financial Freedom has been compromised or discharged in bankruptcy or otherwise; and (v) all borrowers who file a timely and proper request to be excluded from the Settlement Class.

5.      **Preliminary Certification of Settlement Class.**  The Court makes the following determinations as to certification of the Settlement Class:

(a)      The Court preliminarily certifies the Settlement Class for purposes of settlement only, under Fed. R. Civ. P. 23(a) and (b)(3).

(b)     The Settlement Class is so numerous that joinder of all members is impracticable;

(c)     There are questions of law or fact common to the members of the Settlement Class;

(d)     The claims of the Named Plaintiffs are typical of the claims of the other members of the Settlement Class;

(e)     The Named Plaintiffs are capable of fairly and adequately protecting the interests of the members of the Settlement Class, in connection with the Settlement Agreement;

(f)     Common questions of law and fact predominate over questions affecting only individual members of the Settlement Class;

(g)     The Settlement Class is ascertainable; and

(h)     Resolution of the claims in this Litigation by way of a nationwide settlement is superior to other available methods for the fair and efficient resolution of the claims of the Settlement Class.

6.     **Designation of Class Representative**.  Plaintiffs Monica Gray, Jasmine Gray Oliver, Justin Gray and Julia Wieck are designated as representative of the Settlement Class for the sole purpose of seeking a settlement of the Gray Litigation.

7.     **Designation of Class Counsel**.  The law firms of The Law Office of Roosevelt N. Nesmith, LLC, and Giskan, Solotaroff & Anderson, LLP, are hereby designated as Class Counsel for the Settlement Class.

8.     **Final Approval Hearing**.  A hearing regarding final approval of the Settlement ("Final Approval Hearing") will be held at     :00        ___.m.                on

4

_____, 2020 in _____ before the

Honorable Renee Marie Bumb, to determine, among other things: (i) whether the

Settlement of the Gray Litigation should be approved as fair, reasonable, and adequate; (ii)

whether the Gray Litigation should be dismissed with prejudice pursuant to the terms of

the Settlement Agreement; (iii) whether Settlement Class Members should be bound by the

Release set forth in the Settlement Agreement; (iv) whether Settlement Class Members

should be subject to a permanent injunction which, among other things, bars Settlement

Class Members who have not opted out of the settlement from filing, commencing,

prosecuting, intervening in, participating in (as class members or otherwise), organizing,

or soliciting the participation of other Settlement Class Members to pursue any action in

any jurisdiction based on or relating to any of the Released Claims or the facts and

circumstances relating thereto; and (v) whether the application of Class Counsel for an

award of Attorneys' Fees and expenses, and the proposed Case Contribution Award to the

Named Plaintiffs, should be approved.

      9.    **Class Notice**.

      (a)    The Court approves the Class Notice in the Settlement Agreement,

including the Mail Notice attached as Exhibit D to the Settlement Agreement and the

manner of providing Mail Notice to Settlement Class Members described in Section 6 of

the Settlement Agreement. The Court finds that this is the best practicable notice under

the circumstances and is reasonably calculated, under all the circumstances, to apprise the

Settlement Class Members of the pendency of this Action, the terms of the Settlement

Agreement, and their right to object to the Settlement Agreement or exclude themselves

from the Settlement Class. The Court further finds that Mail Notice and the other forms of

Class Notice in the Settlement Agreement are reasonable, constitute due, adequate, and sufficient notice to all persons entitled to receive notice, and meet the requirements of due process.

(b)     The Mail Notice shall be mailed not less than ninety (90) days before the date set by the Court for a Final Approval Hearing regarding the Settlement. The Mail Notice shall include the Claim Instructions (attached as Exhibit A to the Settlement Agreement) and Claim Form (attached as Exhibit B to the Settlement Agreement).

(c)     A similar but abbreviated Summary Publication Notice of Class Action, Proposed Settlement, Final Approval Hearing, and Right to Appear shall be published not less than forty-five (45) days before the date set by the Court for the Final Approval Hearing regarding this Settlement.

(d)     No later than the posting of the Mail Notice, the Settlement Administrator shall establish an Internet site (the "Settlement Website") which shall contain copies of the Settlement Agreement and Exhibits and the Mail Notice, and allow Settlement Class members to upload and file their claim forms.  The Settlement Website shall also contain Claim Form Instructions and a Claim Form which may be downloaded or printed from the Settlement Website.  In addition, the Settlement Website shall allow for the option of completing Claim Forms online within the settlement website utilizing an e-signature format.  However, when the claim form is completed online, the Settlement Class Member must separately upload the required verification documents to the Settlement Website pursuant to the instructions on the Website no later than the Claim Deadline.  The Settlement Website shall have a Uniform Resource Locator which identifies

the Settlement Website as www.GrayFinancialFreedomSettlementInfo.com. The
Settlement Website shall remain open and accessible through the last day for Settlement
Class Members to submit a Claim for Settlement Relief. Further, the Settlement
Administrator shall make advertisements on the internet directed to Class Members in form
and content mutually acceptable to Class Counsel and Defendants as agreed upon in the
Settlement.

