Roosevelt N. Nesmith, Esq. (008271997)
**LAW OFFICE OF ROOSEVELT N. NESMITH, LLC**
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Telephone: (973) 259-6990
Fax: (866) 848-1368
Email: *roosevelt@nesmithlaw.com*
*Attorneys for Plaintiffs and the Putative Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONICA GRAY, AS EXECUTRIX OF THE ESTATE OF EARL GRAY, JR. AND AS TRUSTEE OF THE INTEREST OF JASMINE GRAY-OLIVER, JUSTIN GRAY, and JULIA WIECK, on behalf of themselves and all others similarly situated, | **CASE NO. 1:18-cv-01520-RMB-AMD** |
| Plaintiffs, | |
| v. | |
| CIT BANK, N.A., QBE INSURANCE CORPORATION, QBE FIRST INSURANCE AGENCY, INC., AND MIC GENERAL INSURANCE CORPORATION, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
## OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 4

    A.   Defendants' LPI Practices ........................................................................ 4

    B.   The Litigation ........................................................................................... 4

    C.   The Settlement Terms and Agreement ..................................................... 8

        1.   The Proposed Settlement Class ..................................................... 8

        2.   Monetary Relief ............................................................................ 8

        3.   Release of Claims Against Defendants ......................................... 9

        4.   Class Notice Plan .......................................................................... 9

        5.   Claims Process ............................................................................ 10

        6.   Opt-Out Rights ............................................................................ 11

        7.   Class Counsel Fees and Expenses and Named Plaintiffs' Service Awards ........................................................................................ 11

        8.   Objections and Settlement Approval .......................................... 11

        9.   Proposed Schedule Following Preliminary Approval................. 12

III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............... 13

    A.   The Standards and Procedures for Granting Preliminary Approval .................... 13

    B.   There is a Strong Basis to Conclude That the Settlement is Fair, Reasonable and Adequate ...................................................................... 14

        1.   Plaintiffs' Claims Were Thoroughly Investigated Through Discovery .................................................................................... 14

        2.   The Settlement Has No Deficiencies ......................................... 15

        3.   The Settlement Negotiations Occurred at Arm's Length with an Experienced Mediator and Counsel ........................................... 18

**<u>TABLE OF CONTENTS</u>** (continued)

Page

IV.   THE COURT SHOULD CERTIFY THE PROPOSED CLASS  FOR
SETTLEMENT PURPOSES .................................................................................. 19

    A.    Rule 23(a) Requirements Are Satisfied ................................................. 20

        1.    Rule 23(a)(1) – "Numerosity" ................................................. 21

        2.    Rule 23(a)(2) – "Commonality" .............................................. 21

        3.    Rule 23(a)(3) – "Typicality" .................................................... 22

        4.    Rule 23(a)(4) – "Adequacy" .................................................... 23

    B.    The Proposed Settlement Class Should Be Certified Under Rule 23(b)(3) .......... 24

    C.    Proposed Class Counsel Satisfy Rule 23(g) ......................................... 25

V.   THE FORM AND MANNER OF NOTICE ARE PROPER .......................................... 26

VI.   CONCLUSION .................................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Almanzar v. Select Portfolio Servicing, Inc.*,
No. 14-cv-22586 (S.D. Fl. July 11, 2014) ......................................................... 3, 24

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......................................................................................... 19, 24

*Bernhard v. T.D. Bank, N.A.*,
No. 08-cv-4392, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) ........................... 19

*Bowles v. Fay Servicing*,
16-cv-02714 (D.N.J. May 12, 2016) .......................................................................... 2

*Braynen v. NationStar Mortgage, LLC*,
No. 14-cv-20726, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) .............................. 16

*Casey v. CitiMortgage, Inc.*,
No. 5:12-cv-820, Dkt. No. 234 (N.D.N.Y. Oct. 1, 2014) ....................................... 16

*Diaz v. HSBC USA, N.A.*,
No. 13-cv-21104, 2014 WL 5488161 (S.D. Fla. Oct. 29, 2014) ........................ 16, 20

*DiGiacomo v. Statebridge, Inc.*,
14-cv-06694 (D.N.J. Oct. 27, 2015) ........................................................................ 2

*Edwards v. Seterus, Inc.*,
15-cv-23107 (S.D. Fla. April 14, 2017) ................................................................. 23

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ................................................................................... 13

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ................................................................................... 14

*Gooden v. SunTrust Mortg.*,
No. 11-cv-2595, 2013 WL 6499250 (E.D. Cal. Dec. 11, 2013) ............................. 20

*Gordon v. Chase Home Fin., LLC*,
No. 11-cv-2001, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013) ................................. 20

*Gustafson v. BAC Home Loans Servicing, LP*,
294 F.R.D. 529 (C.D. Cal. 2013) ........................................................................... 20

*Hall v. Bank of America, N.A.*,
No. 12-cv-22700 (S.D. Fl. July 24, 2012) ...................................................... 2, 16, 20

**TABLE OF AUTHORITIES** (continued)

Page

*Hamilton v. SunTrust Mortg. Inc.*,
No. 13-cv-60749, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) ...................................... 16, 20

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
263 F.R.D. 226 (E.D. Pa. 2009) ............................................................................... 17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ..................................................................................... 13

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) .................................................................................... 18

*In re Merck & Co., Inc., Vytorin/Zetia Sec. Litig.*,
No. 08-cv-2177, 2012 WL 4482041, at *4 (D.N.J. Sept. 25, 2012) ......................................... 22

*In re Nat'l Football league Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) .................................................................................... 27

*In re Ocean Power Techs, Inc.*,
No. 3;14-cv-3799, 2016 WL 6778218, at *9 (D.N.J. Nov. 15, 2016) ....................................... 26

*In re PHH Lender Placed Insurance Litigation*,
1:12-cv-01117-NLH-KMW (D.N.J July 27, 2017) ................................................................ 16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ................................................................................. 21, 24

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) .................................................................................... 14

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ................................................................................. 22, 23

*In re Schering-Plough Corp. Sec. Litig.*,
No. 01-cv-0829, 2009 WL 5218066, at *3 (D.N.J. Dec. 31, 2009)......................................... 19

*In re Warfarin Sodium Antitrust Litig.*,
3931 F.3d 516 (3d Cir. 2004) (quotation omitted) ................................................................. 21

*Lee v. Ocwen Loan Servicing LLC*,
No. 14-cv-60649, (S.D. Fl. March 14, 2014)............................................................. 3, 16, 23

*Lenahan v. Sears, Roebuck & Co.*,
No. 02-cv-0045, 2006 WL 2085282, at *12 (D.N.J. July 24, 2006) ....................................... 13

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) .................................................................................... 21

*Martinez-Santiago v. Public Storage*,
312 F.R.D. 380 (D.N.J. 2015).................................................................................... 21

**TABLE OF AUTHORITIES** (continued)

*Milliron v. T-Mobile USA, Inc.*,
  No. 08-cv-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ........................................ 19

