Roosevelt N. Nesmith, Esq. (008271997)
**LAW OFFICE OF ROOSEVELT N. NESMITH, LLC**
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Telephone: (973) 259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*
*Attorneys for Plaintiffs and the Putative Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONICA GRAY, AS EXECUTRIX OF THE ESTATE OF EARL GRAY, JR. AND AS TRUSTEE OF THE INTEREST OF JASMINE GRAY-OLIVER, JUSTIN GRAY, and JULIA WIECK, on behalf of themselves and all others similarly situated, | **CASE NO. 1:18-cv-01520-RMB-AMD** |
| Plaintiffs, | |
| v. | |
| CIT BANK, N.A, QBE INSURANCE CORPORATION, QBE FIRST INSURANCE AGENCY, INC., and MIC GENERAL INSURANCE CORPORATION, | |
| Defendants. | |

**THE PARTIES' JOINT SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFYING CLASS FOR SETTLEMENT PURPOSES, DIRECTING THE ISSUANCE OF CLASS NOTICE, APPOINTMENT OF CLASS COUNSEL AND SCHEDULING FINAL APPROVAL HEARING**

# TABLE OF CONTENT

Page

A.  The Amended Settlement Class .........................................................................1

B.  The *Girsh* Factors Support Preliminary Approval ...........................................2

    1.  The Complexity, Expense, and Duration of Continued Litigation ......................................................................................3

    2.  The Reaction of the Class to the Settlement .......................................5

    3.  The Stage of the Proceedings ..............................................................6

    4.  The Risks of Establishing Liability .....................................................7

    5.  The Risks of Establishing Damages .....................................................8

    6.  The Risks of Maintaining the Class Action through Trial ...................9

    7.  Defendants' Ability to Withstand Greater Judgment.........................10

    8.  Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation................................11

C.  The Five-Year Period for Injunctive Relief Is Reasonable ...........................16

CONCLUSION ....................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*Barel v. Bank of Am.*,
255 F.R.D. 393 (E.D. Pa. 2009)..........................................................................16

*Belanger v. Roundpoint Mortg. Serv. Corp.*,
Case No. 17-23307 (S.D. Fla. Mar. 28, 2019)................................................ 15, 17

*Braynen v. Nationstar Mortg., LLC*,
2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) ............................................ 9, 15, 17

*Bredbenner v. Liberty Travel, Inc.*,
2011 WL 1344745 (D.N.J. Apr. 8, 2011) .................................................... 3, 5, 10

*Casey v. CitiMortgage, Inc.*,
No. 5:12-cv-820, Dkt. No. 234 (N.D.N.Y. Oct. 1, 2014).....................................15

*Christie v. Bank of Am., N.A.*,
2016 WL 654818 (M.D. Fla. Jan. 7, 2016)............................................................9

*Circeo-Loudon v. Green Tree Serv., LLC*,
2016 WL 8256853 (S.D. Fla. Aug. 30, 2016) ............................................. 15, 17

*Dewey v. Volkswagen of Am.*,
728 F. Supp. 2d 546, 585 (D.N.J. 2010)................................................................9

*Diaz v. HSBC USA, N.A.*,
No. 13-cv-21104, 2014 WL 5488161 (S.D. Fla. Oct. 29, 2014).................. 14, 17

*Fladell v. Wells Fargo*,
2014 WL 5488167 (S.D. Fla. Oct. 29, 2014) .............................................. 14, 17

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) .........................................................2

*Girsh v. Jepson*,
521 F.2d 153, 157 (3d Cir. 1975) ............................................................... passim

*Gustafson v. BAC Home Loans Servicing, LP*,
294 F.R.D. 529 (C.D. Cal. 2013)...........................................................................9

## TABLE OF AUTHORITIES (continued)

Page

*Hall v. AT&T Mobility LLC*,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010) ......................................... 3, 13, 14, 17

*In re Am. Family*, *Enters.*,
  256 B.R. 377 (D.N.J. 2000) ...................................................................2

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .................................................................2, 6

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
  55 F.3d 768 (3d Cir. 1995) ......................................................... passim

*In re Ikon Office Solutions, Inc.*,
  194 F.R.D. 166 (E.D. Pa. 2000).............................................................16

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010) .................................................4

*In re PHH Lender Placed Insurance Litig.*,
  1:12-cv-01117-NLH-KMW (D.N.J. July 27, 2017)...............................13

