# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

MONICA GRAY, AS EXECUTRIX OF THE
ESTATE OF EARL GRAY, JR. AND AS
TRUSTEE OF THE INTEREST OF JASMINE
GRAY-OLIVER, JUSTIN GRAY, and JULIA
WIECK, individually and on behalf of all
others similarly situated,

                    Plaintiffs,

    v.

CIT BANK, N.A., QBE INSURANCE
CORPORATION, QBE FIRST INSURANCE
AGENCY, INC., AND MIC GENERAL
INSURANCE CORPORATION,

                    Defendants.

Case No.: 1:18-cv-01520-RMB-AMD

**AMENDED**

## [~~PROPOSED~~] ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT

On April 21, 2020, this Court granted preliminary approval to the proposed

class action settlement set forth in the Stipulation and Settlement Agreement (the

"Settlement Agreement") between Plaintiffs Monica Gray, as executrix of the Estate

of Earl Gray, Jr., and as trustee of the interests of Jasmine Gray Oliver, Justin Gray,

(collectively the "Gray Plaintiffs"), Julia Wieck ('Wieck," and collectively with the

Gray Plaintiffs, "Named Plaintiffs"), CIT Bank, N.A. ("CIT Bank"), QBE Insurance

Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services,

Inc. (collectively with QBE Insurance Corporation, "QBE Insurance") and MIC General Insurance Corporation ("MIC General," and collectively with CIT Bank and QBE Insurance, "Defendants").    The Court also provisionally certified the Settlement Class for settlement purposes, approved the procedure for giving Class Notice to the members of the Settlement Class, and set a final approval hearing to take place on September 10, 2020.    The Court finds that the Class Notice substantially in the form approved by the Court in its preliminary approval order was given in the manner ordered by the Court, constitutes the best practicable notice, and was fair, reasonable, and adequate.

On September 10, 2020, the Court held a duly noticed final approval hearing to consider:  (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable and adequate; (2) whether a judgment should be entered dismissing the Named Plaintiffs' amended complaint on the merits and with prejudice in favor of the Defendants and against all persons or entities who are Settlement Class Members herein who have not requested exclusion from the Settlement Class; and (3) whether and in what amount to award Attorneys' Fees and Expenses to Class Counsel for the Settlement Class and whether and in what amount to award a Case Contribution Award to the Named Plaintiffs.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Court has personal jurisdiction over the parties and the Settlement Class Members, venue is proper, the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto, and to enter this Final Order.

2.      The Settlement Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation (the "Gray Litigation" or the "Action") and of the strengths and weaknesses of their respective positions. Further, settlement occurred only after the parties negotiated over a period of many weeks. Counsel for the Parties were therefore well positioned to evaluate the benefits of the Settlement Agreement, taking into account the expense, risk, and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

3.      The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b) have been satisfied for settlement purposes for each Settlement Class Member in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Named Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Named Plaintiffs have and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the

Settlement Agreement; (e) the questions of law and fact common to the Settlement

Class Members predominate over any questions affecting any individual Settlement

Class Member; (f) the Settlement Class is ascertainable; and (g) a class action

settlement is superior to the other available methods for the fair and efficient

adjudication of the controversy.

4.    Pursuant to Fed. R. Civ. P. 23, this Court hereby finally certifies the

Settlement Class, as identified in the Settlement Agreement, which shall consist of

the following:

> The "Settlement Class" shall include all Borrowers[1] in the
> United States who, during the Settlement Class Period
> (February 2, 2012 through July 31, 2018), were charged by
> Financial Freedom[2] a Net Premium[3] for an LPI Policy[4] issued
> during the Settlement Class Period.

---

[1] "Borrower(s)" means (1) the person or persons who signed a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom and secured by residential property; and (2) property owners who were devised property secured by a reverse mortgage serviced by Financial Freedom where the devisor's reverse mortgage account was charged for an LPI Policy by Financial Freedom after the property had been devised to the property owner.

[2] "Financial Freedom" means Financial Freedom, a division of OneWest Bank, FSB, which later was known as Financial Freedom, a division of OneWest Bank; N.A., and later was known as Financial Freedom, a division of CIT Bank, until CIT Bank sold the Financial Freedom reverse mortgage servicing business.

[3] "Net Premium" means the amount of premium charged to a Settlement Class Member during the Settlement Class Period for an LPI Policy that was not cancelled, less any refund paid or credited to the Settlement Class Member.