(e)     The Settlement Administrator shall establish a toll-free interactive
voice response ("IVR") phone number with script recordings of information about this
Settlement, including information about the Claim Form, utilizing the relevant portions of
the language contained in the Notice and Claim Form. The phone number shall remain
open and accessible through the last day for Settlement Class Members to submit a Claim.
The Settlement Administrator shall make reasonable provision for Class Counsel to be
promptly advised of recorded messages left on the phone number by Settlement Class
Members concerning the Action and/or this Settlement, so that Class Counsel may timely
and accurately respond to such inquiries; *provided however*, the Administrator shall review
the recorded messages before providing them to Class Counsel, and if one or more of the
messages requests a blank Claim Form or other similar administrative assistance only, then
the Administrator shall handle such administrative request(s), but the Administrator shall
provide all other messages to Class Counsel for any further response to the Settlement
Class Member. If any submitted Claim Forms are deemed invalid for any reason (*e.g.*,
because they are defective or incomplete in any way), the Administrator shall promptly
advise Class Counsel on a weekly basis so that Class Counsel may follow-up with the Class
Member who submitted such Claim Form in order to cure any deficiency. The Settlement

Administrator shall send a notice to claimants submitting deficient claims identifying the deficiency. Any defective Claim Form may be cured and shall be accepted by the Administrator so long as the defect is resolved within 30 days after Claim Deadline.

(f)     No later than 10 days prior to the Final Approval Hearing, Class Counsel shall obtain from the Settlement Administrator and shall file with the Court a proof of mailing of the Mail Notice and of establishing of the Settlement Website.

(g)     Defendants shall comply with the obligation to give notice under the Class Action Fairness Act, 28 U.S.C. § 1715, in connection with the proposed settlement. No later than 10 calendar days before the Final Fairness Hearing, counsel for Defendants shall file with the Court one or more declarations stating that Defendants have complied with their notice obligations under 28 U.S.C. § 1715.

10.     **Administrators**. The Court authorizes and directs Defendants to retain one or more Administrators to implement the terms of the Settlement Agreement, and authorizes and directs such Administrators to (i) mail the Mail Notice, (ii) establish the IVR phone line system, (iii) initiate the Internet advertising campaign, (iv) establish the Settlement Website, (v) receive and process settlement claims, and (vi) carry out such other responsibilities as are provided for in the Settlement Agreement or may be agreed to by the Parties in the Action.

11.     **Exclusion from the Settlement Class.** Any Settlement Class Member who wishes to be excluded from the Class must send a written Request for Exclusion to the Settlement Administrator, by first-class mail, postage prepaid, to the address provided in the Mail Notice and Settlement Website. Any such Request for Exclusion must be postmarked no later than thirty (30) days before the Final Approval Hearing.

(a)     To be valid, the Request for Exclusion must:  (a) identify the case name and number; (b) identify the name and address of the Settlement Class Member; (c) be personally signed by the Settlement Class Member requesting exclusion; and (d) contain a statement that indicates a desire to be excluded from the Settlement Class in the Gray Litigation, such as "I hereby request that I be excluded from the proposed Settlement Class in the Gray Class Action."  Mass or class opt outs shall not be allowed.

(b)     A Settlement Class Member who desires to opt out must take timely affirmative written action pursuant to this Order and the Settlement Agreement, even if the Settlement Class Member desiring to opt out of the Class (a) files or has filed a separate action against any of the Released Parties, or (b) is, or becomes, a putative class member in any other class action filed against any of the Released Parties.

(c)     Except for those Settlement Class Members who timely and properly file a request for exclusion, all other Settlement Class Members will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon the Final Settlement Date, will be bound by its terms, including, but not limited to, the Releases in Section 10 of the Settlement Agreement.

(d)     If the number of Settlement Class Members who properly and timely exercise their right to opt out of the Settlement Class exceeds five percent (5%) of the total number of Settlement Class Members, the Settling Parties stipulate and agree that Defendants shall have the right to terminate this Agreement without penalty or sanction.

(e)     If the proposed settlement is approved, any Settlement Class Member who has not submitted a timely, written Request for Exclusion from the Class shall be bound by all subsequent proceedings, orders, and judgments in this Action, even

if he or she has pending, or subsequently initiates, litigation against Defendants relating to any of the Released Claims.