*Montoya v. PNC Bank, N.A.*,
  Case No. 1:14-cv-20474 (S.D. Fl. Feb. 6, 2014) ................................................ 3, 23

*Moore v. Comcast Corp.*,
  No. 08-cv-773, 2011 WL 238821, at *6 (E.D. Pa. Jan. 24, 2011) ........................................... 17

*Quarashi v M&T Bank Corp., et al.*,
  Case No. 3:17-cv-06675 (BRM)(DEA) (D.N.J. June 24, 2019) ............................................ 16

*Rapp v. Green Tree Servicing, LLC*,
  302 F.R.D. 505 (D. Minn. 2014) ............................................. 20

*Rickert v. Caliber Home Loans, Inc.*,
  Case No. 3:17-cv-06677 (BRM)(DEA) (D.N.J. April 1, 2019) ............................................ 16

*Saccoccio v. JPMorgan Chase Bank, N.A.*,
  297 F.R.D. 683 (S.D. Fla. 2014) ............................................. 17, 20

*Santos v. Carrington Mortgage Services*,
  15-cv-00864 (D.N.J. Feb. 4, 2015) ............................................. 2, 16

*Sheinberg v. Sorensen*,
  606 F.3d 130, 132 (3d Cir. 2010) ............................................. 23

*Skeen v. BMW of N. Am., LLC*,
  No. 2:13-cv-1351, 2016 WL 70817, at *7 (D.N.J. Jan. 6, 2016)........................................... 26

*Smith v. Prof'l Billing & Mgmt. Servs., Inc.*,
  No. 06-cv-4453, 2007 WL 419749, at *1 (D.N.J. Nov. 21, 2007) ........................................... 13

*Smith v. Specialized Loan Servicing, LLC, et al.*,
  Case No. 3:17-cv-06668 (BRM) (DEA) (D.N.J. April 1, 2019) ............................................ 16

*Soler v. IndyMac Mortgage*,
  No. 14-cv-22541 (S.D. Fl. July 9, 2014) ............................................. 3

*Strickland v. Carrington Mortgage Services*, et al.,
  16-cv-25237(S.D. Fl. Dec. 18. 2016) ............................................. 2

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2015) ............................................. 21

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005)........................................... 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011)........................................... 21

## TABLE OF AUTHORITIES (continued)

Page

*Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551 ................................................................ 21

*Wilson, et al. v. EverBank, et al.*,
   No. 1:14-cv-22264 (S.D. Fl. June 8, 2014) ....................................................... 3, 24

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*,
   758 F.2d 86, 90 (3d Cir. 1985) ............................................................................ 27

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 5, 6

Fed. R. Civ. P. 23(3) ..................................................................................................... 13

Fed. R. Civ. P. 23(a) ................................................................................ 20, 21, 23, 24

Fed. R. Civ. P. 23(a)(1) ............................................................................................... 21

Fed. R. Civ. P. 23(a)(2) ............................................................................................... 21

Fed. R. Civ. P. 23(a)(3) ............................................................................................... 22

Fed. R. Civ. P. 23(a)(4) .......................................................................................... 23, 25

Fed. R. Civ. P. 23(b) ................................................................................................... 20

Fed. R. Civ. P. 23(b)(3) ............................................................................................... 24

Fed. R. Civ. P. 23(c)(2) ............................................................................................... 26

Fed. R. Civ. P. 23(e) ............................................................................................... 13, 26

Fed. R. Civ. P. 23(e)(1) ............................................................................................... 26

Fed. R. Civ. P. 23(g) ....................................................................................... 23, 25, 26

Fed. R. Civ. P. 23(g)(1)(A) ......................................................................................... 25

Fed. R. Civ. P. 23(h) ................................................................................................... 27

## I.   <u>INTRODUCTION</u>

Plaintiffs Monica Gray, as Executrix of the Estate of Earl Gray, Jr. and as Trustee of the Interest of Jasmine Gray-Oliver, ("Monica Gray"), Justin Gray (together, "the Gray Plaintiffs"), and Julia Wieck ("Wieck" and collectively with the Gray Plaintiffs, "Plaintiffs") on behalf of themselves and all Settlement Class Members by and through their counsel, respectfully move the Court for preliminary approval of the proposed class action settlement ("Settlement") set forth in the Stipulation and Settlement Agreement ("Settlement Agreement" or "SA"), attached hereto as Exhibit 1.

Plaintiffs move the Court for preliminary approval of the Settlement with the consent of Defendants CIT Bank, N.A. ("CIT Bank"), QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc. (collectively with QBE Insurance Corporation, "QBE Insurance") and MIC General Insurance Corporation ("MIC General," and collectively with CIT Bank and QBE Insurance, "Defendants").

Plaintiffs request that the Court enter an Order that would:

1)      grant preliminary approval of the proposed Settlement;

2)      preliminarily certify, for settlement purposes only, and pursuant to the terms of the Settlement Agreement, the proposed Settlement Class for the purposes of providing notice to the members of the proposed Settlement Class;

3)      approve the form and content of, and direct the distribution of the proposed Class Notice and accompanying Claim Form Instructions and Claim Form, annexed to the Settlement Agreement as Exhibits A and B;

4)      authorize and direct Defendants to retain one or more Settlement Administrator(s) to implement the terms of the Settlement Agreement;

5)       appoint the law firms of Law Office of Roosevelt N. Nesmith, LLC and Giskan, Solotaroff and Anderson LLP, as Class Counsel for the Settlement Class; and

6)       schedule a date for the Final Approval Hearing not earlier than one hundred twenty (120) days after the Court grants Preliminary Approval.

Class Counsel are pleased to present this Settlement which will make more than $8.5 million in monetary relief available to Settlement Class Members who submit timely and valid claims.  This Settlement results from Plaintiffs' class action lawsuit captioned, *Monica Gray, as executrix of the Estate of Earl Gray, Jr., and trustee of the interests of Jasmine Gray Oliver and Justin Gray v. CIT Bank, N.A., et al.,* 18-cv-01520-RMB-AMD in the United States District Court for the District of New Jersey (the "*Gray* Litigation" or the "Litigation") [ECF 1],  and also resolves an overlapping putative class action, *Wieck v. CIT Bank, N.A., Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London, and Great Lakes Reinsurance (UK), PLC,* in the federal district court for the District of Hawaii, Case. No. 1:16-cv-00596 JMS-WRP, on November 4, 2016 (the "*Wieck* Action").  Both the *Gray* Litigation and the *Wieck* Action concern lender placed insurance or "LPI" placed on the property of borrowers whose reverse mortgages were serviced by Financial Freedom, a former division of CIT Bank.