*In re Prudential Insurance Co. America Sales Practice Litig.*,
  148 F.3d 283 (3d Cir. 1998) .................................................................5

*In re Safety Components, Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001) .........................................................6

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .................................................................4, 7

*Johnson & Johnson Derivative Litig.*,
  900 F.Supp.2d 467 (D.N.J. 2012) .........................................................6

*Lee v. Ocwen Loan Serv., LLC*,
  2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ................................ 15, 17

*McCoy v. Health Net, Inc.*,
  569 F. Supp. 2d 448 (D.N.J. 2008).......................................................4

*Montoya v. PNC Bank, N.A.*,
  2016 WL 1529902 (M.D. Fla. May 4, 2016)................................. 15, 17

**TABLE OF AUTHORITIES** (continued)

Page

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
No. 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017) .....................................6

*Quarashi v M&T Bank Corp.*,
Case No. 3:17-cv-06675 (BRM)(DEA) (D.N.J. June 24, 2019) .................. 14, 17

*Rapp v. Green Tree Servicing, LLC*,
302 F.R.D. 505 (D. Minn. 2014) ...........................................................................9

*Rickert v. Caliber Home Loans, Inc.*,
Case No. 3:17-cv-06677 (BRM)(DEA) (D.N.J. Apr. 1, 2019) .................... 15, 17

*Santos v. The Carrington Companies, LLC*,
Case No. 2:16-cv-03679 (WHW) (CLW) (D.N.J. Oct. 31, 2018) ............... 15, 17

*Smith v. Specialized Loan Servicing, LLC*,
Case No. 3:17-cv-06668 (BRM) (DEA) (D.N.J. April 1, 2019) .........................15

*Soccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. Feb. 28, 2014)............................................................15

*Weiss v. Mercedes-Benz of North America*,
899 F. Supp. 1297 (D.N.J. 1995).......................................................................3, 7

*Weiss v. Mercedes-Benz of North America, Inc.*,
899 F. Supp. 1297 (D.N.J. 1995).........................................................................7

*Wilson v. EverBank*,
2016 WL 457011 (S.D. Fla. Feb. 3, 2016) .................................................. 15, 17

Plaintiffs' Monica Gray, as executrix of the Estate of Earl Gray, Jr., and as trustee of the interest of Jasmine Gray Oliver, Justin Gray, and Julia Wieck, (collectively, "Plaintiffs") and defendants CIT Bank, N.A., QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. and MIC General Insurance Corporation (collectively, "Defendants"), respectfully submit this Joint Supplemental Memorandum of Law in Further Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Certifying Class for Settlement Purposes, Directing the Issuance of Class Notice, Appointment of Class Counsel and Scheduling Final Approval Hearing.

## A.  __The Amended Settlement Class__

In accordance with the Court's directive at the December 6, 2019 hearing on preliminary approval, the parties seek to amend the Settlement Class[1] to include any justice, judge, or magistrate judge of the United States or State, except those who are assigned to this matter.  The revised Settlement Class thus is defined as follows:

> All Borrowers in the United States who, during the Settlement Class Period (February 2, 2012 through and including July 31, 2018), were charged by Financial Freedom a Net Premium for an LPI Policy issued during the Settlement Class Period.
>
> Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of Defendants or any of their respective Affiliates; (ii) ***any***

---

[1] Unless otherwise defined herein, capitalized terms have the meaning set forth in the Settlement Agreement.

> *justice, judge, or magistrate judge of the United States or*
> *State, assigned to this matter, their spouses, and persons*
> *within the third degree of relationship to either of them, or the*
> *spouses of such persons*; (iii) borrowers who only had an LPI
> Policy that was cancelled in its entirety such that any premiums
> charged and/or collected were fully refunded to the borrower or
> the borrower's escrow account; (iv) borrowers whose
> indebtedness on the residential property securing the reverse
> mortgage loan serviced by Financial Freedom has been
> compromised or discharged in bankruptcy or otherwise; and (v)
> all borrowers who file a timely and proper request to be
> excluded from the Settlement Class.
> (Emphasis added).

This change will be reflected in the Notice and all exhibits for the Court's

consideration on preliminary approval.