[4] "LPI Policy" means a lender-placed residential hazard and/or wind-only insurance policy issued by, subscribed by, or procured or obtained through the Insurance Entities and placed during the Settlement Class Period pursuant to a reverse mortgage loan

Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of Defendants or any of their respective Affiliates; (ii) any justice, judge, or magistrate judge of the United States or State, assigned to this matter; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or the borrower's escrow account; (iv) borrowers whose indebtedness on the residential property securing the reverse mortgage loan serviced by Financial Freedom has been compromised or discharged in bankruptcy or otherwise; and (v) all borrowers who file a timely and proper request to be excluded from the Settlement Class.

The Settlement Class Period shall be comprised of two periods: "Settlement Class Period One" shall commence on February 2, 2012 and shall continue through May 7, 2013; and "Settlement Class Period Two" shall commence on May 8, 2013 and continue through July 31, 2018.

5.     The Court finally appoints the law firms of Law Office of Roosevelt N. Nesmith, LLC and Giskan, Solotaroff & Anderson, LLP as Class Counsel for the Settlement Class.

6.     The Court finally designates Named Plaintiffs Monica Gray, Justin Gray, and Julia Wieck as the Class Representatives.

---

agreement, including home equity conversion mortgages, serviced by Financial Freedom to cover a Borrower's failure to maintain the required insurance coverage on the residential property securing the reverse mortgage loan.

7.    The Court makes the following findings on notice to the Settlement Class:

(a) The Court finds that the distribution of the Mail Notice, Internet advertising, the creation of the IVR toll-free telephone number system, and creation of the Internet website, all as provided for in the Settlement Agreement and Preliminary Approval Order, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.  The Parties have complied with their notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715, in connection with the proposed settlement.

(b) The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Order (i) constitute the most effective and practicable notice of the Final Order, the relief available to Settlement Class Members pursuant to the Final Order, and applicable

time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.

8.      The Settlement Agreement is finally approved as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e).  The terms and provisions of the Settlement Agreement, including all exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members.

9.      The Parties are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

10.     Pursuant to Fed. R. Civ. P. 23(h), the Court hereby awards Class Counsel for the Settlement Class Attorneys' Fees ~~and Expenses~~ in the amount of RMB *and expenses of $62,559.17* $ 1,500,000 payable pursuant to the terms of the Settlement Agreement. The Court also awards the following Case Contribution Awards to the Named Plaintiffs payable pursuant to the terms of the Settlement Agreement: (i) Monica Gray, Jasmine Gray-Oliver, and Justin Gray shall collectively receive the sum of $15,000; and (ii) Julia Wieck shall receive the sum of $15,000.

11.     The terms of the Settlement Agreement and of this Final Order, including all exhibits thereto, shall be forever binding in all pending and future

lawsuits maintained by the Named Plaintiffs and all other Settlement Class Members, and their family members, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf.

12.    The Releases, which are set forth in Section 10 of the Settlement Agreement and which are also set forth below, are expressly incorporated herein in all respects and are effective as of the date of this Final Order; and the Released Parties (as that term is defined below and in the Settlement Agreement) are forever released, relinquished, and discharged by the Releasing Parties (as that term is defined below and in the Settlement Agreement) from all Released Claims (as that term is defined below and in the Settlement Agreement).

(a) <u>Release and Waiver Definitions</u>

(i)    CIT Bank means CIT Bank, N.A., and its predecessors and successors, and all of their parents, subsidiaries, Affiliates, and divisions, including Financial Freedom, and all of their predecessors and successors, parents, subsidiaries, Affiliates, and divisions (including internal units, such as its mortgage lending and servicing department).

(ii)    QBE Insurance means QBE Insurance Corporation and its predecessors and successors, and all of its Affiliates, including QBE FIRST insurance Agency, Inc., n/k/a NGLS Insurance Services, Inc., and Seattle Specialty Insurance Services, Inc., and all of their predecessors, successors, and Affiliates.

(iii)   MIC General means MIC General Insurance Corporation, and its predecessors and successors, and all its Affiliates, including NGLS Insurance Services, Inc. and Seattle Specialty Insurance Services, Inc.

(iv)    "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control or ownership with such entity.

(v)     "Defendants" means all named defendants in the Gray Litigation, including CIT Bank, QBE Insurance and MIC General.