12.     **Objections and Appearances**.  Any Settlement Class Member who has not filed a timely written Request for Exclusion and who complies with the requirements of this Paragraph may object to any aspect of the proposed settlement either on his or her own or through an attorney hired at his or her expense.   Any Settlement Class Member who wishes to object to the Settlement Agreement must do so in writing and must file with the Clerk of Court and serve on Class Counsel and Defendants' Counsel, at the addresses listed below, a written statement of objection in accordance with the requirements set forth below and in the Settlement Agreement no later than thirty (30) days before the Final Approval Hearing:

<u>**For Plaintiff and Settlement Class**</u>
Roosevelt N. Nesmith
Law Office of Roosevelt N. Nesmith, LLC
363 Bloomfield Avenue, Ste. 2C
Montclair, NJ  07042
Telephone: (973) 259-6990
Facsimile: (866) 848-1368

<u>**For CIT Bank**</u>

Louis Smith
Greenberg Traurig LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone: (973) 360-7915
Facsimile: (973) 295-1256

<u>**For QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc., and MIC General Insurance Corporation**</u>
Robyn Quattrone
Mitchell Sandler LLC
1120 20th Street, NW, Suite 725
Washington DC 20026
Telephone: (202) 886-5260

10

(a)     The requirements to assert a valid written objection shall be set forth in the Class Notice and on the Settlement Website, and shall include:  (a) the case name and number; (b) the name, address, telephone number of the Person objecting and, if represented by counsel, of his/her counsel; (c) the basis for the objection; and (d) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel;

(b)     Any Settlement Class Member who fails to object to the Settlement in the manner described in the Class Notice and consistent with this Section shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means;

(c)     Any Settlement Class Member who submits a timely written objection may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement Agreement should not be approved as fair, adequate, and reasonable, provided that the objecting Settlement Class Member:  (a) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing ("Notice of Intention to Appear"), which must include the case name and number and the Settlement Class Member's name, address, telephone number, and signature, by the Objection Deadline; and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline.  The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval

Hearing.  Any attorney who intends to represent an objecting Settlement Class Member at the Final Approval Hearing must do so at the Settlement Class Member's expense and must file a notice of appearance at least two weeks before the Final Approval Hearing.  Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Agreement and Class Notice will not be entitled to appear at the Final Approval Hearing to raise any objections.

13.    **Releases.**  If the Settlement is finally approved, all Settlement Class Members who have not filed a timely and proper Request for Exclusion shall release the Released Parties from all Released Claims, which, as described in Section 10 of the Settlement Agreement, include, *inter alia,* any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorneys' fees and costs, liens, judgments, and demands of any kind whatsoever that each member of the Settlement Class may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in this Action that relate, concern, arise from, or pertain in any way to the Released Parties' conduct, policies, or practices concerning the placement, issuance, or facilitation of LPI Policies or to the receipt or disclosure or nondisclosure of charges related to the advancing of LPI premiums during the Settlement Class Period, including but not limited to conduct,

policies or practices concerning LPI Policies or to charges for the placement of LPI Policies during the Settlement Class Period.

14.   **Attorneys' Fees and Expenses, and Case Contribution Awards**.

Plaintiffs and Settlement Class Counsel agree not to seek an award of Attorneys' Fees and Expenses in the Action in an amount exceeding $1,562,559.  Settlement Class Counsel shall apply for Case Contribution Awards not to exceed $30,000 collectively for the Named Plaintiffs for their work and assistance in this Action.

15.   **Preliminary Injunction.**  All Settlement Class Members who do not timely exclude themselves from the Settlement Class are hereby preliminarily enjoined from directly or indirectly (i) filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit in any jurisdiction for the Released Claims; or (ii) organizing any Settlement Class Members into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the Released Claims.

16.   **Service of Papers.**  Defendants' Counsel and Class Counsel shall serve on each other and on all other parties who have filed notices of appearance, at or before the Final Approval Hearing, any further documents in support of the proposed Settlement, including responses to any papers filed by Settlement Class Members. Defendants' Counsel and Class Counsel shall promptly furnish to each other any and all objections or written requests for exclusion that may come into their possession and

shall file such objections or requests for exclusion with the Court on or before the date of the Final Approval Hearing.

17.     **Termination of Settlement.** This Order shall become null and void, and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if (i) the proposed Settlement is not finally approved by the Court, or does not become Final, pursuant to the terms of the Settlement Agreement; or (ii) the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement for any reason.  In such event, and except as provided therein, the proposed Settlement and Settlement Agreement shall become null and void and be of no further force and effect; the preliminary certification of the Settlement Class for settlement purposes shall be automatically vacated; neither the Settlement Agreement nor the Court's Orders, including this Order, shall be used or referred to for any purpose whatsoever; and the Parties shall retain, without prejudice, any and all objections, arguments, and defenses with respect to class certification.

18.     **Use of Order Following Termination of Settlement**.  This Order shall be of no force and effect if the Settlement does not become final and shall not be construed or used as an admission, concession, or declaration by or against any Defendant of any fault, wrongdoing, breach, or liability, or by or against Plaintiff or the Settlement Class Members that their claims lack merit or that the relief requested in the Class Complaint in this Action is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses they may have.

19.     **Necessary Steps**.  The Court authorizes the Parties to take all necessary and appropriate steps to implement the Settlement Agreement.

DONE and ORDERED in Chambers in Camden, New Jersey, this _____ day of _____, 2019.