Class Counsel has significant experience litigating class actions concerning LPI business practices and has represented plaintiffs in numerous putative class actions brought in the United States District Courts for the District of New Jersey and the Southern District of Florida, including *DiGiacomo v. Statebridge, Inc*., 14-cv-06694 (D.N.J. Oct. 27, 2015); *Bowles v. Fay Servicing*, 16-cv-02714 (D.N.J. May 12, 2016); *Santos v. Carrington Mortgage Services*, 15-cv-00864 (D.N.J. Feb. 4, 2015); *Strickland v. Carrington Mortgage Services*, et al., 16-cv-25237(S.D. Fl.  Dec. 18. 2016); *Hall v. Bank of America, N.A.*, No. 12-cv-22700 (S.D. Fl. July 24, 2012); *Lee v. Ocwen*

2

*Loan Servicing LLC*, No. 14-cv-60649, (S.D. Fl. March 14, 2014); *Montoya v. PNC Bank, N.A.*, Case No. 1:14-cv-20474 (S.D. Fl. Feb. 6, 2014); *Soler v. IndyMac Mortgage*, No. 14-cv-22541 (S.D. Fl. July 9, 2014); *Almanzar v. Select Portfolio Servicing, Inc*., No. 14-cv-22586 (S.D. Fl. July 11, 2014); and *Wilson, et al. v. EverBank, et al.,* No. 1:14-cv-22264 (S.D. Fl. June 8, 2014). Based on this experience, Class Counsel believes that the *Gray* Litigation has significant merit and that the evidence developed supports Plaintiffs' claims. Class Counsel recognizes and acknowledges, however, that prosecuting the *Gray* Litigation through fact and expert discovery, class certification, dispositive motions, trial, and appeals will involve considerable uncertainty, time, and expense.

After extensive consideration, discovery, and analysis of the factual and legal issues presented in both the present Litigation and the *Wieck* Action, as well as the arms-length negotiations between the parties and their counsel under the direction of an experienced Mediator, Jonathan Marks, Class Counsel has reached the conclusion that the substantial benefits the Settlement Class Members will receive as a result of this Settlement are not just fair and reasonable, but are an excellent recovery, especially in light of the risks of continued litigation.

The Settlement will provide monetary relief to reverse mortgage borrowers nationwide whom the Defendants "force placed" hazard and wind insurance on their properties. Under the Settlement Agreement, Defendants will issue checks to Settlement Class Members who submit a timely and valid claim in an amount equal to 10% of the Net Premium for an LPI Policy placed on their property between February 2, 2012 and May 7, 2013, and 6% of the Net Premium for an LPI Policy placed on their property between May 8, 2013 to July 31, 2018. SA 4.7.1- 4.7.2

The Settlement is a fair and reasonable resolution of the *Gray* Litigation and the *Wieck* Action and satisfies all of the prerequisites for preliminary approval and certification of the

3

Settlement Class. For these reasons, and those more fully articulated below, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order.

## II.    FACTUAL BACKGROUND

### A.    Defendants' LPI Practices

The standard form agreements for reverse mortgages serviced by Financial Freedom, a former division of CIT Bank, require the borrowers to maintain insurance on their properties securing their mortgage loans, and provide that the lender or servicer may obtain new coverage on the properties at the borrowers' expense in the event of a lapse in coverage.  The mortgage agreement authorizes the lender to obtain coverage to protect itself against risk of loss and advises the borrower that the cost of the coverage might significantly exceed that of the borrower's voluntary coverage.

Plaintiffs allege that for years mortgage servicers and insurance providers colluded to illicitly profit at the expense of homeowners by improperly passing onto them various charges, expenses and/or other forms of kickbacks exchanged between the LPI providers and the mortgage servicers.  Plaintiffs further allege that this purported collusion allegedly reaped millions of dollars of unlawful profits for the servicers and LPI providers from some of the most vulnerable members of the housing market:  elderly borrowers on fixed incomes with reverse mortgages.

### B.    The Litigation

Class counsel began investigating and litigating LPI related class claims against CIT Bank and affiliates of QBE Insurance more than a year prior to the filing of the complaint commencing this action in February 2018.  SA 1.1.  Indeed, Class counsel commenced the substantially similar *Wieck* Action in the federal district court for the District of Hawaii on

November 4, 2016. *Id.* Plaintiff Wieck alleged CIT Bank and the other *Wieck* Defendants had engaged in a lender-placed insurance scheme involving the imposition of windstorm property insurance coverage on her and similarly situated reverse mortgage borrowers' homes. *Id.*

There was extensive motion practice in the *Wieck* Action before the District of Hawaii. The *Wieck* Defendants moved to dismiss Plaintiff Wieck's First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) on May 17, 2017, which Wieck opposed. SA 1.2 The motions were argued on September 11, 2017. *Id.* The parties submitted supplemental briefing on the motions in September 2017, October 2017 and March 2018. *Id.* The Court entered an Order on March 30, 2018, which denied the *Wieck* Defendants' Rule 12(b)(1) motion and granted in part and denied in part their Rule 12(b)(6) motions. *Id.* In response to the Court's Order upholding certain of Wieck's claims, Wieck filed her Second Amended Complaint on May 11, 2018. SA 1.3 A second round of motion practice ensued. *Id.* The Court entered an Order which granted in part and denied in part the *Wieck* Defendants' motions on November 2, 2018. *Id.* The *Wieck* Defendants filed their Answers to Wieck's Second Amended Complaint on April 1, 2019. *Id.*

Discovery in *Wieck*, which had been stayed pending the *Wieck* Defendants' motions to dismiss the First Amended Complaint, moved forward after the court ruled on the motions on March 30, 2018. SA 1.4. On May 10, 2018, the court entered a Scheduling Order which incorporated the discovery plan agreed to by the parties. *Id.* As a result, the *Wieck* Defendants produced over 2,500 pages of documents in response to targeted discovery demands. *Id.* Plaintiff Wieck also produced hundreds of pages of documents in response to numerous written discovery requests propounded on her by Defendants and Class Counsel retained two experts who prepared extensive reports on behalf of Plaintiff Wieck and the putative class in April 2019. See Declaration of Catherine E. Anderson ("Anderson Decl."), submitted herewith as Exhibit 2, ¶ 5, and

Declaration of Roosevelt N. Nesmith ("Nesmith Decl."), submitted herewith as Exhibit 3, ¶ 5. Class Counsel also deposed a representative of CIT Bank on April 4, 2019 and a representative of QBE Insurance Affiliate, Seattle Specialty Insurance Services, Inc. on April 10, 2019 in the *Wieck* Action. *Id*.

The *Gray* Plaintiffs commenced this putative nationwide class action on February 2, 2018. [ECF 1]  The *Gray* Plaintiffs alleged a lender-placed insurance scheme between CIT Bank, QBE Insurance and MIC General involving their imposition of hazard LPI coverage on the *Gray* Plaintiffs' and similarly situated reverse mortgage borrowers' properties. *Id*.  In the *Gray* Litigation, Plaintiffs asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with a business relationship, and violations of the Racketeer Influenced and Corrupt Organization Act, among other claims. *Id*.