## B.     The *Girsh* Factors Support Preliminary Approval

The Third Circuit has adopted a nine-factor test to determine whether a

settlement is "fair, reasonable, and adequate."  *Girsh v. Jepson*, 521 F.2d 153, 157

(3d Cir. 1975).  The elements of this test – known as the "*Girsh* factors" – are:

> (1) the complexity and duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings; (4) the
> risks of establishing liability; (5) the risks of establishing damages;
> (6) the risks of maintaining a class action; (7) the ability of the
> defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement in light of the best recovery; and
> (9) the range of reasonableness of the settlement in light of all the
> attendant risks of litigation.

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,

55 F.3d 768, 785 (3d Cir. 1995) (citing *Girsh*, 521 F.2d at 157).  "These factors

2

are a guide and the absence of one or more does not automatically render the settlement unfair."  *In re Am. Family*, *Enters.*, 256 B.R. 377, 418 (D.N.J. 2000).  An analysis of the *Girsh* factors weighs in favor of approval.

### 1.    The Complexity, Expense, and Duration of Continued Litigation

The first *Girsh* factor is whether the settlement avoids a lengthy, complex and expensive continuation of litigation.  This factor "captures the probable costs, in both time and money, of continued litigation."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 233-34 (3d Cir. 2001) (internal quotation marks omitted).  "Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement."  *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *11 (D.N.J. Apr. 8, 2011).  This factor undoubtedly weighs in favor of settlement.

Here, due to the factual and legal complexities involved in this case, continued litigation would have been rigorously contested by all parties and would necessarily be expensive and time-consuming.  *See In re General Motors*, 55 F.3d at 812 (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlements that offer immediate benefits and avoid delay and expense); *Weiss v. Mercedes-Benz of North America*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (approving settlement that was the "result of an arm's length negotiation between two very capable parties" and where "Mercedes was prepared to contest this class action vigorously.").  Indeed, in the similar *Wieck*

3

Action, the parties have engaged in extensive motion practice and discovery, including the production of thousands of pages of documents and two expert reports and the depositions of corporate representatives of CIT Bank and Seattle Specialty Insurance Services, Inc., an insurance provider affiliate of QBE Insurance.  Had litigation continued, the parties in *Gray* would have been required to engage in similar, extensive discovery and in extensive motion practice involving class certification and summary judgment issues, and the testimony of experts would have been required at the class certification stage and at trial.  *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at \*7 (D.N.J. Oct. 13, 2010) (that trial would have required substantial expert testimony weighed in favor of approving settlement); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 460 (D.N.J. 2008) (same).

The risks of substantial delay with continued litigation are palpable.  As described above, although this case has been litigated for nearly two years, and the *Wieck* Action has been litigated for nearly three years, substantial additional work would be required before the case would be ready to bring to trial.  Trial would involve extensive pretrial motions involving complex questions of law and fact, and the trial itself would be lengthy and complicated.  *See In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 536 (3d Cir. 2004) (finding the first *Girsh* factor to weigh in favor of settlement after three years of litigation).

Even if Plaintiffs were successful, post-trial motions and appeal would further delay resolution and increase costs because Defendants undoubtedly would appeal an adverse judgment, adding further time to a final resolution of this matter if litigation continued. *Warfarin Sodium*, 391 F.3d at 536 ("it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class"); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at \*7 (D.N.J. Feb. 9, 2010) (noting that additional costs associated with trial of multi-district class action and the delayed recovery for the class weighs in favor of settlement). A certain result now, rather than an uncertain result potentially several years down the road, weighs in favor of approval of the Settlement, particularly given the age of the Settlement Class Members. While claims can be filed by representatives of Borrowers' estates or inheritors of Borrowers' properties, the average age based on the dates of birth of the Borrowers associated with the LPI Policies at issue is 87 years. This raises the importance of obtaining relief through the Settlement as soon as practicable.

For these reasons, the first *Girsh* factor weighs in favor of preliminary approval of the Settlement.

### 2.    The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the Settlement." *In re Prudential Insurance Co. America Sales Practice*

*Litig.*, 148 F.3d 283, 318 (3d Cir. 1998). This factor will be evaluated after notice and an opportunity to be heard is provided to the Class.