(vi)    "Insurance Entities" means Balboa Insurance Company, QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc. and any of its Affiliates, MIC General Insurance Corporation, Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London, and Great Lakes Reinsurance (UK), PLC n/k/a Great Lakes Insurance SE.

(vii)   "Lender-Placed Insurance" means the placement of hazard and/or wind-only insurance pursuant to a reverse mortgage loan agreement, including a home equity conversion mortgage, serviced by Financial Freedom to cover a

borrower's failure to maintain the required insurance coverage on the residential property securing the loan.

(viii) "LPI Policy" means a lender-placed residential hazard and/or wind-only insurance policy issued by, subscribed by, or procured through or obtained from any of the Insurance Entities, and placed during the Settlement Class Period pursuant to a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom to cover a Borrower's failure to maintain the required insurance coverage on the residential property securing the reverse mortgage loan.

(ix) "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Parties.

(x) "Released Claims" means all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, demands, and any other forms of liability released pursuant to this Final Order and Judgment and Section 10 of the Settlement Agreement.

(xi) "Released Parties" means, only with respect to Released Claims: (a) CIT Bank, CIT Group Inc., OneWest Bank, FSB, OneWest Bank, N.A., Financial Freedom Acquisition, LLC, Financial Freedom, IndyMac Financial Services, Inc., IndyMac Agency, Inc., the Insurance Entities, and each of their respective past, present, and future direct or indirect, Affiliates, parent companies, subsidiaries,

divisions, predecessors, successors, assigns, investors, and all past or present officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of any such entities or persons; (b) any insurance carrier, broker, or agent from whom Defendants procured or obtained an LPI Policy, or that was a party to an agreement relating to an LPI Policy, insuring residential real property owned by any Settlement Class Member, to the extent not included within subsection (a) above; and (c) any trustee of a mortgage securitization trust which included loans made to any Settlement Class Member, any owner, investor, and/or noteholder of the reverse mortgage loans CIT Bank or Financial Freedom serviced and upon whose secured properties LPI was placed for any Settlement Class member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

(xii)    "Releasing Persons" means Named Plaintiffs and all Settlement Class Members who do not properly and timely opt out of the Settlement, and their respective family members, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf.

(xiii)   "Settling Parties" means, collectively, Defendants, Named Plaintiffs, all Settlement Class Members, and all Releasing Persons.

(b) <u>Released Claims of Settlement Class</u>.

Each member of the Settlement Class, and their family members, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf, shall, by operation of the Final Order, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Parties from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each member of the Settlement Class may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation or

that relate, concern, arise from, or pertain in any way to the Released Parties'

conduct, policies, or practices concerning the placement, issuance, or facilitation of

LPI Policies or to the receipt or disclosure or nondisclosure of charges related to

the advancing of LPI premiums during the Settlement Class Period, including but

not limited to conduct, policies or practices concerning LPI Policies or to charges

for the Placement of LPI Policies during the Settlement Class Period.  In agreeing

to this Release, Named Plaintiffs explicitly acknowledge that unknown losses or

claims could possibly exist and that any present losses may have been

underestimated in amount or severity.

(i)    The Release stated in Paragraph 12(b) above shall include, but not

be limited to, all claims related to CIT Bank's or Financial Freedom's insurance

requirements; the relationship, whether contractual or otherwise, between any of

the Released Parties or their Affiliates, or any other insurance carriers, brokers,

or agents from whom CIT Bank or Financial Freedom procured or obtained

coverage insuring residential property owned by any Settlement Class Member,

regarding LPI, including, but not limited to, the procuring, underwriting,

placement, insurance tracking, or costs of LPI Policies; the coverage amount,

duration, issue date, alleged "backdating," or alleged excessiveness of any LPI

Policies placed or charged by CIT Bank or Financial Freedom; the payment or

receipt of commissions, expense reimbursements, alleged "kickbacks," or any

other compensation under any LPI Policies placed or charged by CIT Bank or Financial Freedom; any alleged tortious interference by the Insurance Entities with reverse mortgage loans or home equity conversion mortgages serviced by CIT Bank or Financial Freedom; the receipt or disclosure or non-disclosure of any payments, expenses, fees, finance charges, or other charges, or features pertaining in any way to, in connection with, or under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by CIT Bank or Financial Freedom; the receipt or non-disclosure of any benefit under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by CIT Bank or Financial Freedom; the content, manner, or accuracy of any communications regarding the placement of any LPI Policies by CIT Bank or Financial Freedom; and to the regulatory approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by CIT Bank or Financial Freedom.  Each Settlement Class Member shall be considered, by operation of the Final Judgment, to have received full and final redress, including but not limited to any refund, reimbursement, restitution, or damages for the conduct covered by the release.