_____
RENEE MARIE BUMB
UNITED STATES DISTRICT JUDGE

cc:  All Counsel of Record

# EXHIBIT F

<u>**EXHIBIT F**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MONICA GRAY, AS EXECUTRIX OF THE ESTATE OF EARL GRAY, JR. AND AS TRUSTEE OF THE INTEREST OF JASMINE GRAY-OLIVER, JUSTIN GRAY, AND JULIA WIECK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIT BANK, N.A., QBE INSURANCE CORPORATION, QBE FIRST INSURANCE AGENCY, INC., AND MIC GENERAL INSURANCE CORPORATION,<br><br>Defendants. | **CASE NO. 1:18-cv-01520-RMB-AMD** |

**[PROPOSED] ORDER GRANTING FINAL APPROVAL TO**
<u>**CLASS ACTION SETTLEMENT**</u>

On _____, 2019, this Court granted preliminary approval to the proposed class

action settlement set forth in the Stipulation and Settlement Agreement (the "Settlement

Agreement") between Plaintiffs Monica Gray, as executrix of the Estate of Earl Gray, Jr., and as

trustee of the interests of Jasmine Gray Oliver, Justin Gray, (collectively "the Gray Plaintiffs"),

Julia Wieck ('Wieck," and collectively with the Gray Plaintiffs, "Named Plaintiffs"), CIT Bank,

N.A. ("CIT Bank"), QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS

Insurance Services, Inc. (collectively with QBE Insurance Corporation, "QBE Insurance") and

MIC General Insurance Corporation ("MIC General," and collectively with CIT Bank and QBE

Insurance, "Defendants").   The Court also provisionally certified the Settlement Class for

settlement purposes, approved the procedure for giving Class Notice to the members of the Settlement Class, and set a final approval hearing to take place on _____.  The Court finds that the Class Notice substantially in the form approved by the Court in its preliminary approval order was given in the manner ordered by the Court, constitutes the best practicable notice, and was fair, reasonable, and adequate.

On _____, the Court held a duly noticed final approval hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable and adequate; (2) whether a judgment should be entered dismissing the Named Plaintiffs' amended complaint on the merits and with prejudice in favor of the Defendants and against all persons or entities who are Settlement Class Members herein who have not requested exclusion from the Settlement Class; and (3) whether and in what amount to award Attorneys' Fees and Expenses to Class Counsel for the Settlement Class and whether and in what amount to award a Case Contribution Award to the Named Plaintiffs.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The Court has personal jurisdiction over the parties and the Settlement Class Members, venue is proper, the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, and to enter this Final Order.

2.     The Settlement Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation (the "Gray Litigation" or the "Action") and of the strengths and weaknesses of their respective positions.  Further, settlement occurred only after the parties negotiated over a period of many weeks.  Counsel for the Parties were therefore well positioned to evaluate the benefits of the Settlement Agreement, taking into

account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

3.      The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b) have been satisfied for settlement purposes for each Settlement Class Member in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Named Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Named Plaintiffs have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action settlement is superior to the other available methods for the fair and efficient adjudication of the controversy.

4.      Pursuant to Fed. R. Civ. P. 23, this Court hereby finally certifies the Settlement Class, as identified in the Settlement Agreement, which shall consist of the following:

The "Settlement Class" shall include all Borrowers[1] in the United States who, during the Settlement Class Period (February 2, 2012 through July 31, 2018), were charged by

---

[1] "Borrower(s)" means (1) the person or persons who signed a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom and secured by residential property; and (2) property owners who were devised property secured by a reverse mortgage serviced by Financial Freedom where the devisor's reverse mortgage account was charged for an LPI Policy by Financial Freedom after the property had been devised to the property owner.

Financial Freedom[2] a Net Premium[3] for an LPI Policy[4] issued during the Settlement Class Period.

Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of Defendants or any of their respective Affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or the borrower's escrow account; (iv) borrowers whose indebtedness on the residential property securing the reverse mortgage loan serviced by Financial Freedom has been compromised or discharged in bankruptcy or otherwise; and (v) all borrowers who file a timely and proper request to be excluded from the Settlement Class.

The Settlement Class Period shall be comprised of two periods: "Settlement Class Period One" shall commence on February 2, 2012 and shall continue through May 7, 2013; and "Settlement Class Period Two" shall commence on May 8, 2013 and continue through July 31, 2018.

5.      The Court finally appoints the law firms of Law Office of Roosevelt N. Nesmith, LLC and Giskan, Solotaroff & Anderson, LLP as Class Counsel for the Settlement Class.

6.      The Court finally designates Named Plaintiffs Monica Gray, Jasmine Gray Oliver, Justin Gray, and Julia Wieck as the Class Representatives.

7.      The Court makes the following findings on notice to the Settlement Class:

---

[2] "Financial Freedom" means Financial Freedom, a division of OneWest Bank, FSB, which later was known as Financial Freedom, a division of OneWest Bank; N.A., and later was known as Financial Freedom, a division of CIT Bank, until CIT Bank sold the Financial Freedom reverse mortgage servicing business.