On May 25, 2018, in response to the Complaint, Defendants CIT Bank and QBE Insurance each filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. SA 1.7  The *Gray* Plaintiffs opposed the motions. *Id.* The Court issued an Order granting in part and denying in part Defendants' motions to dismiss. *Id.* The Court directed the *Gray* Plaintiffs to file an Amended Complaint within 45 days of the Order. *Id.* On September 24, 2018, the *Gray* Plaintiffs filed their First Amended Complaint. *Id.*

On October 15, 2018, Defendants filed Motions to Dismiss the First Amended Complaint. SA 1.8.  The *Gray* Plaintiffs opposed the motion. *Id*.  On December 27, 2018, the Court entered an order granting the QBE Insurance and MIC General Defendants' motion to dismiss Plaintiffs' tortious interference claim and denying the motion in all other respects. *Id*.  Defendants filed their Answers to the First Amended Complaint on January 24, 2019. *Id.*

Based upon the Complaint, the significant briefing in this case, and the briefing and discovery in the *Wieck* Action, and the knowledge and experience of counsel gained from the numerous other LPI actions in which they have represented parties, the Parties to the *Gray* Litigation agreed to engage in mediation.   SA 1.9.

On May 2, 2019, the Parties retained Jonathan Marks of Marks ADR as the mediator and entered into a mediation agreement.  SA 1.10.  An in-person mediation session was held in Washington, D.C. on May 29, 2019.  *Id.*  Thereafter, Mr. Marks conducted telephonic mediation sessions with each of the parties.  *Id.*   In the course of the mediation, the Defendants provided Plaintiffs and Class Counsel with additional information concerning CIT Bank's, QBE Insurance's and MIC General's LPI programs, including aggregate LPI premium information across the country for the hazard and windstorm programs.  SA 1.11.  The Parties made significant progress in the course of the mediation and ultimately a settlement in principle was reached.  SA 1.12.  The Settling Parties' Counsel signed a Settlement Outline that identified the material terms for this Settlement Agreement on August 15, 2019.  *Id.*

On October 25, 2019, the Plaintiffs filed a Second Amended Complaint in the *Gray* Litigation [ECF 89], adding Julia Wieck as a Named Plaintiff and defining the Class for Settlement purposes as follows:

> all Borrowers in the United States who, during the Settlement Class Period (February 2, 2012 through and including July 31, 2018 ), were charged by Financial Freedom a Net Premium for an LPI Policy issued during the Settlement Class Period.
>
> Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of Defendants or any of their respective Affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or the borrower's escrow account;

> (iv) borrowers whose indebtedness on the residential property securing the reverse mortgage loan serviced by Financial Freedom has been compromised or discharged in bankruptcy or otherwise; and (v) all borrowers who file a timely and proper request to be excluded from the Settlement Class.

Class Counsel has concluded that it is in the best interests of the Class as a whole that the claims asserted in the *Gray* Litigation be resolved on the terms and conditions set forth in this Agreement.  SA 1.15.  After extensive consideration and analysis of the factual and legal issues presented in the *Gray* Litigation and the *Wieck* Action, and extensive mediation sessions overseen by an neutral third party highly experienced in LPI class actions, Class Counsel has reached the conclusion that the substantial benefits the Settlement Class Members will receive as a result of this Settlement is an excellent result in light of the risks and uncertainties of continued litigation, the expense that would be necessary to prosecute the *Gray* Litigation and *Wieck* Action through trial and any appeals that might be taken, and the likelihood of success at trial.   See Anderson Decl., ¶ 12 and Nesmith Decl. ¶ 13.

### C.     The Settlement Terms and Agreement

### 1.     The Proposed Settlement Class

The Settlement Agreement makes relief available to "all Borrowers in the United States who, during the Settlement Class Period (February 2, 2012 through and including July 31, 2018), were charged by Financial Freedom a Net Premium for an LPI Policy issued during the Settlement Class Period."  (SA 3.1-3.2, Exhibit 1).

### 2.     Monetary Relief

The Settlement affords members of the Settlement Class significant monetary relief.  The monetary relief will compensate Settlement Class Members for a substantial part of the allegedly inflated portion of the amounts that they either paid or were charged for force-placed coverage. Settlement Class Members who were charged a Net Premium for an LPI Policy placed on their

property will receive an amount equal to 10% of the Net Premium on an LPI Policy issued between February 2, 2012 and May 7, 2013, and 6% of the Net Premium on the LPI Policy issued between May 8, 2013 and July 31, 2018, provided they submit timely and valid claims.  (SA 4.7.1 – 4.7.2).

3.  **Release of Claims Against Defendants**

As set forth in the Settlement Agreement, including in section 10, Settlement Class Members will release all claims arising out of the Litigation and the facts and circumstances that were or could have been alleged in the Litigation during the Settlement Class Period.

4.  **Class Notice Plan**

Settlement Class members will receive notice of the Settlement by first class mail at their last known mailing address in the forms attached to the Settlement Agreement as Exhibits A (claim form instructions), B (claim form), and D (notice of settlement), respectively, provided they are approved by the Court.  The notices will be mailed not less than ninety (90) days before the Final Approval and Fairness Hearing regarding the Settlement.  The mail notice will contain a provision directing Spanish-speaking Settlement Class Members to the settlement website which will include the relevant settlement information and copies of these documents in Spanish.  The Settlement Administrator shall perform a search of the National Change of Address database for each mailing address attached to a notice that is returned as undeliverable.  The Settlement Administrator will also establish an Internet site on which Settlement Class Members may download and print or e-sign and upload a claim form and review the Settlement Agreement and its exhibits.  A notice of the settlement will be published in *USA Today* and the Settlement Administrator will also advertise the settlement on the internet.  The Mail Notice will provide a toll-free number to call for settlement information.  Members may opt out or object by following the prescribed process.

5.      **Claims Process**

To obtain relief from Defendants, Settlement Class Members will be required to submit a signed, and where appropriate, verified Claim Form to the Settlement Administrator, pursuant to Claim Form Instructions, on or before the Claims Deadline, which shall be set by mutual agreement of the Parties, no later than sixty (60) days after the Final Settlement Date.  Settlement Class Members can submit a Claim Form via mail, uploading it through the Settlement Website, or submitting it online at the Settlement Website.  Following approval of the Settlement at the Final Approval Hearing, the Settlement Administrator shall confirm that each Claim Form submitted is in the form required, that each Claim Form includes the required affirmations and information and that each Claim Form was submitted in a timely fashion.  Full compliance with the requirements of the Settlement Agreement shall be necessary for the submission of a valid Claim.  The Settlement Administrator shall send a notice to claimants submitting deficient or defective Claim Forms within thirty (30) days of the Claim Deadline.

To aid in the completion and processing of Claims, the Settlement Administrator will establish a toll-free interactive voice response phone number with script recordings of information about this Settlement, including information about the Claim Form utilizing the relevant portions of the language contained in the Notice and Claim Form, and will also make personnel available to speak directly with Settlement Class Members and respond to any inquiries.  Within ninety (90) days after the Final Settlement Date, the Settlement Administrator shall provide Class Counsel and Defendants with a list of all Settlement Class Members who filed a Claim, whether it was rejected or accepted, and if rejected, the reason it was rejected, and if accepted, the amount to be paid by the Defendants.  The Parties will use their best efforts to amicably resolve any dispute about the processing of any Claim.