### 3. The Stage of the Proceedings

The stage of the proceedings and the amount of discovery completed is the third factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement. *In re General Motors*, 55 F.3d at 785; *Girsh*, 521 F.2d at 157. "This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner*, 2011 WL 1344745 at *12. "Through this lens . . . courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors*, 55 F.3d at 813. Here, the Parties briefed multiple motions to dismiss and engaged in discovery, both in the present case and more extensively in the related *Wieck* Action, including the production of thousands of pages of documents, two expert reports, and two 30(b)(6) depositions, prior to conducting arm's length mediation before a third-party mediator. Access to and use of evidence from other related proceedings supports settlement approval. *See In re General Motors*, 55 F.3d at 813-14; *see also P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-2164, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017) (Vasquez, J.) ("[i]ndeed, courts in this district have approved settlements while the case was in the pre-trial stage and formal discovery had not yet

commenced") (quoting *Johnson & Johnson Derivative Litig*., 900 F. Supp. 2d 467, 482 (D.N.J. 2012)).   This factor weighs in favor of settlement.

### 4.    The Risks of Establishing Liability

The fourth factor "examine[s] what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant Corp. Sec. Litig*., 264 F.3d 201, 237 (3d Cir. 2001) (quoting *In re General Motors*, 55 F.3d at 814).  "The inquiry requires a balancing of the likelihood of success if the case were taken to trial against the benefits of immediate settlement." *In re Safety Components, Inc. Sec. Litig*., 166 F. Supp. 2d 72, 89 (D.N.J. 2001).

Although Class Counsel believe that the claims presented in this litigation are meritorious, they are experienced counsel who understand that the "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301.  Defendants have zealously defended against the claims here and in other cases involving LPI, and would surely continue to do so in the *Gray* Action if the case were to proceed to trial.  The Settlement here presents the Settlement Class with real relief now.  Further, although Plaintiffs are confident that their claims are legally sound, there is always the possibility that the Court may disagree.  These risks include the potential denial of class certification, the granting of summary judgment,

and loss at trial or on appeal.   Thus, these inherently unpredictable risks in establishing liability weigh in favor of settlement.

### 5.    The Risks of Establishing Damages

"Like the fourth factor, [the fifth factor] 'attempts to measure the expected value of litigating the action rather than settling it at the current time.'"  *Cendant*, 264 F.3d at 238.  The court compares the potential damages award if the case were taken to trial against the benefits of immediate settlement.  *Prudential*, 148 F.3d at 319.  In *Warfarin Sodium*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through 'a "battle of experts," with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'"  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004).   Similarly, in *Cendant*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239.

The same is true here.  In the *Wieck* Action, Plaintiff Wieck submitted the expert reports of two damages experts, Birny Birnbaum and Phillip G. Cantrell. Similar reports would likely be submitted in the *Gray* Action.  Defendants would

undoubtedly submit their competing expert reports, as defendants have in every LPI case that has reached the stage of expert discovery in which Class Counsel have been involved.  Thus, the damages phase of a trial would come down to a battle of the experts.  This factor weighs in favor of approving the settlement.

### 6.      The Risks of Maintaining the Class Action through Trial

Because the prospects for obtaining class certification have a great impact on the range of recovery, *see In re General Motors*, 55 F.3d at 817, the Court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial.  *Girsh*, 521 F.2d at 157.  Class Counsel believe that this case is wholly appropriate for class certification in the litigation context.  However, there is always a risk that a Court would find this action not suitable for class certification, or find it not suitable for litigation on a multi-state basis.  *See, e.g.*, *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *3 (S.D. Fla. Nov. 9, 2015) ("many" LPI cases were "denied class certification"); *Christie v. Bank of Am., N.A.*, 2016 WL 654818, at *8 (M.D. Fla. Jan. 7, 2016) (denying class certification in LPI case); *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505 (D. Minn. 2014) (same); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529 (C.D. Cal. 2013) (same).  Indeed, the parties are not aware of a single nationwide class that has been certified in a LPI case alleging kickbacks, other than for settlement purposes.  Further, even if class certification were granted in the litigation context, class certification can always be

reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 585 (D.N.J. 2010).  Finally, even if a class were certified, there is no assurance that Plaintiffs would prevail at trial.  In other words, class litigation is inherently uncertain.  This factor weighs in favor of settlement approval.