(ii)    The Release in Paragraph 12(b) above shall not cover claims arising after the close of the Settlement Class Period, nor insurance claims for casualty losses relating to properties insured under any LPI Policy placed or

charged for by CIT Bank or Financial Freedom.  Nothing in Paragraph 12(b) shall be deemed a release of any Settlement Class Member's respective rights and obligations under this Agreement.

(iii)    Except to the extent that any such obligation is being released pursuant to Paragraph 12(b) above, this Final Order shall not be deemed a release of Defendants from any existing obligation to any Settlement Class Member under any loan, note, mortgage, or deed of trust.  This provision is not meant to and does not limit the Releases in this Final Order or in the Settlement Agreement.

(c)    The Named Plaintiffs and Class Counsel further represent that there are no outstanding liens or claims against the *Gray* Litigation or *Wieck* Action, it being recognized that the Named Plaintiffs will solely be charged with the responsibility to satisfy any other liens or claims asserted against the *Gray* Litigation and the *Wieck* Action.

(d)    Without in any way limiting their scope, the Releases cover by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiffs and their counsel, or any Settlement Class Members in connection with or related in any manner to the *Gray* Litigation or the *Wieck* Action, the settlement of the *Gray*

Litigation or the *Wieck* Action, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Settlement Agreement.

(e)    In connection with the foregoing Releases, the Named Plaintiffs and each Settlement Class Member expressly waive, and shall be deemed to have waived to the fullest extent permitted by law, any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

To the extent that anyone might argue that these principles of law are applicable— notwithstanding that the Settling Parties have chosen New Jersey law to govern the Settlement Agreement—the Named Plaintiffs hereby agree, and each Settlement Class Member will be deemed to agree, that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released. The Named Plaintiffs recognize, and each Settlement Class Member will be deemed to recognize, that, even if they may later discover

facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Order, they fully, finally, and forever settle and release any and all claims covered by the Releases.

(f)     The Releases were bargained for and are a material element of the Settlement.

(g)     The Releases do not affect the rights of Settlement Class Members who timely and properly submitted a Request for Exclusion from the Settlement in accordance with the requirements of the Preliminary Approval Order and in Section 11 of the Settlement Agreement.

(h)     The administration and consummation of the Settlement as embodied in the Settlement Agreement shall be under the authority of the Court.

(i)     The Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have properly requested exclusion (opted out), and the Released Parties shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s).

(j)     The Releases shall not preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.  The Releases set forth herein and in the Settlement Agreement are not intended to include the release of any rights or duties of the Settling

Parties arising out of the Settlement Agreement, including the express warranties and covenants contained therein.

13.    Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Final Order, nor any of its terms and provisions, nor the final judgment to be entered pursuant to this Final Order, nor any of its terms and provisions, shall be:

(a)    offered by any person or received against the Defendants as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by the Defendants of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Gray Litigation or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

(b)    offered by any person or received against the Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Defendants or any other wrongdoing by the Defendants;

(c)    offered by any person or received against the Defendants as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding;

(d)    offered or received in evidence in any action or proceeding against any Party hereto in any court, administrative agency, or other tribunal for any purpose whatsoever, other than to enforce or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto), including the Releases, or the Final Order, or the final judgment to be entered pursuant to this Final Order.

14.    This Final Order, the final judgment to be entered pursuant to this Final Order, and the Settlement Agreement (including the exhibits thereto) may be filed in any action against or by any Released Party (as that term is defined herein and the Settlement Agreement) to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

15.    Without further order of the Court, the Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

16.    This Final Order, and the final judgment to be entered pursuant to this Final Order, shall be effective upon entry.  In the event that the Final Order and the final judgment to be entered pursuant to this Final Order are reversed or vacated pursuant to a direct appeal in this Action or the Settlement Agreement is terminated pursuant to its terms, all orders entered and releases delivered in connection herewith shall be null and void.