[3] "Net Premium" means the amount of premium charged to a Settlement Class Member during the Settlement Class Period for an LPI Policy that was not cancelled, less any refund paid or credited to the Settlement Class Member.

[4] "LPI Policy" means a lender-placed residential hazard and/or wind-only insurance policy issued by, subscribed by, or procured or obtained through the Insurance Entities and placed during the Settlement Class Period pursuant to a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom to cover a Borrower's failure to maintain the required insurance coverage on the residential property securing the reverse mortgage loan.

(a)     The Court finds that the distribution of the Mail Notice, Internet advertising, the creation of the IVR toll-free telephone number system, and creation of the Internet site, all as provided for in the Settlement Agreement and Preliminary Approval Order, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.  The Parties have complied with their notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715, in connection with the proposed settlement.

(b)     The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Order (i) constitute the most effective and practicable notice of the Final Order, the relief available to Settlement Class Members pursuant to the Final Order, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.

8.     The Settlement Agreement is finally approved as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e).  The terms and provisions of the Settlement Agreement, including all exhibits thereto, have been entered into in good faith and are hereby fully and finally approved

as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members.

9.      The Parties are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

10.      Pursuant to Fed. R. Civ. P. 23(h), the Court hereby awards Class Counsel for the Settlement Class Attorneys' Fees and Expenses in the amount of $_____ payable pursuant to the terms of the Settlement Agreement.  The Court also awards the following Case Contribution Awards to the Named Plaintiffs payable pursuant to the terms of the Settlement Agreement: (i) Monica Gray, Jasmine Gray-Oliver, and Justin Gray shall collectively receive the sum of $15,000; and (ii) Julia Wieck shall receive the sum of $15,000.

11.      The terms of the Settlement Agreement and of this Final Order, including all exhibits thereto, shall be forever binding in all pending and future lawsuits maintained by the Named Plaintiffs and all other Settlement Class Members, and their family members, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf.

12.      The Releases, which are set forth in Section 10 of the Settlement Agreement and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Final Order; and the Released Parties (as that term is defined below and in the Settlement Agreement) are forever released, relinquished, and discharged by the Releasing Parties (as that term is defined below and in the Settlement Agreement) from all Released Claims (as that term is defined below and in the Settlement Agreement).

(a)     Release and Waiver Definitions

(i)     CIT Bank means CIT Bank, N.A., and its predecessors and successors, and all of their parents, subsidiaries, Affiliates, and divisions, including Financial Freedom, and all of their predecessors and successors, parents, subsidiaries, Affiliates, and divisions (including internal units, such as its mortgage lending and servicing department).

(ii)    QBE Insurance means QBE Insurance Corporation and its predecessors and successors, and all of its Affiliates, including QBE FIRST insurance Agency, Inc., n/k/a NGLS Insurance Services, Inc., and Seattle Specialty Insurance Services, Inc., and all of their predecessors, successors, and Affiliates.

(iii)   MIC General means MIC General Insurance Corporation, and its predecessors and successors, and all its Affiliates, including NGLS Insurance Services, Inc. and Seattle Specialty Insurance Services, Inc.

(iv)    "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control or ownership with such entity.

(v)     "Defendants" means all named defendants in the Gray Litigation, including CIT Bank, QBE Insurance and MIC General.

(vi)    "Insurance Entities" means Balboa Insurance Company, QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc. and any of its Affiliates, MIC General Insurance Corporation, Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London, and Great Lakes Reinsurance (UK), PLC n/k/a Great Lakes Insurance SE.

(vii)   "Lender-Placed Insurance" means the placement of hazard and/or wind-only insurance pursuant to a reverse mortgage loan agreement, including a home equity

7

conversion mortgage, serviced by Financial Freedom to cover a borrower's failure to maintain the required insurance coverage on the residential property securing the loan.

(viii)   "LPI Policy" means means a lender-placed residential hazard and/or wind-only insurance policy issued by, subscribed by, or procured through or obtained from any of the Insurance Entities, and placed during the Settlement Class Period pursuant to a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom to cover a Borrower's failure to maintain the required insurance coverage on the residential property securing the reverse mortgage loan.

(ix)   "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Parties.

(x)   "Released Claims" means all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, demands, and any other forms of liability released pursuant to this Final Order and Judgment and Section 10 of the Settlement Agreement.

(xi)   "Released Parties" means, only with respect to Released Claims: (a) CIT Bank, CIT Group Inc., OneWest Bank, FSB, OneWest Bank, N.A., Financial Freedom Acquisition, LLC, Financial Freedom, IndyMac Financial Services, Inc., IndyMac Agency, Inc., the Insurance Entities, and each of their respective past, present, and future direct or indirect, Affiliates, parent companies, subsidiaries, divisions, predecessors, successors, assigns, investors, and all past or present officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of any such entities or persons; (b) any insurance carrier, broker, or agent from whom Defendants procured or obtained an LPI Policy, or that was a party to an agreement relating to an LPI Policy, insuring residential real property owned by any Settlement Class Member, to the extent

8

not included within subsection (a) above; and (c) any trustee of a mortgage securitization trust which included loans made to any Settlement Class Member, any owner, investor, and/or noteholder of the reverse mortgage loans CIT Bank or Financial Freedom serviced and upon whose secured properties LPI was placed for any Settlement Class member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

(xii)   "Releasing Persons" means Named Plaintiffs and all Settlement Class Members who do not properly and timely opt out of the Settlement, and their respective family members, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf.