6.      **Opt-Out Rights**

A Settlement Class Member who wishes to opt out of the Settlement Class must do so according to the terms in the Settlement Agreement.  Any Settlement Class Member who does not opt out of the Settlement in such a manner shall be deemed to be part of the Settlement Class and shall be bound by all subsequent proceedings, orders and judgments.

7.      **Class Counsel Fees and Expenses and Named Plaintiffs' Service Awards**

The parties stipulate in the Settlement Agreement that the law firms of the Law Office of Roosevelt N. Nesmith, LLC and Giskan, Solotaroff & Anderson, LLP will serve as Class Counsel. Class Counsel will apply to the Court for approval of attorney's fees and reimbursement of expenses, which Defendants have agreed to pay as approved by the Court in an amount not to exceed $1,500,000.00, plus reimbursement of out of pocket expenses of $62,559.00.  Defendants' payment of Class Counsel's fees as awarded by the Court will be made entirely separate from, and will not diminish, the relief provided to the Class as a result of this Settlement.  Defendants have also agreed to pay each of the Gray Plaintiffs a service award as approved by the Court in an amount not to exceed $5,000.00 each (for a total of $15,000.00 to the Gray Plaintiffs) and to pay Plaintiff Wieck a service award as approved by the Court in an amount not to exceed $15,000.00. The Court will consider whether to approve these awards separate and apart from its analysis of the fairness, reasonableness, and adequacy of the Settlement.

8.      **Objections and Settlement Approval**

Any potential Settlement Class Member who does not opt out of the Settlement may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in the Settlement Agreement.  Written objection must be filed with the Clerk of Court and mailed to Class Counsel and Defense Counsel no later than the Objection Deadline.  Any Class

Member who files and serves a written objection may appear, in person or by counsel, at the Final Approval Hearing held by the Court.

**9.    Proposed Schedule Following Preliminary Approval**

Plaintiffs, with the consent of Defendants, propose that along with granting preliminary approval of the Settlement Agreement, the Court adopt the schedule set forth below in its Preliminary Approval Order, to allow the Settling Parties to effectuate the various steps in the settlement approval process under the Settlement Agreement.

| Event | Timing |
| --- | --- |
| Deadline for Mailing of Class Notice to Members of the Settlement Class (the "Mail Notice") | Not less than ninety (90) days before the date set by the Court for a Final Approval Hearing |
| Deadline for establishing Website | Mail Notice Deadline |
| Deadline for Publishing Class Notice | Not less than sixty (60) days before the date set by the Court for the Final Approval Hearing |
| Filing of Motion for Attorneys' Fees and Expenses | At least forth-five (45) days prior to the Final Approval hearing |
| Deadline for filing Objections and Requests to Opt Out of Settlement | No Later than thirty (30) days prior to the Final Approval Hearing |
| Final Fairness Approval Hearing | Not earlier than one hundred twenty (120) days after Preliminary Approval |
| Deadline for Settlement Administrator to provide Parties with a list of Claims Filed, whether rejected or accepted. | Within ninety (90) days after the Final Settlement Date |
| Deadline for Settlement Administrator or Defendants to process valid Claims | Within one hundred eighty (180) days after the Final Settlement Date |

III.    **THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

A.    **The Standards and Procedures for Granting Preliminary Approval**

Plaintiffs present this Settlement to the Court for its review under Fed. R. Civ. P. 23(e), which provides in pertinent part that the Court must direct notice regarding the settlement in a reasonable manner and may approve a class action settlement after a hearing and upon finding that the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(3).

The Third Circuit explicitly recognizes with approval a strong presumption in favor of voluntary settlement agreements. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). "This presumption [in favor of settlement] is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart*, 609 F.3d at 595 (*citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see Lenahan v. Sears, Roebuck & Co.*, No. 02-cv-0045, 2006 WL 2085282, at *12 (D.N.J. July 24, 2006) ("[s]ettlement of class action litigation has long been favored and encouraged.").

"Judicial review of a proposed class action settlement is a two-step process:  preliminary fairness approval and a subsequent fairness hearing." *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-cv-4453, 2007 WL 419749, at *1 (D.N.J. Nov. 21, 2007).  Preliminary approval is not binding and is to be granted unless a proposed settlement is obviously deficient. *Id*. at *2.  The Third Circuit has stated that a Court's preliminary approval of class settlement "establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in

similar litigation; and (4) only a small fraction of the class objected." *Id.* at \*2 (*citing GM Trucks*, 55 F.3d at 785). All of the indicia of fairness are present here.[1]

### B. There is a Strong Basis to Conclude That the Settlement is Fair, Reasonable and Adequate

The Settlement was the result of extensive arm's length negotiations over seen by an a neutral third party mediator with substantial experience in LPI class action litigation and conducted by experienced counsel for all the Parties, following substantial discovery, two expert reports, and three years of protracted litigation in present Litigation and the overlapping Wieck *Action* combined.

### 1. Plaintiffs' Claims Were Thoroughly Investigated Through Discovery

The substantial discovery conducted in the Wieck *Action* more than satisfies the relatively low threshold necessary to grant preliminary approval of the Settlement Agreement. *See, e.g., Smith*, 2007 WL 4191749, at \*2 (recognizing that "settlement occurred after plaintiff conducted sufficient discovery to determine that the benefits of the settlement outweighed the cost and risk of continued litigation."). Over the course of nearly three years of active litigation, Plaintiff Wieck was served (and responded to) multiple interrogatories, requests for production of documents, and requests for admissions, and produced hundreds of pages of responsive documents. Defendants

---

[1] At the final approval stage, courts in the Third Circuit apply a more rigorous nine factor analysis to assess the fairness, adequacy, and reasonableness of the proposed class action settlement. Specifically, the Court reviews the settlement in light of the factors established by *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. (citation omitted and quotation omitted). *See also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).

in the *Wieck* Action produced over 2,500 pages of documents in response to targeted discovery demands. *Id.* Class Counsel retained two experts who prepared extensive reports on behalf of Plaintiff Wieck and the putative class in April 2019. Class Counsel also deposed a representative of CIT Bank on April 4, 2019 and a representative of QBE Insurance Affiliate, Seattle Specialty Insurance Services, Inc. on April 10, 2019 in the *Wieck* Action.

The substantial discovery conducted in the *Wieck* Action, which addressed numerous overlapping issues in the present Litigation, demonstrates that Class Counsel is sufficiently well-informed as to the factual and legal issues relevant to the Litigation. In addition, Class Counsel expended considerable time, energy, and resources reviewing the extensive document productions from Defendants, analyzing damages, working with two experts retained on behalf of Plaintiff Wieck and the putative class, and conducting legal research on merits issues.

In addition, the Gray Plaintiffs obtained targeted discovery from the Defendants which supplemented the information produced in the *Wieck* Action. In the course of the Parties' mediation, the Gray Plaintiffs demanded additional discovery unique to the LPI hazard insurance that is the subject of the *Gray* Litigation. Defendants produced the information, including the aggregate figures for the nationwide LPI hazard premiums charged to Settlement Class Members.