### 7.   Defendants' Ability to Withstand Greater Judgment

Although there is no dispute that Defendants have ample resources, countless settlements have been approved where a settling defendant has had the ability to pay greater amounts, and the Third Circuit has noted that this fact alone does not weigh against settlement approval.  *See, e.g.*, *Warfarin Sodium*, 391 F.3d at 538.  This factor is generally neutral when the defendant's ability to pay greatly exceeds the potential liability and was not a factor in settlement negotiations.  *CertainTeed*, 269 F.R.D. at 489 ("because ability to pay was not an issue in the settlement negotiations, this factor is neutral"); *Warfarin Sodium II*, 391 F.3d at 538 ("fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached"); *Bredbenner*, 2011 WL 1344745, at *15 ("courts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts").  Defendants' resources, moreover, do not diminish the significance of the monetary consideration provided

under the Settlement, and a court evaluating settlements must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."  *In re General Motors*, 55 F.3d at 806 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

### 8.   Reasonableness of the Settlement in Light of the Best Possible Recovery And All Attendant Risks Of Litigation

The final two *Girsh* factors are the reasonableness of the settlement in light of the best possible recovery and all the attendant risks of litigation.  These factors support approval of this Settlement.  This Settlement offers real economic benefits to Settlement Class Members.  Under the Settlement Agreement, Defendants will issue checks to Settlement Class Members who submit a timely and valid claim in an amount equal to 10% of the Net Premium for each LPI Policy placed on their property during the period February 2, 2012 to May 7, 2013, and 6% of the Net Premium for each LPI Policy placed on their property during the period May 8, 2013 to July 31, 2018.  SA 4.7.1- 4.7.2

Each Settlement Class Member's potential claim amount will vary, depending on, for example, whether their LPI Policy was partially canceled and the Net Premium partially refunded, whether they had multiple LPI Policies placed on their property, and the total amount of their Net Premium, which itself will depend on various property and insurance factors.  Thus, projecting average and median claim

figures may not accurately reflect any particular Settlement Class Member's prospective claim.  However, to provide a general estimation of the value of individual claims under the Settlement, below are the approximate median and average amounts for a Settlement claim, assuming each Settlement Class Member submits a claim based on a single LPI Policy (claims among Settlement Class Members with multiple LPI Policies would have correspondingly larger claim amounts).

| Class Period | Median recovery | Average recovery |
|---|---|---|
| 02/12/2012–05/07/2013 10% of Net Premium | $135 | $166 |
| 05/08/2013–07/31/2018 6% of Net Premium | $66 | $82 |

The reimbursement percentage amount depends on whether, during the Settlement Class Period, an affiliate of a predecessor to CIT Bank allegedly received a commission from the Insurance Defendants, or just allegedly received discounted loan services.  Plaintiffs have alleged that both commissions and discounted loan services are types of unearned kickbacks, the actual cost of which is included in the LPI charges imposed on Plaintiffs and other Settlement Class Members.

Discovery has shown that prior to May 8, 2013, an affiliate of a predecessor to CIT Bank generated up to a 16% commission from the Insurance Defendants on the LPI Policies.  As of May 8, 2013, that commission was discontinued.  However, other forms of allegedly unearned benefits inured to CIT on the placement of the LPI policies as of May 8, 2013, including portfolio-wide, discounted loan services provided by the Insurance Defendants or their affiliates to CIT.  While Defendants have strongly contested whether the alleged commission was in any way unlawful or improper, whether the Settlement Class Members suffered any damages as a result of the alleged commission, and whether the Settlement Class Members suffered any damages after the discontinuation of the alleged commission, Plaintiffs have argued that the actual cost of the portfolio-wide, discounted loan services was passed on to Plaintiffs and the Settlement Class and included in the LPI charges.

Aided by expert reports and a skilled third-party mediator, Jonathan Marks, who has overseen the settlement of numerous LPI cases alleging kickbacks,[2] the

---

[2] *See, e.g.*, *Almanzar v. Select Portfolio Serv., Inc.*, 2016 WL 1169198, at *1 (S.D. Fla. Mar. 25, 2016) (granting final approval of class settlement in similar LPI case where the "settlement occurred only after the parties prepared over a period of many weeks for a mediation conducted by Jonathan Marks, Esquire, who has conducted numerous mediations involving [LPI] and is extremely familiar with the issues in these cases"); *Hamilton v. Sun Trust Mortg., Inc.*, 2014 WL 5419507, at *2 (S.D. Fla. Oct. 23, 2014) (granting final approval of class settlement in similar LPI case where "the settlement occurred only after the parties mediated over a period of months with a nationally recognized and well respected mediator (Mr. Jonathan Marks) …."); *see also Hall v. Bank of Am., N.A.*, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) (same).