17.    A  final  judgment  substantially  in  the  form  attached  hereto  as Exhibit A will be entered forthwith.

**DONE and ORDERED in Chambers in Camden, New Jersey, this** _____ **day of** _September_ **, 2020.**

RENEE MARIE BUMB
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MONICA GRAY, AS EXECUTRIX OF THE ESTATE OF EARL GRAY, JR. AND AS TRUSTEE OF THE INTEREST OF JASMINE GRAY-OLIVER, JUSTIN GRAY, and JULIA WIECK, individually and on behalf of all others similarly situated,<br><br><br>        Plaintiffs,<br><br>    v.<br><br>CIT BANK, N.A., QBE INSURANCE CORPORATION, QBE FIRST INSURANCE AGENCY, INC., AND MIC GENERAL INSURANCE CORPORATION,<br><br>        Defendants. | Case No.: 1:18-cv-01520-RMB-AMD |

## FINAL JUDGMENT

This action having settled pursuant to the Stipulation and Settlement Agreement (the "Settlement Agreement") and the Court having entered an Order Granting Final Approval to Class Action Settlement (the "Final Order"), IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.      This action, including all individual claims and class claims presented herein, is hereby dismissed on the merits and with prejudice against the Named Plaintiffs and all other Settlement Class Members, without fees (including attorneys' fees) or costs to any party except as otherwise provided in the Final Order.

1

     a.     "Named Plaintiffs" means Monica Gray, as executrix of the Estate of Earl Gray, Jr., and as trustee of the interests of Jasmine Gray Oliver, Justin Gray, and Julia Wieck.

     b.     The "Settlement Class" shall include all Borrowers[1] in the United States who, during the Settlement Class Period (February 2, 2012 through July 31, 2018), were charged by Financial Freedom[2] a Net Premium for an LPI Policy issued during the Settlement Class Period.  Excluded from the Settlement Class are: (i) individuals who are or were during the Settlement Class Period officers or directors of Defendants or any of their respective Affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State assigned to this matter; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower or the borrower's escrow account; (iv) borrowers whose indebtedness on the residential property securing the reverse mortgage loan serviced by Financial Freedom has been compromised or discharged in bankruptcy or otherwise; and (v) all borrowers who file a timely and proper request to be excluded from the Settlement Class.

---

[1] "Borrower(s)" means (1) the person or persons who signed a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom and secured by residential property; and (2) property owners who were devised property secured by a reverse mortgage serviced by Financial Freedom where the devisor's reverse mortgage account was charged for an LPI Policy by Financial Freedom after the property had been devised to the property owner.

[2] "Financial Freedom" means Financial Freedom, a division of OneWest Bank, FSB, which later was known as Financial Freedom, a division of OneWest Bank, N.A., and later was known as Financial Freedom, a division of CIT Bank, until CIT Bank sold the Financial Freedom reverse mortgage servicing business.

c. CIT Bank means CIT Bank, N.A., and its predecessors and successors, and all of their parents, subsidiaries, Affiliates, and divisions, including Financial Freedom, and all of their predecessors, successors, parents, subsidiaries, Affiliates, and divisions.

d. QBE Insurance means QBE Insurance Corporation and its predecessors and successors, and all of its Affiliates, including QBE FIRST insurance Agency, Inc., n/k/a NGLS Insurance Services, Inc., and Seattle Specialty Insurance Services, Inc., and all of their predecessors, successors, and Affiliates.

e. MIC General means MIC General Insurance Corporation, and its predecessors and successors, and all its Affiliates, including NGLS Insurance Services, Inc. and Seattle Specialty Insurance Services, Inc.

f. "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control or ownership with such entity.

g. "Insurance Entities" means Balboa Insurance Company, QBE Insurance Corporation, QBE FIRST Insurance Agency, Inc. n/k/a NGLS Insurance Services, Inc. and any of its Affiliates, MIC General Insurance Corporation, Seattle Specialty Insurance Services, Inc., Certain Underwriters at Lloyd's, London, and Great Lakes Reinsurance (UK), PLC, n/k/a Great Lakes Insurance SE.

h. "LPI Policy" means a lender-placed residential hazard and/or wind-only insurance policy or policies issued by, subscribed by, or procured or obtained through any of the Insurance Entities, and placed during the Settlement Class Period pursuant to a reverse mortgage loan agreement, including home equity conversion mortgages, serviced by Financial Freedom to cover a Borrower's failure to maintain the required insurance coverage on the residential property securing the reverse mortgage loan.

i. "Net Premium" means the amount of premium charged to a Settlement Class Member during the Settlement Class Period for an LPI Policy that was not cancelled, less any refund paid or credited to the Settlement Class Member.