(xiii)  "Settling Parties" means, collectively, Defendants, Named Plaintiffs, all Settlement Class Members, and all Releasing Persons.

(b)   <u>Released Claims of Settlement Class</u>.   Each member of the Settlement Class, and their family members, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf, shall, by operation of the Final Order, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Parties from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands

of any kind whatsoever that each member of the Settlement Class may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to the Released Parties' conduct, policies, or practices concerning the placement, issuance, or facilitation of LPI Policies or to the receipt or disclosure or nodisclosure of charges related to the advancing of LPI premiums during the Settlement Class Period, including but not limited to conduct, policies or practices concerning LPI Policies or to charges for the Placement of LPI Policies during the Settlement Class Period.  In agreeing to this Release, Named Plaintiffs explicitly acknowledge that unknown losses or claims could possibly exist and that any present losses may have been underestimated in amount or severity.

        (i)      The Release stated in Paragraph 12(b) above shall include, but not be limited to, all claims related to CIT Bank's or Financial Freedom's insurance requirements; the relationship, whether contractual or otherwise, between any of the Released Parties or their Affiliates, or any other insurance carriers, brokers, or agents from whom CIT Bank or Financial Freedom procured or obtained coverage insuring residential property owned by any Settlement Class Member, regarding LPI, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPI Policies placed or charged by CIT Bank or Financial Freedom; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed or charged by CIT Bank or

10

Financial Freedom; any alleged tortious interference by the Insurance Entities with reverse mortgage loans or home equity conversion mortgages serviced by CIT Bank or Financial Freedom; the receipt or disclosure or non-disclosure of any payments, expenses, fees, finance charges, or other charges, or features pertaining in any way to, in connection with, or under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by CIT Bank or Financial Freedom; the receipt or non-disclosure of any benefit under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by CIT Bank or Financial Freedom; the content, manner, or accuracy of any communications regarding the placement of any LPI Policies by CIT Bank or Financial Freedom; and to the regulatory approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by CIT Bank or Financial Freedom.  Each Settlement Class Member shall be considered, by operation of the Final Judgment, to have received full and final redress, including but not limited to any refund, reimbursement, restitution, or damages for the conduct covered by the release.

(ii)     The Release in Paragraph 12(b) above shall not cover claims arising after the close of the Settlement Class Period, nor insurance claims for casualty losses relating to properties insured under any LPI Policy placed or charged for by CIT Bank or Financial Freedom. Nothing in Paragraph 12(b) shall be deemed a release of any Settlement Class Member's respective rights and obligations under this Agreement.

(iii)    Except to the extent that any such obligation is being released pursuant to Paragraph 12(b) above, this Final Order shall not be deemed a release of Defendants from any existing obligation to any Settlement Class Member under any loan, note, mortgage, or deed of trust.  This provision is not meant to and does not limit the Releases in this Final Order or in the Settlement Agreement.

(c)     The Named Plaintiffs and Class Counsel further represent that there are no outstanding liens or claims against the *Gray* Litigation or *Wieck* Action, it being recognized that the Named Plaintiffs will solely be charged with the responsibility to satisfy any other liens or claims asserted against the *Gray* Litigation and the *Wieck* Action.

(d)     Without in any way limiting their scope, the Releases cover by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiffs and their counsel, or any Settlement Class Members in connection with or related in any manner to the *Gray* Litigation or the *Wieck* Action, the settlement of the *Gray* Litigation or the *Wieck* Action, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Settlement Agreement.

(e)     In connection with the foregoing Releases, the Named Plaintiffs and each Settlement Class Member expressly waive, and shall be deemed to have waived to the fullest extent permitted by law, any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

To the extent that anyone might argue that these principles of law are applicable—notwithstanding that the Settling Parties have chosen New Jersey law to govern the Settlement Agreement—the Named Plaintiffs hereby agree, and each Settlement Class Member will be deemed to agree, that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby

knowingly and voluntarily waived, relinquished, and released.  The Named Plaintiffs recognize, and each Settlement Class Member will be deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Order, they fully, finally, and forever settle and release any and all claims covered by the Releases.

(f)     The Releases were bargained for and are a material element of the Settlement Agreement.

(g)     The Releases do not affect the rights of Settlement Class Members who timely and properly submitted a Request for Exclusion from the Settlement in accordance with the requirements of the Preliminary Approval Order and in Section 11 of the Settlement Agreement.

(h)     The administration and consummation of the Settlement as embodied in the Settlement Agreement shall be under the authority of the Court.