### 2.    The Settlement Has No Deficiencies

The Settlement compares favorably to similar LPI settlements by returning 10% of the Net Premium charged for the LPI Policies to Settlement Class Members during the period February 2, 2012 and May 7, 2013, and 6% of the Net Premium charged for the LPI Policies to Settlement Class Members during the period May 8, 2013 and July 31, 2018, provided they submit timely and valid claims. Indeed, the Settlement compares favorably to similar LPI claims-made settlements recently granted final approved in the District of New Jersey in *Quarashi v M&T Bank Corp., et*

*al.*, Case No. 3:17-cv-06675 (BRM)(DEA) (D.N.J. June 24, 2019) (granting final approval of settlement providing eligible class members with a credit or payment equal to 3%, 4.5% or 6% of Net Premium on LPI Policy); *Rickert v. Caliber Home Loans, Inc*., Case No. 3:17-cv-06677 (BRM)(DEA) (D.N.J. April 1, 2019) (granting final approval of settlement providing eligible class members with a credit or payment equal to 3%, 4.5% or 6% of Net Premium on LPI Policy); *Smith v. Specialized Loan Servicing, LLC, et al*., Case No. 3:17-cv-06668 (BRM) (DEA) (D.N.J. April 1, 2019)( granting final approval of settlement providing eligible class members with a credit or payment equal to 3% or 6% of Net Premium on LPI Policy); *Santos v. Carrington, et al.*, Case No. 2:16-cv-03679 (WHW) (D.N.J. October 31, 2018) (granting final approval of settlement providing eligible class members with 12.5% of the Net Premium on the LPI Policy); and *In re PHH Lender Placed Insurance Litigation*, 1:12-cv-01117-NLH-KMW (D.N.J July 27, 2017) (providing eligible class members with refunds equal to 11.5% or 6% of the net premiums, depending upon the time period of the LPI charge) [*In re PHH LPI Litigation* Docket ECF 297] as well as settlements approved in similar force-placed insurance settlements in other districts. *See, e.g., Hall v. Bank of Am., N.A*., No. 12-cv-22700, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) (approving settlement returning either 5% or 11% of LPI premium); *Diaz v. HSBC USA, N.A*., No. 13-cv-21104, 2014 WL 5488161 (S.D. Fla. Oct. 29, 2014) (approving settlement returning either 6% or 13% of LPI premium; *Braynen v. NationStar Mortgage, LLC*, No. 14-cv-20726, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) (approving settlement returning 12.5% of LPI premium); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) (approving settlement returning 12.5% of LPI premium); *Hamilton v. SunTrust Mortg. Inc*., No. 13-cv-60749, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) (approving settlement returning 10.5% of LPIP premium); *Casey v. CitiMortgage, Inc*., No. 5:12-cv-820, Dkt. No. 234 (N.D.N.Y. Oct. 1, 2014)

(approving settlement returning 8% of LPI premium); *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) (approving settlement returning 12.5% of LPI premium).

Subject to the Court's approval, the Settlement offers the Gray Plaintiffs a reasonable service award of $5,000 each and Wieck a service award of $15,000, which recognize the important contributions each of the plaintiffs has made to the prosecution of the claims in this Litigation. Because of Plaintiffs' efforts and willingness to become involved in this Litigation, thousands of passive Settlement Class Members will receive significant benefits from the Settlement. "[S]ubstantial authority exists for the payment of an incentive award to the named plaintiff." *Smith*, 2007 WL 4191749, at *3 (*citing Varacallo v. Massachusetts Mut. Life Ins. Co*., 226 F.R.D. 207, 257 (D.N.J. 2005)). In addition, the proposed service awards are in line with awards that have been approved in this Circuit. *See, e.g., Moore v. Comcast Corp*., No. 08-cv-773, 2011 WL 238821, at *6 (E.D. Pa. Jan. 24, 2011) (approving an incentive award in the amount of $10,000); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig*., 263 F.R.D. 226, 245 (E.D. Pa. 2009) (approving up to $10,400 as enhancement awards).

Likewise, the Settlement Agreement does not provide excessive compensation to Class Counsel; the maximum Attorneys' Fees Class Counsel may receive under the Settlement equates to less than eighteen percent (18%) of the total monetary relief made available to the Settlement Class.[2]

---

[2] Plaintiffs' request for attorneys' fees and service awards are subject to the Court's approval at the Final Approval Hearing where any Settlement Class Member who submits a proper objection will have an opportunity to comment on the propriety of these requests. Accordingly, Plaintiffs will submit briefing justifying their request for approval of attorneys' fees and service awards prior to the Final Approval Hearing, as well as respond to comments from Settlement Class Members as necessary.

3.  **The Settlement Negotiations Occurred at Arm's Length with an Experienced Mediator and Counsel**

It is Class Counsel's experienced opinion that given the alternative of long and complex litigation, the risks involved in such litigation, a trial on the merits and preparing for the same, and the possibility of later appellate litigation, the availability of prompt relief under the Settlement is meaningful, timely, and highly beneficial to the Settlement Class Members. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009) (noting that a settlement that would eliminate delay and expenses and provides immediate benefit to the settlement class strongly militates in favor of settlement approval).

Class Counsel negotiated the Settlement to meet all the requirements of Rule 23, and specifically to provide an administrative process that would assure Settlement Class Members equal and sufficient due process.  The Settlement was the result of arm's length settlement discussions, conducted before a mediator and by counsel experienced in lender-placed insurance litigation, following specific claims-related discovery and contentious litigation in the Related Action.

Through the course of negotiations, Settlement Class Members were represented by a team of attorneys who have considerable experience (and success) in prosecuting (and settling) class actions, have been vigorously prosecuting this and other cases for similar claims for several years, and were therefore well-versed in the issues and how to evaluate claims.  Class Counsel's approval of the Settlement should weigh in favor of the Settlement's fairness. *Varacallo*, 226 F.R.D. at 240. ("[T]he Court puts credence in the fact that Class Counsel consider the Proposed Settlement to be fair, reasonable and adequate.")

Moreover, the parties conducted vigorous settlement discussions before a well-respected mediator with significant experience resolving complex suits.  As this Court has noted, "the

18

participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Milliron v. T-Mobile USA, Inc*., No. 08-cv-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (citation and quotation marks omitted).[3]

Accordingly, Plaintiffs have established this Circuit's standards for preliminary approval of the Settlement. This Court should grant preliminary approval so the proposed class may be certified for Settlement purposes, Class Counsel may be appointed, and Class Notices may be mailed. Once the Class Notice process is complete, the Court can then fully evaluate the fairness and adequacy of the Settlement at a Final Approval hearing.