parties negotiated the reimbursement amounts of 10% and 6%, which respectively reflect whether a commission or other alleged benefit was generated from the placement of the LPI policies and the parties' divergent views on any resulting damages to Plaintiffs and the Settlement Class.  These reimbursement amounts are in line with other LPI cases alleging kickbacks where class settlements have included reimbursement of a percentage of the net written premium to settlement class members for commissions and/or discounted loan servicing fees or other alleged kickbacks.  *See, e.g.*, *In re PHH Lender Placed Insurance Litig.*, 1:12-cv-01117-NLH-KMW (D.N.J. July 27, 2017) (providing class members submitting valid claims with refunds equal to either 11.5% (for the time period the LPI charge allegedly included a commission) or 6% of the net written premium (for the time period the LPI charge allegedly included  an amount to offset the discounted loan servicing fees)) [*In re PHH LPI Litigation* Docket ECF 297]; *Almanzar*, 2016 WL 1169198 (approving claims-made settlement where settlement class members would receive either 12.5%, 6.5%, or 5.% of the net written premium); *Hall*, 2014 WL 7184039 (approving claims-made settlement returning 11%, 6.5%, or 5% of the net written premium); *Diaz v. HSBC USA, N.A.*, No. 13-cv-21104, 2014 WL 5488161 (S.D. Fla. Oct. 29, 2014) (approving claims-made settlement returning either 13% (for the time period in which the LPI charge allegedly included a commission) or 6% of the net written premium (for the time period the LPI charge allegedly included

an amount to offset discounted loan servicing received by the loan servicer)); *Fladell v. Wells Fargo*, 2014 WL 5488167 (S.D. Fla. Oct. 29, 2014) (approving claims-made settlement where settlement class members would receive 11% of the net written premium during the period when defendants were allegedly receiving commissions for the placement of LPI, and 7% after the alleged commissions practices ceased); *see also Quarashi v M&T Bank Corp.*, Case No. 3:17-cv-06675 (BRM)(DEA) (D.N.J. June 24, 2019) (granting final approval of settlement providing eligible class members with a credit or payment equal to 3%, 4.5% or 6% of the net written premium depending on when policy was placed and what type of alleged kickback was generated); *Rickert v. Caliber Home Loans, Inc.*, Case No. 3:17-cv-06677 (BRM)(DEA) (D.N.J. Apr. 1, 2019) (granting final approval of settlement providing eligible class members with a credit or payment equal to 3%, 4.5% or 6% of the net written premium depending on when policy was placed and what type of alleged kickback was generated); *Smith v. Specialized Loan Servicing, LLC*, Case No. 3:17-cv-06668 (BRM) (DEA) (D.N.J. April 1, 2019) (granting final approval of settlement providing eligible class members with a credit or payment equal to 3% or 6% of the net written premium depending on when policy was placed and what type of alleged kickback was generated).[3]

---

[3] S*ee also Belanger v. Roundpoint Mortg. Serv. Corp.*, Case No. 17-23307 (S.D. Fla. Mar. 28, 2019) (granting final approval of claims-made settlement returning 6.75% of the net written premium to eligible settlement class members); *Santos v. The*

The Settlement, moreover, is well within the range of damages commonly approved in light of all attendant risks of litigation. Here, assuming a reimbursement of 16% of the Net Premium would equal 100% recovery, the 10% and 6% reimbursements of the Net Premium represent recoveries of approximately 62% and 37.5%, respectively. *See Barel v. Bank of Am.*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) (approving a settlement with a value of 5% to 52% of the total potential damages range); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving a settlement that ranged from 5.2% to 36.4% of the potential recovery).

## C.   <u>The Five-Year Period for Injunctive Relief Is Reasonable</u>

As discussed above, in addition to the monetary benefits to the Settlement Class, the Settlement also provides certain injunctive relief for a period of five years. Class Counsel believe that this provides additional, prospective value to the

---

*Carrington Companies, LLC*, Case No. 2:16-cv-03679 (WHW) (CLW) (D.N.J. Oct. 31, 2018) (granting final approval of claims-made settlement returning 12.5% of the net written premium to eligible settlement class members); *Hamilton*, 2014 WL 5419507 (granting final approval of claims-made settlement returning 10.5% of the net written premium to eligible settlement class members); *see also Circeo-Loudon v. Green Tree Serv., LLC*, 2016 WL 8256853 (S.D. Fla. Aug. 30, 2016) (granting final approval of claims-made settlement returning 12.5% of the net written premium to eligible settlement class members); *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 (M.D. Fla. May 4, 2016) (same); *Wilson v. EverBank*, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016) (same); *Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) (same); *Lee v. Ocwen Loan Serv., LLC*, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) (same); *Soccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. Feb. 28, 2014) (same); *Casey v. CitiMortgage, Inc*., No. 5:12-cv-820, Dkt. No. 234 (N.D.N.Y. Oct. 1, 2014) (granting final approval of claims-made settlement returning 8% of the net written premium to eligible settlement class members).