2. Named Plaintiffs and all Settlement Class Members who did not timely exclude themselves from the Settlement Class, and their family members, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf, have released the Released Claims as against the Released Parties, and are, from this day forward, hereby permanently barred and enjoined from directly or indirectly (i) filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit in any jurisdiction for the Released Claims; or (ii) organizing any Settlement Class Members into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this action and/or the Released Claims.

a. "Released Claims" means any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each member of the Settlement Class may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law,

4

statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to the Released Parties' conduct, policies, or practices concerning the placement, issuance, or facilitation of LPI Policies or to the receipt or disclosure or nondisclosure of charges related to the advancing of LPI premiums during the Settlement Class Period, including but not limited to conduct, policies or practices concerning LPI Policies or to charges for the placement of LPI Policies during the

Settlement Class Periods.  In agreeing to this Release, Named Plaintiffs explicitly acknowledge that unknown losses or claims could possibly exist and that any present losses may have been underestimated in amount or severity.

      b.    The Released Claims of both the Named Plaintiffs and the Settlement Class Members shall include, but not be limited to, all claims related to CIT Bank's or Financial Freedom's insurance requirements; the relationship, whether contractual or otherwise, between any of the Released Parties or their Affiliates, or any other insurance carriers, brokers, or agents from whom CIT Bank or Financial Freedom procured or obtained coverage insuring residential property owned by any Settlement Class Member, regarding LPI, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPI Policies placed or charged by CIT Bank or Financial Freedom; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed or charged by CIT Bank or Financial Freedom; any alleged tortious interference by the Insurance Entities with mortgage loans serviced by CIT Bank or

Financial Freedom; the receipt or disclosure or non-disclosure of any and all payments, expenses, fees, finance charges, other charges, or features pertaining in any way to, in connection with, or under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by CIT Bank or Financial Freedom; the receipt or non-disclosure of any benefit under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by CIT Bank or Financial Freedom; the content, manner, or accuracy of any communications regarding the placement of any LPI Policies by CIT Bank or Financial Freedom; and the regulatory approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by CIT Bank or Financial Freedom. Each Settlement Class Member shall be considered, by operation of the Final Judgment, to have received full and final redress, including but not limited to any refund, reimbursement restitution, or damages for the conduct covered by the release.

       c.     "Released Parties" means, only with respect to Released Claims: (a) CIT Bank, CIT Group Inc., OneWest Bank, FSB, OneWest Bank, N.A., Financial Freedom Acquisition, LLC, Financial Freedom, IndyMac Financial Services, IndyMac Agency, Inc., the Insurance Entities, and each of their respective past, present, and future, direct or indirect, Affiliates, parent companies, subsidiaries, divisions, predecessors, successors, assigns, investors, and all past or present officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of any such entities or persons; (b) any insurance carrier, broker, or agent from whom Defendants procured or obtained an LPI Policy, or that was a party to an agreement relating to an LPI Policy, insuring residential real property owned by any Settlement Class Member, to the extent

not included within subsection (a) above; and (c) any trustee of a mortgage securitization trust which included loans made to any Settlement Class Member, any owner, investor, and/or noteholder of the reverse mortgage loans CIT Bank or Financial Freedom serviced and upon whose secured properties LPI was placed for any Settlement Class member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

3.  Notwithstanding the dismissal of this entire action, the Court shall retain jurisdiction over the construction, interpretation, consummation, implementation, and enforcement of the Settlement Agreement, including jurisdiction to enter such further orders as may be necessary or appropriate.

4.   Within ten (10) days, Settlement Class Members shall dismiss with prejudice all claims, actions, or proceedings that have been brought by any Settlement Class Member in any jurisdiction and that have been released pursuant to the Settlement Agreement and Final Order and enjoined pursuant to this judgment.

DONE and ORDERED in Chambers in Camden, New Jersey, this _____ day of _____, 2020

_____

RENEE MARIE BUMB
UNITED STATES DISTRICT JUDGE