(i)     The Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have properly requested exclusion (opted out), and the Released Parties shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s).

(j)     The Releases shall not preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.  The Releases set forth herein and in the Settlement Agreement are not intended to include the release of any rights or duties of the Settling Parties arising out of the Settlement Agreement, including the express warranties and covenants contained therein.

13.     Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred

to therein, nor this Final Order, nor any of its terms and provisions, nor the final judgment to be entered pursuant to this Final Order, nor any of its terms and provisions, shall be:

(a)     offered by any person or received against the Defendants as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by the Defendants of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Gray Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

(b)     offered by any person or received against the Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Defendants or any other wrongdoing by the Defendants;

(c)     offered by any person or received against the Defendants as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding;

(d)     offered or received in evidence in any action or proceeding against any Party hereto in any court, administrative agency, or other tribunal for any purpose whatsoever, other than to enforce or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto), including the Releases, or the Final Order, or the final judgment to be entered pursuant to this Final Order.

14.     This Final Order, the final judgment to be entered pursuant to this Final Order, and the Settlement Agreement (including the exhibits thereto) may be filed in any action against or

by any Released Party (as that term is defined herein and the Settlement Agreement) to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

15.    Without further order of the Court, the Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

16.    This Final Order, and the final judgment to be entered pursuant to this Final Order, shall be effective upon entry.  In the event that the Final Order and the final judgment to be entered pursuant to this Final Order are reversed or vacated pursuant to a direct appeal in this Action or the Settlement Agreement is terminated pursuant to its terms, all orders entered and releases delivered in connection herewith shall be null and void.

17.    A final judgment substantially in the form attached hereto as Exhibit F-1 will be entered forthwith.

DONE and ORDERED in Chambers in Camden, New Jersey, this _____ day of

_____, 2020.


_____

RENEE MARIE BUMB
UNITED STATES DISTRICT JUDGE

EXHIBIT F-1

**EXHIBIT F-1**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONICA GRAY, AS EXECUTRIX OF THE ESTATE OF EARL GRAY, JR. AND AS TRUSTEE OF THE INTEREST OF JASMINE GRAY-OLIVER, JUSTIN GRAY, AND JULIA WIECK, on behalf of themselves and all others similarly situated, | **CASE NO. 1:18-cv-01520-RMB-AMD** |

Plaintiffs,

v.

CIT BANK, N.A., QBE INSURANCE
CORPORATION, QBE FIRST INSURANCE
AGENCY, INC., AND
MIC GENERAL INSURANCE
CORPORATION,

Defendants.

## **FINAL JUDGMENT**

This action having settled pursuant to the Stipulation and Settlement Agreement (the "Settlement Agreement") and the Court having entered an Order Granting Final Approval to Class Action Settlement (the "Final Order"), IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.     This action, including all individual claims and class claims presented herein, is hereby dismissed on the merits and with prejudice against the Named Plaintiffs and all other Settlement Class Members, without fees (including attorneys' fees) or costs to any party except as otherwise provided in the Final Order.

a.      "Named Plaintiffs" means Monica Gray, as executrix of the Estate of Earl Gray, Jr., and as trustee of the interests of Jasmine Gray Oliver, Justin Gray, and Julia Wieck.

b.      The "Settlement Class" shall include all Borrowers[1] in the United States who, during the Settlement Class Period (February 2, 2012 through July 31, 2018), were charged by Financial Freedom[2] a Net Premium for an LPI Policy issued during the Settlement Class Period.

Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of Defendants or any of their respective Affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or the borrower's escrow account; (iv) borrowers whose indebtedness on the residential property securing the reverse mortgage loan serviced by Financial Freedom has been compromised or discharged in bankruptcy or otherwise; and (v) all borrowers who file a timely and proper request to be excluded from the Settlement Class.

c.      CIT Bank means CIT Bank, N.A., and its predecessors and successors, and all of their parents, subsidiaries, Affiliates, and divisions, including Financial Freedom, and all of their predecessors, successors, parents, subsidiaries, Affiliates, and divisions.

d.      QBE Insurance means QBE Insurance Corporation and its predecessors and successors, and all of its Affiliates, including QBE FIRST insurance Agency, Inc., n/k/a NGLS Insurance Services, Inc., and Seattle Specialty Insurance Services, Inc., and all of their predecessors, successors, and Affiliates.

---

[1] "Borrower(s)" means (1) the person or persons who signed a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom and secured by residential property; and (2) property owners who were devised property secured by a reverse mortgage serviced by Financial Freedom where the devisor's reverse mortgage account was charged for an LPI Policy by Financial Freedom after the property had been devised to the property owner.