## IV. THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES

Plaintiffs request that the Court preliminarily certify a Settlement Class, which would permit dissemination of notice concerning the Litigation and the Settlement. Defendants do not object to certification of the Settlement Class for purposes of settlement only. The Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997). In conducting this task, a court's "dominant concern" is "whether a proposed class has sufficient unity so that the absent members can fairly be bound by the decisions of class representatives." *Id*. at 621. To be certified under Rule 23, a putative class must satisfy, by a preponderance of the evidence, each of the four

---

[3] *See also In re Schering-Plough Corp. Sec. Litig*., No. 01-cv-0829, 2009 WL 5218066, at *3 (D.N.J. Dec. 31, 2009) (use of "highly regarded mediator" part of "a pattern that demonstrates arms-length negotiating"); *Bernhard v. T.D. Bank, N.A*., No. 08-cv-4392, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) (use of respected mediator "supports the inference of arm's length negotiation").

requirements of Rule 23(a)  as well as the requirements of one of the three provisions of Rule 23(b).  *See* Fed. R. Civ. P. 23.

## A.      Rule 23(a) Requirements Are Satisfied

In order to certify a class under Rule 23, a named plaintiff must establish that the class meets each of the four requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Here, all four elements are satisfied for purposes of certifying the proposed Settlement Class.  Indeed, although the case law on *contested* class certification motions for litigation purposes has been mixed,[4] courts have uniformly certified classes for settlement purposes in other lender-placed litigation cases.[5]

---

[4] While Plaintiff believes that class certification would have been granted in this case, there exist lender-placed insurance cases in which class certification was denied . *See, e.g., Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505 (D. Minn. 2014); *Gooden v. SunTrust Mortg.*, No. 11-cv-2595, 2013 WL 6499250 (E.D. Cal. Dec. 11, 2013); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529 (C.D. Cal. 2013); *Gordon v. Chase Home Fin., LLC*, No. 11-cv-2001, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013).

[5] *See, e.g. Hamilton*, 2014 WL 5419507 (final approval order*); Hall*, 2014 WL 7184039 (final approval order); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721, 2014 WL 5488167 (S.D. Fla. Oct. 29, 20140) (final approval order); *Diaz*, 2014 WL 5488161 (final approval order); *Saccoccio*, 297 F.R.D. 683 (final approval order); *Clements v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-02179, Dkt. No. 61 (N.D. Cal. Jan. 17, 2014) (preliminary approval order); *Pulley v. JP Morgan Chase Bank, N.A.*, No. 12-cv-60936, Dkt. No. 84 (S.D. Fla. Nov. 25, 2013) (final approval order); *Ulrich v. GMAC Mortg.*, No. 11-cv-62424, Dkt. No. 105 (S.D. Fla. May 10, 2013) (final approval order).

1.      **Rule 23(a)(1) – "Numerosity"**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "[G]enerally, where the potential number of plaintiffs is likely to exceed forty members, the Rule 23(a) numerosity requirement will be met." *Martinez-Santiago v. Public Storage*, 312 F.R.D. 380, 388 (D.N.J. 2015) (*citing Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012)).  Here, there are tens of thousands of Settlement Class Members.  The numerosity requirement is therefore satisfied.

2.      **Rule 23(a)(2) – "Commonality"**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011).  The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2015) ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members.")  A finding of commonality does not require that all class members share identical claims as long as there are common questions at the heart of the case. *In re Warfarin Sodium Antitrust Litig.*, 3931 F.3d 516, 530 (3d Cir. 2004) (quotation omitted); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1998) ("Prudential II").  "For purposes of Rule 23(a)(2), even a single [common] question will do. *Wal-Mart Stores, Inc*., 131 S. Ct. at 2551 (brackets in original).

Here, the Settlement Class raises common questions of law and fact with respect to their claims against Defendants.  Plaintiffs allege that CIT Bank received improper commissions as a percentage of the premium, as well as expense reimbursements and below-cost outsourced mortgage servicing from the QBE Insurance and MIC General and then, through lender-placed

21

charges, passed the true cost of these benefits and services onto the borrowers who were force-placed with insurance.  The Settlement Class Members' claims address these common practices and raise common issues as to whether Defendants engaged in a RICO scheme to charge borrowers the cost of the commissions, expense reimbursements and outsourcing received from the QBE Defendants and breached Settlement Class Members' mortgage contracts and improperly inflated their insurance charges.

       **3.**       **Rule 23(a)(3) – "Typicality"**

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23.  As the Third Circuit has stated, the named plaintiffs' claims must merely be 'typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (citations omitted).  "In instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong presumption that the claims of the representative parties will be typical of the absent class members." *In re Merck & Co., Inc., Vytorin/Zetia Sec. Litig*., No. 08-cv-2177, 2012 WL 4482041, at *4 (D.N.J. Sept. 25, 2012) (citation omitted).

Here the Named Plaintiffs' claims and those of the Settlement Class, arose from a common course of conduct by Defendants of allegedly charging Settlement Class Members for commissions, expense reimbursements and the costs incurred in performing Financial Freedom's servicing functions for the reverse mortgages under the guise of lender-placed insurance.  As such, their claims are typical of all Settlement Class Members.

4.      **Rule 23(a)(4) – "Adequacy"**

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23.  In the Third Circuit, adequacy is met when the plaintiff has no interests antagonistic to those of the class and plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation. *In re Schering Plough*, 589 F.3d at 602.  The core analysis for the first prong is whether Plaintiff has interests antagonistic to those of the Settlement Class.  The second prong analyzes the capabilities and performance of Class Counsel under Rule 23(a)(4) based upon factors set forth in Rule 23(g).  *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010).  Here, adequacy is readily met, and Plaintiffs satisfy both prongs.

First, Plaintiffs have no interests adverse or "antagonistic" to absent Settlement Class Members.  Plaintiffs seek to hold Defendants accountable for, among other things, charging Settlement Class Members for kickbacks exchanged between Defendants and shouldered by Settlement Class Members.  Further, Plaintiffs collectively have demonstrated their allegiance and commitment to this Litigation by consulting with Class Counsel, reviewing the pleadings, providing documents, and responding to written discovery propounded by Defendants.  Plaintiffs' interests are aligned with the interest of the absent Settlement Class Members.

Second, as discussed within, Plaintiffs' Counsel are qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation – specifically including lender-placed insurance litigation.[6]  Accordingly, the adequacy requirement is satisfied.

---

[6] See, e.g. *Edwards v. Seterus, Inc.*, 15-cv-23107 (S.D. Fla. April 14, 2017) (settlement class); *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998 (S.D. Fla. Sept. 14, 2015) (settlement class); *Montoya v. PNC Bank, N.A.*, 2015 U.S. Dist. LEXIS 132664 (S.D. Fla. Sept.

**B.      The Proposed Settlement Class Should Be Certified Under Rule 23(b)(3)**

Having demonstrated that each of the mandatory requirements of Rule 23(a) are met for settlement purposes only, Plaintiffs now turn to consideration of the factors that further justify class treatment of this action under Rule 23(b)(3) – predominance and superiority.  Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy.  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods*., 521 U.S. at 623.  Superiority requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *Prudential II*, 148 F.3d at 316 (citation omitted) .  Here, the Settlement Class readily meets both requirements.