Settlement Class, as well as an additional value to non-Settlement-Class-Members who may, in the future, require LPI services. The Insurance Defendants are amenable to this injunctive relief because they already have voluntarily changed certain insurance practices to align with these requirements, and they view the five-year duration as a reasonable compromise among the parties in the course of settlement negotiations. The five-year duration provides certainty as to the Insurance Defendants' LPI practices in the near term, while also providing the Insurance Defendants the flexibility to implement any necessary changes to their practices in the event the insurance or regulatory landscape changes in the future.

Several class settlements in similar LPI cases alleging kickbacks have been approved where the agreed-upon injunctive relief was limited to a five-year period. *See, e.g.*, *Smith*, Case No. 3:17-cv-06668; *Rickert*, Case No. 3:17-cv-06677; *Santos*, Case No. 2:16-cv-03679; *In re PHH*, Case No. 1:12-cv-01117; *Quarashi*, Case No. 3:17-cv-06675; *see also Belanger*, Case No. 17-23307; *Circeo-Loudon*, Case No. 14-CV-21384; *Montoya*, 2016 WL 1529902; *Almanzar*, 2016 WL 1169198; *Wilson*, 2016 WL 457011; *Braynen*, 2015 WL 6872519; *Lee*, 2015 WL 5449813; *Hall*, 2014 WL 7184039; *Diaz*, 2014 WL 5488161; *Fladell*, 2014 WL 5488167. The five-year period of injunctive relief is particularly sufficient here, where the average age based on the dates of birth of the Borrowers associated with the LPI Policies at issue is 87 years. *See* Section III.A.1, *supra*.

## CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court grant this Motion for Preliminary Approval, and enter the Proposed Order which, inter alia: (1) grants preliminary approval of the Settlement as fair, reasonable, and adequate, and in the best interests of the Settlement Class Members; (2) certifies the proposed Settlement Class for settlement purposes only; (3) appoints the law firms of Law Office of Roosevelt N. Nesmith, LLC and Giskan, Solotaroff & Anderson, LLP as Class Counsel; (4) approves the form and content of, and directs the distribution of the proposed Class Notice and accompanying Claim Form Instructions and Claim Form, and authorizes and directs Defendants to retain one or more Settlement Administrator(s) to implement the terms of the Settlement Agreement; and (5) schedules a Final Approval Hearing not earlier than 120 days after Preliminary Approval is granted.

Dated:  January 24, 2020

Respectfully submitted,

By: s/ Roosevelt N. Nesmith
Roosevelt N. Nesmith, Esq.

roosevelt@nesmithlaw.com
**LAW OFFICE OF**
**ROOSEVELT N. NESMITH, LLC**
363 Bloomfield Avenue, Ste. 2C
Montclair, New Jersey 07042
Telephone: (973) 259-6990

By: s/ Louis Smith
 Louis Smith, Esq.

SmithLo@gtlaw.com
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
Telephone: (973) 360-7900

*Counsel for CIT Bank, N.A.*

18

Catherine E. Anderson, Esq.
canderson@gslawny.com
**GISKAN SOLOTAROFF
& ANDERSON, LLP**
90 Broad Street, 10th Fl.
New York, New York 10004
Telephone: (212) 847-8315

*Counsel for Plaintiffs and the
Proposed Class*

By: s/Charles J. Falletta
     Charles J. Falletta, Esq.

cfalletta@sillscummis.com
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000

Stephen LeBlanc, Esq.
sleblanc@mitchellsandler.com
**MITCHELL SANDLER LLC**
1120 20TH Street NW, Ste. 725
Washington, DC 20026
Telephone: (202) 886-5260

*Counsel for QBE Insurance Corp.,
QBE FIRST Insurance Agency, Inc.,
and MIC General Insurance
Corporation*