[2] "Financial Freedom" means Financial Freedom, a division of OneWest Bank, FSB, which later was known as Financial Freedom, a division of OneWest Bank, N.A., and later was known as Financial Freedom, a division of CIT Bank, until CIT Bank sold the Financial Freedom reverse mortgage servicing business.

e.      MIC General means MIC General Insurance Corporation, and its predecessors and successors, and all its Affiliates, including NGLS Insurance Services, Inc. and Seattle Specialty Insurance Services, Inc.

f.      "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control or ownership with such entity.

g.      "Insurance Entities" means Balboa Insurance Company, QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc. and any of its Affiliates, MIC General Insurance Corporation, Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London, and Great Lakes Reinsurance (UK), PLC, n/k/a Great Lakes Insurance SE.

h.      "LPI Policy" means a lender-placed residential hazard and/or wind-only insurance policy or policies issued by, subscribed by, or procured or obtained through any of the Insurance Entities, and placed during the Settlement Class Period pursuant to a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom to cover a Borrower's failure to maintain the required insurance coverage on the residential property securing the reverse mortgage loan.

i.      "Net Premium" means the amount of premium charged to a Settlement Class Member during the Settlement Class Period for an LPI Policy that was not cancelled, less any refund paid or credited to the Settlement Class Member.

2.      Named Plaintiffs and all Settlement Class Members who did not timely exclude themselves from the Settlement Class, and their family members, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors,

attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf, have released the Released Claims as against the Released Parties, and are, from this day forward, hereby permanently barred and enjoined from directly or indirectly (i) filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit in any jurisdiction for the Released Claims; or (ii) organizing any Settlement Class Members into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this action and/or the Released Claims.

a.     "Released Claims" means any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each member of the Settlement Class may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to the Released Parties' conduct, policies, or practices concerning the placement, issuance, or facilitation of LPI Policies or to the receipt or disclosure or nondisclosure of charges related to the advancing of LPI premiums during the Settlement Class Period, including but not limited to conduct, policies or practices concerning LPI Policies or to charges for the placement of LPI Policies during the

Settlement Class Periods.  In agreeing to this Release, Named Plaintiffs explicitly acknowledge that unknown losses or claims could possibly exist and that any present losses may have been underestimated in amount or severity.

            b.     The Released Claims of both the Named Plaintiffs and the Settlement Class Members shall include, but not be limited to, all claims related to CIT Bank's or Financial Freedom's insurance requirements; the relationship, whether contractual or otherwise, between any of the Released Parties or their Affiliates, or any other insurance carriers, brokers, or agents from whom CIT Bank or Financial Freedom procured or obtained coverage insuring residential property owned by any Settlement Class Member, regarding LPI, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPI Policies placed or charged by CIT Bank or Financial Freedom; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed or charged by CIT Bank or Financial Freedom; any alleged tortious interference by the Insurance Entities with mortgage loans serviced by CIT Bank or Financial Freedom; the receipt or disclosure or non-disclosure of any and all payments, expenses, fees, finance charges, other charges, or features pertaining in any way to, in connection with, or under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by CIT Bank or Financial Freedom; the receipt or non-disclosure of any benefit under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by CIT Bank or Financial Freedom; the content, manner, or accuracy of any communications regarding the placement of any LPI Policies by CIT Bank or Financial Freedom; and the regulatory approval or non-approval of any LPI Policy, or the premium

thereon, placed or charged by CIT Bank or Financial Freedom. Each Settlement Class Member shall be considered, by operation of the Final Judgment, to have received full and final redress, including but not limited to any refund, reimbursement restitution, or damages for the conduct covered by the release.

        c.    "Released Parties" means, only with respect to Released Claims: (a) CIT Bank, CIT Group Inc., OneWest Bank, FSB, OneWest Bank, N.A., Financial Freedom Acquisition, LLC, Financial Freedom, IndyMac Financial Services, IndyMac Agency, Inc., the Insurance Entities, and each of their respective past, present, and future, direct or indirect, Affiliates, parent companies, subsidiaries, divisions, predecessors, successors, assigns, investors, and all past or present officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of any such entities or persons; (b) any insurance carrier, broker, or agent from whom Defendants procured or obtained an LPI Policy, or that was a party to an agreement relating to an LPI Policy, insuring residential real property owned by any Settlement Class Member, to the extent not included within subsection (a) above; and (c) any trustee of a mortgage securitization trust which included loans made to any Settlement Class Member, any owner, investor, and/or noteholder of the reverse mortgage loans CIT Bank or Financial Freedom serviced and upon whose secured properties LPI was placed for any Settlement Class member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

        3.    Notwithstanding the dismissal of this entire action, the Court shall retain jurisdiction over the construction, interpretation, consummation, implementation, and enforcement of the Settlement Agreement, including jurisdiction to enter such further orders as may be necessary or appropriate.

4.      Within ten (10) days, Settlement Class Members shall dismiss with prejudice all claims, actions, or proceedings that have been brought by any Settlement Class Member in any jurisdiction and that have been released pursuant to the Settlement Agreement and Final Order and enjoined pursuant to this judgment.

DONE and ORDERED in Chambers in Camden, New Jersey, this _____ day of _____, 2020

_____
RENEE MARIE BUMB
UNITED STATES DISTRICT JUDGE