First, common questions of law and fact predominate.  Settlement Class Members' claims arise out of Defendants' uniform application of LPI policies and procedures.  Defendants' conduct did not vary with regard to individual Settlement Class Members.  Additionally, Settlement Class Members' claims seek remedy of "common legal grievances" – namely, the return of the cost of alleged kickbacks CIT Bank received from QBE Insurance and MIC General as a result of the LPI policies.  This presents common operative facts and common questions of law that predominate over any factual variations.

Second, certification of the Settlement Class under Rule 23 is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23.  Absent class certification here, many putative Class Members would go uncompensated for Defendants'

---

30, 2015) (settlement class); *Almanzar v. Select Portfolio Servicing, Inc., et al*., 14 –cv-22586 (FAM) (S.D. Fla. Oct. 15, 2015) (settlement class); *Wilson v. Everbank, N.A*., 14-cv-22264 (S.D. Fla. Aug. 31, 2015) (settlement class).

alleged wrongdoing, or alternatively, would need to retain counsel to file individual suits. Requiring thousands of elderly homeowners to file individual lawsuits would needlessly waste judicial resources in the event of litigation because each lawsuit would likely involve the same evidence concerning Defendants' alleged wrongdoing.   Thus, resolving the Settlement Class Members' claims as a single, consolidated settlement proceeding is far superior to individual adjudication of their claims.   Indeed, the Settlement Agreement provides the Settlement Class Members with an ability to obtain prompt, predictable, and certain relief, whereas individualized litigation carries with it great uncertainly, risk and costs.

### C.      Proposed Class Counsel Satisfy Rule 23(g)

Pursuant to Rule 23(g), Plaintiffs also move for an appointment of the law firms of Law Office of Roosevelt N. Nesmith, LLC and Giskan Solotaroff and Anderson, LLP as "Class Counsel."   Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. Fed. R. Civ. P. 23.   While a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interest of the class," Rule 23(g)(1)(A) specifically instructs a court to consider:  "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's work experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id*.  Here, each of the Rule 23(g)(1)(A)'s considerations weigh strongly in favor of finding Class Counsel adequate.

Plaintiffs' Counsel has done substantial work to identify and investigate potential claims and properly support the allegations in the *Gray* Litigation and *Wieck* Action.  Plaintiffs' Counsel

has also investigated the allegations in this and other lender-placed insurance litigation by interviewing witnesses, reviewing publicly available information, reviewing documents, and consulting with experts.   Plaintiffs' Counsel has substantial experience, individually and collectively, in handling class actions, other complex litigation, and claims of the type asserted in this action. Plaintiffs' Counsel has set forth their experience with LPI class action litigation in the Declarations of Catherine E. Anderson dated November 11,2019, and Roosevelt N. Nesmith dated November 11,2019, which are submitted as Exhibits 2 and 3. Hence, Plaintiffs' Counsel's extensive efforts in prosecuting this case, combined with their in-depth knowledge of the subject area, satisfy Rule 23(g).

## V.     THE FORM AND MANNER OF NOTICE ARE PROPER

The manner in which the Class Notices are disseminated, as well as their content, must satisfy Rule 23(c)(2)) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process. *See In re Ocean Power Techs, Inc*., No. 3;14-cv-3799, 2016 WL 6778218, at *9 (D.N.J. Nov. 15, 2016).  These requirements are adequately satisfied here.

Rule 23(e) requires that notice of a proposed settlement be provided to class members Fed. R. Civ. P. 23.  "Due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Skeen v. BMW of N. Am., LLC*, No. 2:13-cv-1351, 2016 WL 70817, at *7 (D.N.J. Jan. 6, 2016) (citation omitted).  Additionally, Rule 23(c)(2) requires "the best notice practicable under the circumstances" and that it contain sufficient information 'to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.'" *In re Ocean Power*, 2016 WL 6778218 at *10 (*quoting In re Nat'l Football league Players Concussion*

26

*Injury Litig.*, 821 F.3d 410, 435 (3d Cir. 2016)).  Further, "[i]I is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause." *Id.* (*quoting Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985)).

Here, the content of the Class Notice satisfies all requirements.  The language of the Class Notices was drafted and agreed by the Parties.  The proposed Class Notices are written in plain, simple terminology, and include:  (1) a description of the Settlement Class; (2) a description of the claims asserted in the Litigation; (3) a description of the Settlement and release of claims; (4) the deadlines for exercising the right to opt-out; (5) the identity of counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval hearing; and (8) the deadline for objecting to the Settlement.  The Class Notices provide Settlement Class Members with clear and accurate information as to the nature and principal terms of the Settlement Agreement to make an informed and intelligent decision whether to object to the Settlement.  In addition, pursuant to Rule 23(h), the proposed Class Notices set forth the maximum amount of Attorneys' Fees and Expenses and service awards that may be sought pursuant to the Settlement Agreement.

The dissemination of the Class Notice likewise satisfies all requirements.  Under the Settlement Agreement, the Settlement Administrator will send individualized Class Notices and Claim Forms to Settlement Class Members via first class mail.  Class Notice will also be published on an Internet site established by the Settlement Administrator and will be published in *USA Today* to provide further notice to prospective Settlement Class Members.  Mail Notice will be sent to the last known address reflected in Defendants' records for each Settlement Class Member.  For any Mail Notice that is returned as undeliverable, the Settlement Administrator will utilize the

National Change of Address database in an attempt to obtain better addresses and re-send such returned Mail Notices. In addition, along with an internet advertising campaign to be implemented by the Settlement Administrator, a toll-free phone number and a website will be created so that Settlement Class Members can readily have questions answered, obtain additional copies of materials sent by the Settlement Administrator, and upload and file their Claim Form.

Accordingly, the proposed Class Notices comply with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.

**VI. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval, and enter the Proposed Order which, *inter alia*: (1) grants preliminary approval of the Settlement as fair, reasonable, and adequate, and in the best interests of the Settlement Class Members; (2) certifies the proposed Settlement Class for settlement purposes only; (3) appoints the law firms of Law Office of Roosevelt N. Nesmith, LLC and Giskan, Solotaroff & Anderson, LLP as Class Counsel; (4) approves the form and content of, and directs the distribution of the proposed Class Notice and accompanying Claim Form Instructions and Claim Form, and authorizes and directs Defendants to retain one or more Settlement Administrator(s) to implement the terms of the Settlement Agreement; and (5) schedules a Final Approval Hearing not earlier than 120 days after Preliminary Approval is granted.

Dated: November 12, 2019

By: s/Roosevelt N. Nesmith
Roosevelt N. Nesmith, Esq.

**LAW OFFICE OF ROOSEVELT N. NESMITH, LLC**
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (973) 848-1368

Catherine E. Anderson, Esq.
**GISKAN SOLOTAROFF & ANDERSON, LLP**
90 Broad Street, 10th Fl.
New York, New York 10004
Tel: (212) 847-8315
Fax: (646) 964-9610

***Attorneys for Plaintiffs and The Proposed Class***